**Case No. 25-40357**

---

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Courtney Morgan,

*Plaintiff-Appellant*

v.

Mary Chapman and John Kopacz,

*Defendants-Appellees*

---

Appeal from the U.S. District Court for the
Southern District of Texas, Victoria Division (No. 6:17-cv-00004)
Hon. Drew B. Tipton, presiding

---

**BRIEF OF APPELLANT**

---

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

*Attorney for Appellant*

# CERTIFICATE OF INTERESTED PARTIES

*Morgan v. Chapman,* Case No. 25-40357

Appellant Courtney Morgan is an individual.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Judicial Officers of the Southern District of Texas:**
The Honorable Julie K. Hampton, *U.S. Magistrate Judge (referred)*
The Honorable Hayden Head, U.S. *District Court Judge (reassigned)*
The Honorable George C. Hanks, Jr., *U.S. District Court Judge (reassigned)*
The Honorable Kenneth M. Hoyt, *U.S. District Court Judge (reassigned)*
The Honorable Drew B. Tipton, *U.S. District Court Judge*

**Appellant**:
Courtney Morgan, *Plaintiff-Appellant*, represented by undersigned counsel
Andrew L. Schlafly, Esq., 939 Old Chester Rd., Far Hills, NJ

*District Court Counsel:*
Kevin R. Anderson, Esq., Anderson & Welch, LLC, 500 S. Australian Ave., 6th Flr, West Palm Beach, FL 33401
Erica Faith Chaplin, Esq., Anderson & Welch, LLC, 500 S. Australian Ave., 6th Flr, West Palm Beach, FL 33401
Tommy E. Swate, Esq., Swate Attorney At Law, 403 Wild Plum, Houston, TX.
Leslie A. Werner, Esq., The Werner Law Group, P. O. Box 247, Victoria, TX

**Appellees:**
Mary Chapman, *Defendant-Appellee*, represented by Todd A. Dickerson, Esq., and Cole P. Wilson, Esq., of the Office of the Attorney General for the State of Texas, P.O. Box 12548, Capitol Station, Austin, TX 78711-2548
John Kopacz, *Defendant-Appellee*, represented by Christopher Lee Lindsey, Esq., of the Office of the Attorney General for the State of Texas, Assistant Attorney

ii

General, Enforcement Defense Division, P.O. Box 12548, Capitol Station, Austin, TX 78711

*Appellees' District Court Counsel:*
*Seth Byron Dennis, Esq., *Counsel for Appellees,*
  Texas Attorney General, PO Box 12548, Austin, TX 78711-2528
*Summer Rayne Lee, Esq., *Counsel for Appellee Chapman,*
  Texas Attorney General300 W. 15th St, Austin, TX 78701
*Benjamin Storey Lyles, Esq., *Counsel for Appellee Chapman*
  Office of the Attorney General, P.O. Box 12548, Austin, TX 78711-2548
*Farha Butool Rizvi, Esq., *Counsel for Appellee Chapman,* Refugee and
  Immigrant Ctr for Edu. & Legal Serv., P.O. Box 786100, San Antonio, TX 78278
*Evan William Weltge, Esq., *Counsel for Appellee Kopacz,* Kessler Collins, P.C.
  Law Enforcement Defense Div., 500 N. Akard St., Suite 3700, Dallas, TX 75201

**Other Interested Entities**
Drive Thru Doc, PLLC, former Plaintiff (terminated as a party)
Hop Medical Services, M.D.P.A. – former Plaintiff (terminated as a party)
Scott Freshour, former Defendant (terminated as a party)
Texas Department of Public Safety
Texas Medical Board

 *- apparently no longer involved in representing a party here

s/ Andrew L. Schlafly
Attorney for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument, but welcomes it if the Court would find it to be useful.

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Parties .................................................................. ii

Statement Regarding Oral Argument ........................................................ iv

Table of Contents ....................................................................................... v

Table of Authorities ................................................................................ viii

Jurisdictional Statement ............................................................................. 1

Statement of Issues ..................................................................................... 1

Statement of the Case ................................................................................. 2

       A. Factual Background ......................................................................... 4

       B. Relevant Procedural History ........................................................... 6

       C. Rulings Presented for Review ....................................................... 11

Summary of Argument ............................................................................. 16

Argument................................................................................................... 17

I. Standard of Review................................................................................ 17

II. The Judgment Below Without Considering Any of Plaintiff's Evidence in Opposition Was an Abuse of Discretion in Elevating Form over Substance to Avoid Addressing the Merits .................................................................... 18

III. The District Court Committed Legal Error by Deferring Complete Authority to a Magistrate to Deny Leave to Plaintiff to Submit His Opposition to Motions for Summary Judgment, Thereby Effectively Disposing of Plaintiff's Lawsuit Contrary to 28 U.S.C. § 636(b)(1) . ......................................................... 24

IV. The Decision Below Fails to Satisfy the Required Standard of De Novo Review Under 28 U.S.C. § 636(b)(1), by Lacking Analysis and Explanations of Its Reasoning ...................................................................................25

V. The Magistrate's Process Was Unreasonable and an Abuse of Discretion to Recommend Granting Motions for Summary Judgment Without Ever Considering Any Opposition by Plaintiff, Whose Counsel Was Unaware of the Magistrate's Timetable and There Was a Health Crisis in Plaintiff's Counsel's Family ...................................................................................................27

  A. Plaintiff's Counsel Satisfied the Excusable Neglect Standard........................29

    1. Granting Plaintiff's Motion Would Not Have Prejudiced Defendants .........30
    2. The Length of Delay Does Not Undermine the Judicial Proceedings ..........31
    3. The Reason for the Scheduling Snafu Was an Extraordinary Personal Circumstances, Not Neglect.....................................................31
    4. Plaintiff Acted in Good Faith ......................................................33

VI. There Are Genuine Issues of Material Fact Precluding Summary Judgment, Including Evidence that Defendants Lacked a Reasonable Basis for Their Raid of Dr. Morgan's Office and Had Clear Indications that Dr. Morgan Was Not Operating a "Pill Mill" of Which Defendants Falsely Accused Him.....................34

  A. There is a Genuine Issue of Material Fact as to Whether the Search Was Unreasonably Executed, for Which Qualified Immunity Does Not Apply...................................................................................36

  B. As Found by State Court, Defendants' Search Was "an Exercise to Circumvent both the Texas and U.S. Constitution's Requirement for a Warrant," and thus Qualified Immunity Does Not Apply ...............................40

  C. Defendants' Search of Dr. Morgan's Clinic Was Done with an Unlawful Purpose and Contrary to 60 Years of Precedents ...........................42

  D. There Is a Genuine Issue of Material Fact as to False and Misleading Statements in Defendant Kopacz's Reports.....................................44

  E. It Was Obvious that Dr. Morgan Was Not Running a "Pill Mill," and Wrongful Racial Stereotyping by Defendants Motivated Their Actions Against Him ................................................................................49

Conclusion ..............................................................................................50

Certificate of Compliance ........................................................................51

# TABLE OF AUTHORITIES

**Cases** Page(s)

*650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66 (2d Cir. 2016)...............................19, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................35

*Bell v. United States*, No. 23-6383, 2024 U.S. App. LEXIS 2554
     (4th Cir. Feb. 5, 2024) .................................................................................26

*Brady v. Maryland*, 373 U.S. 83 (1963) ...............................................................45

*Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000) ....................................20

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ..................................................35

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008)............................................ 34-35, 45

*Bruce v. Beary*, 498 F.3d 1232 (11th Cir. 2007) ...................................................37

*Calabrian Corp. v. All. Specialty Chems., Inc.*,
     418 S.W.3d 154 (Tex. App. 2013) ................................................................40

*Cap. City Ins. Co. v. Hurst*, 632 F.3d 898 (5th Cir. 2011) ......................................18

*Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018 (5th Cir. 1987)...............................21

*Charlton L. Davis & Co. P.C. v. Fedder Data Center*,
     556 F.2d 308 (5th Cir. 1977) .......................................................................28

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60 (5th Cir. 1992)...............18

*Coleman Hammons Constr. Co. v. Occupational Safety & Health
     Review Comm'n*, 942 F.3d 279 (5th Cir. 2019)................................30, 32, 34

*Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985)................................................26

*Crowley Mar. Corp. v. Panama Canal Com.*, 849 F.2d 951 (5th Cir. 1988)..........19

*Davidson v. Fairchild Controls Corp.*, 882 F.3d 180 (5th Cir. 2018).............. 17-18

*Devillier v. State of Texas*, No. 3:20-CV-00223,
     2023 WL 2744398 (S.D. Tex. Mar. 31, 2023) .............................................29

*E.F. Hutton & Co., Inc. v. Moffatt*, 460 F.2d 284 (5th Cir. 1972)..........................28

*Eagle Props. v. Scharbauer*, 807 S.W.2d 714 (Tex. 1990) ...................................41

*Elijah v. Dunbar*, 66 F.4th 454 (4th Cir. 2023) ....................................................26

*Espinal v. City of Hous.*, 96 F.4th 741 (5th Cir. Mar. 7, 2024) ................................7

*Freeman v. Cty. of Bexar,* 142 F.3d 848 (5th Cir. 1998)........................................20

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) ..................................................... 35

*Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919 (5th Cir. 1960) ......... 19

*Gordy v. Burns*, 294 F.3d 722 (5th Cir. 2002) .......................................................... 7

*H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*,
    432 F.2d 689 (D.C. Cir. 1970) ............................................................................ 28

*Hall v. City & Cty. of Honolulu*, No. 21-00248 LEK-KJM,
    2024 U.S. Dist. LEXIS 57591 (D. Haw. Mar. 29, 2024) ............................... 44

*Husband v. Bryan*, 946 F.2d 27 (5th Cir. 1991) ..................................................... 26

*IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
    82 F.4th 402 (5th Cir. 2023) ............................................................................. 21

*In re La. Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017) ................................. 18

*ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*,
    892 F.3d 511 (2d Cir. 2018) ............................................................................. 20

*Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210 (2d Cir. 2024) ........................ 20

*L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521 (5th Cir. 2021) ................... 28

*Lacy v. Sitel Corp.*, 227 F.3d 290 (5th Cir. 2000) ................................................... 19

*Malone v. Bodycote Heat Treating*, No. H-04-3940,
    2007 U.S. Dist. LEXIS 65034 (S.D. Tex. Sep. 4, 2007) ............................... 25

*Manson v. Brathwaite*, 432 U.S. 98 (1977) ............................................................ 45

*Mason & Hanger-Silas Mason Co. v. Metal Trades Council*,
    726 F.2d 166 (5th Cir.1984) ............................................................................. 18

*Massie v. Rubin*, 270 F.2d 60 (10th Cir. 1959) ...................................................... 21

*Mattress Giant Corp. v. Motor Advert. & Design Inc.*,
    No. 3:07-CV-1728-D, 2008 WL 898772
    (N.D. Tex. Mar. 31, 2008) .......................................................................... 29-30

*Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005) ................................... 38, 39, 40

*Miller v. Michaels Stores, Inc.*, 98 F.4th 211 (5th Cir. 2024) .......................... 17, 18

*Mills v. Zapata Drilling Co.*, 722 F.2d 1170 (5th Cir. 1983) ............................... 19

*Morgan v. Chapman*, 629 F. Supp. 3d 616 (S.D. Tex. 2022) ............................ 36, 40

*Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020) ............................................ 6-7

*New York v. Burger*, 482 U.S. 691 (1987) ............................................................. 44

*O'Neal v. Cazes*, 257 F. App'x 710 (5th Cir. 2007)..................................................42

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993).................................................................29, 31, 34

*Pritchett v. Philadelphia Indem. Ins. Co.*,
    No. 5:22-CV-042, 2022 WL 22380784 (N.D. Tex. Dec. 27, 2022) .......31, 33

*Schwan-Stabilo Cosmetics GmbH v. Pacificlink Int'l Corp.*,
    401 F.3d 28 (2d Cir. 2005) ....................................................... 19-20

*See v. Seattle*, 387 U.S. 541 (1967)...............................................................43, 44

*Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274 (5th Cir. 1989)........28

*Thomas v. Great Atlantic & Pacific Tea Co.*, 233 F.3d 326 (5th Cir. 2000) ..........42

*Thompson v. Allstate Ins. Co.*, 476 F.2d 746 (5th Cir. 1973) ...................................19

*United States v. Clendening*, 526 F.2d 842 (5th Cir. 1976)....................................22

*United States v. Evers*, 669 F.3d 645 (6th Cir. 2012) ............................................36

*United States v. Frezzo Bros.*, 642 F.2d 59 (3d Cir. 1981)....................................21

*United States v. Garcia*, 496 F.3d 495 (6th Cir. 2007)...........................................36

*United States v. Jubert*, No. 1:23-cr-104-TBM,
    2023 U.S. Dist. LEXIS 158721 (S.D. Miss. Sep. 7, 2023) .................... 20-21

*United States v. Martin*, 615 F.2d 318 (5th Cir. 1980)............................................46

*United States v. Varela-Rivera*, 279 F.3d 1174 (9th Cir. 2002) ............................21

*Utah v. Su*, 109 F.4th 313 (5th Cir. 2024).............................................................27

*Williams v. Santander Consumer USA Holdings Inc.*,
    No. 3:21-CV-3176-D-BH, 2022 WL 3081765 (N.D. Tex. Aug. 2, 2022)....33

*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018)...............................................37, 46

*Zadeh v. Robinson*, 928 F.3d 457 (5th Cir. 2019) ..................................................12

## Constitution, Statutes, Regulation, and Rules

28 U.S.C. § 636(b)(1)................................................... v, vi, 2, 17, 24, 25, 26, 27, 28

28 U.S.C. § 1291 ..................................................................................................1

28 U.S.C. § 1331 ..................................................................................................1

28 U.S.C. § 1343 ..................................................................................................1

42 U.S.C. § 1983 ................................................................2, 6, 38

FED. R. CIV. P. 6(b) ...............................................................28, 29

FED. R. CIV. P. 16(b)(4) ..............................................................29

FED. R. CIV. P. 54(b) ..................................................................19

FED. R. CIV. P. 56 .......................................................................20

FED. R. CIV. P. 72 .......................................................................10

FED. R. CIV. P. 72(b) ..................................................................25

## Treatises

4B *Wright & Miller*, § 1165 .......................................................30

10 James Wm. Moore, *Moore's Federal Practice 3d*, § 55.20[2][b] ......................28

10 Charles A. Wright et al.,
    *Federal Practice & Procedure* § 2681 (2d ed. 1983) ...................................28

## JURISDICTIONAL STATEMENT

This appeal is brought under 28 U.S.C. § 1291 from the final judgment entered on May 13, 2025, by the United States District Court, Southern District of Texas, Victoria Division. (ROA.1951) Plaintiff-Appellant filed a timely Notice of Appeal on June 11, 2025. (ROA.1952) The district court had jurisdiction over these federal law claims under 28 U.S.C. §§ 1331 and 1343. (ROA.730 ¶ 3)

## STATEMENT OF ISSUES

The issues presented are:

1.     Amid abundant authority requiring the resolution of matters on their merits rather than on procedural quirks, whether it was an abuse of discretion to render summary judgment below without considering ***any*** of Plaintiff's evidence.

2.     Whether a district court properly deferred complete authority to a magistrate to deny leave to Plaintiff to submit his opposition to motions for summary judgment, and for the magistrate subsequently to exclude the entirety of Plaintiff's evidence with an order rather than as a recommendation that would have been subject to *de novo* review by the district court.

3.     Whether a rote recitation by a district court of a recommendation for summary judgment by a magistrate judge which was rendered without consideration of any response by the opposing party, without the district court

performing any analysis that would facilitate review on appeal, satisfies the required *de novo* review by the district court under 28 U.S.C. § 636(b)(1).

4.     Whether it was an abuse of discretion for the district court judge to refuse to consider Plaintiff's evidence in opposition to summary judgment by characterizing it as new evidence, when Plaintiff filed it in timely opposition to the magistrate's recommendation rendered without considering Plaintiff's evidence.

5.     Whether there is a disputed issue of material fact precluding summary judgment, when Defendants lacked a reasonable basis for and conducted their warrantless raid of Plaintiff Morgan's office in an unreasonable way in violation of his Fourth Amendment rights, amid overwhelming evidence that Dr. Morgan was not operating a "pill mill."

## STATEMENT OF THE CASE

Plaintiff Courtney Morgan ("Morgan") brought civil-rights claims against Defendants Mary Chapman ("Chapman") and John Kopacz ("Kopacz") under 42 U.S.C. § 1983, based on their violations of his constitutional rights in improperly searching his medical clinics. (ROA.743-751) Defendants performed an unlawful search with multiple instances of wrongdoing before, during, and after that search, and while continuing to falsely disparage the innocent Dr. Morgan. (ROA.743-751) Stereotypes against Dr. Morgan, a black physician who shares the interest in music that his accomplished performer father has, tainted the failure of Defendants

to be objectively fair in their views toward Dr. Morgan's innovative practice, which was obviously never a "pill mill." (ROA.1835-1836, 1850, 188l, 1888-1889) Defendant Kopacz repeatedly omitted or distorted exculpatory evidence about Dr. Morgan, the exercise of the search itself was abusive and beyond any legitimate scope, and the court below failed to address multiple reasons why qualified immunity does not protect Defendants' wrongdoing. (ROA.1842-1843, 1853-1856, 1949-1950)

Despite a prior reversal and remand by this Court in favor of Plaintiff, the district court again dismissed this matter, without ever considering Plaintiff's evidence. (ROA.489-508, 1947-1949) The lower court elevated form over substance by granting the equivalent of a default summary judgment against Plaintiff while his counsel was unaware that the magistrate was drafting a decision. (ROA.1771, 1944-1951) No oral argument was held, and no scheduling notice was provided by the magistrate to Plaintiff's counsel, who was having a family health crisis, and opposing counsel confirmed her understanding that a deadline for opposition had not been set. (ROA.1769-1771) When Plaintiff's counsel was astonished by a summary judgment opinion rendered without considering her opposition, she sought leave to submit arguments and evidence, but the court denied that. (ROA.1758-1804) The result below was contrary to the Federal Rules and multiple precedents of this Court, which prohibit elevating form over

3

substance to avoid the merits of a case as the district court did in this case. (ROA.1765, 1944-1951)

Three (3) courts, including this one on a prior appeal in this case, have independently rejected and ruled against Defendants' ongoing attempts to falsely disparage Dr. Morgan to justify Defendants' violation of his rights. (ROA.489-508, 1865-1875, 1880-1887) A straightforward application of the law, well-established at the time of Defendants' unlawful search of Dr. Morgan's clinic, required denying Defendants' motions for summary judgment to resolve disputed issues of material fact. (ROA.1850-1853) The erroneous result below was due to its improper exclusion of all of Dr. Morgan's evidence in opposition to Defendants' motions, based on a scheduling misunderstanding shared by counsel on both sides.

## A. Factual Background

At all relevant times, Dr. Courtney Morgan has been a licensed physician in Victoria, Texas owning and operating two medical clinics: Hop Medical Services and Drive Thru Doc. (ROA.731) The Hop Medical Services clinic focused on general family medicine, and Drive Thru Doc focused only on simpler medical issues treatable within 30 days. (ROA.731-732) Dr. Morgan treated non-life-threatening illnesses such as rashes, toothaches, strep throat, and sexually transmitted diseases. (ROA.731-732) Drive Thru Doc provided these services at a discounted rate in order to help uninsured patients. (ROA.731-732) Dr. Morgan

never stored, retained, or dispensed any controlled substance at either clinic. (ROA.732)

On July 18, 2013, law enforcement raided Dr. Morgan's clinics to search for evidence of illegal controlled-substance related activity. (ROA.732-737) Mary Chapman, an investigator for the Texas Medical Board, and John Kopacz, an agent with the Texas Department of Public Safety, along with two additional Medical Board agents, two Drug Enforcement Administration agents, and a local Victoria, TX, police officer, served administrative *instanter* subpoenas on Morgan, searched his clinics, and seized medical files. (ROA.734-735) Chapman and Kopacz confined Morgan in an examination room, prevented his employees from communicating with each other, and collected all of their cell phones. (ROA.736-737, 1923-1926, 1927, Exh. Q) Chapman and Kopacz seized confidential documents, including all patient medical records for March 2013, as well as additional documents that were not listed in the subpoenas. (ROA.735-739)

Defendant Chapman fabricated evidence against Plaintiff Morgan to encourage a baseless criminal prosecution. (ROA.742) In Texas, a clinic that prescribes four specific types of controlled substances to greater than half of its patients on a monthly basis must obtain a pain management clinic certification. (ROA.741) Chapman made a report that included *all* patients who received

prescriptions for *any* controlled substance, knowing that this was deceptive. (ROA.754-756)

Based on that fabricated report, Kopacz suggested to the district attorney that Morgan be charged with operating an unlicensed pain management clinic. (ROA.746) A grand jury indicted Morgan based solely on the fabricated report, and he was arrested for the third-degree felony of non-certification of a pain management clinic. (ROA.752-753, 755-756)

## B. Relevant Procedural History

Plaintiff Morgan initiated this lawsuit by filing his original complaint against Defendants Chapman and Kopacz in January 2017. (ROA.22-50) After the district court dismissed this case on the pleadings, Plaintiff Morgan appealed and prevailed in this Court. *See Morgan v. Chapman*, 969 F.3d 238, 241 (5th Cir. 2020) ("This is another in a long line of cases involving the Texas Medical Board serving *instanter* subpoenas on medical clinics. We have said that those subpoenas—which do not allow for court review and demand immediate compliance—are unconstitutional."). This Court held that Defendant "Chapman is not entitled to absolute immunity," and remanded for further proceedings in district court. *Id.* at 251.[1]

---

[1] This Court, in the prior appeal of this case, required dismissal of Plaintiff Morgan's Section 1983 claim for malicious prosecution, and the "mandate rule" required the district court follow this Court's decision. *See Morgan v. Chapman,*

Back in the district court on remand, Morgan next filed a Third Amended Complaint in October 2021, which is the operative complaint. (ROA.730) The District Court denied Kopacz's motion to dismiss (ROA.760-766) and granted in part and denied in part Chapman's motion to dismiss (ROA.768-792). (ROA.876-915)

On January 29, 2024, Defendant Kopacz filed a motion for summary judgment (ROA.992-1348) and Defendant Morgan filed a motion for judicial notice (ROA.1350-1395).

On February 1, 2024, the District Court conducted a pre-motion hearing to address a discovery dispute between the parties. (ROA.2024-2025) Chapman's counsel explained that she intended to produce documentary discovery to Morgan but that the Texas Medical Board required the documents to be filed under a protective order, and the parties had been unable to agree on the order's language. (ROA.2024-2025) Counsel for Morgan expressed that he still wanted to obtain the documents but maintained that discovery had closed and Chapman's deadline to produce them had already expired. (ROA.2026) Morgan's counsel did not object to

---

969 F.3d 238, 245 (5th Cir. 2020) ("This circuit used to recognize an analogous *constitutional* right to be free from malicious prosecution. Today, it does not.") (citing *Gordy v. Burns*, 294 F.3d 722 (5th Cir. 2002)). But last year this Court held otherwise in *Espinal v. City of Hous.*, 96 F.4th 741, 748 (5th Cir. Mar. 7, 2024) ("Times have changed. … We have since acknowledged that the Court's 'clear recognition of the constitutional tort of malicious prosecution' overruled our precedent to the contrary.") (inner quotation omitted).

crafting something that would enable receipt of the materials. (ROA.2027) The parties ultimately agreed to engaging a protective order, and any language not agreed to would be resolved by the Court. (ROA.2033-2034)

Chapman's counsel then asked for a one-to-two-month extension to file a motion for summary judgment after serving the discovery documents on Morgan. (ROA.2034) Morgan's counsel pointed out that Chapman had not finished discovery despite the deadline having passed in September 2023 and had not supplied responses to the interrogatories or admissions. (ROA.2037-2040) Chapman's counsel acknowledged that the materials were outstanding but asked to serve them despite the expired deadline. (ROA.2037-2038) The Court expressed reluctance to impose sanctions, such as deemed admissions, absent bad faith and indicated it would allow Chapman to serve overdue discovery. (ROA.2040-2043, 2050-2051) The Court emphasized that the case should be resolved on the merits rather than through sanctions for counsel's missteps, stating, "I am not inclined to have the lawyers' screw-ups impact the merits of the case whenever I can if I don't find that there was bad faith… this case ought to be decided on the merits." (ROA.2042-2046). The Court permitted the belated discovery and designated the control of the calendar schedule to Plaintiff with the understanding that the Court would enter an order consistent with his proposal. (ROA.2049-2050).

Defendants moved for summary judgment by arguing that they are protected

by qualified immunity Judgment. (ROA.992-1005, 1434-1452, 1756-1757)

After years of litigation before the U.S. District Court Judge Tipton and prior federal judges assigned to this case, Judge Tipton referred this matter to Magistrate Judge Julie K. Hampton on October 10, 2024. (ROA.1718-1720) Plaintiff's counsel declined to consent to authority by the magistrate judge to "assume[ ] all powers, duties, and responsibilities of the district judge." (ROA.1718-1720) The magistrate judge set a hearing on trial-related motions (ROA.1721), and subsequently canceled that hearing while stating that she would issue orders on those motions (ROA.19-20), but was entirely silent as whether she would set deadlines or hold a hearing as to Defendants' motions for summary judgment. (ROA.19-20)

To the complete surprise of Plaintiff's counsel, on March 5, 2025, Magistrate Judge Hampton rendered a Memorandum and Recommendation ("M&R"), without ever considering any opposition by Plaintiff. (ROA.1729-1757) The M&R was based entirely on the facts presented by only the Defendants, without considering any factual presentation or legal argument by Plaintiff which would show disputed issues of material fact. (ROA.1730-1732, 1739-1746)

Plaintiff Morgan then moved for leave to file his opposition to Defendants' motions for summary judgment. (ROA.1758-1767) Plaintiff's basis for his motion included counsel's confrontation with an overwhelming family crisis, including the

sudden and premature death of her thirty-four-year-old sister-in-law and the ongoing need of supporting her family and caring for her young children. (ROA. 1769-1771) During this period, Plaintiff's lead counsel was unaware that the previously stayed motion for summary judgment had been reassigned to the magistrate judge and would be decided without a hearing or the issuance of a briefing schedule. (ROA.19-20, 1758-1759, 1818) The stay of that summary judgment motion and the suspension of the briefing schedule, as ordered by Judge Tipton at the prior year's hearing, resulted from Defendant Chapman's counsel's failure to respond to requests for admissions and other discovery. (ROA.1799-1801) At that hearing, Judge Tipton ruled that Plaintiff Morgan would be permitted to conduct additional discovery based on the materials to be produced by Defendant Chapman's counsel. (ROA.1798-1801)

Judge Tipton referred Plaintiff Morgan's motion, for leave to file his opposition, to the magistrate judge who then denied it with respect to Plaintiff's request for leave to submit his evidence in opposition to summary judgment. (ROA.1821, 1833) Pursuant to FED. R. CIV. P. 72, Plaintiff Morgan then filed on April 24, 2024, his Objections to Magistrate Judge's Memorandum and Recommendation. (ROA.1834-1927)

On May 13, 2025, the district court issued its Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge. (ROA.1944-1950), and its Final Judgment (ROA.1951) Despite having allowed Defendant to miss her deadline on responding to admissions, interrogatories, and production and granting her leave to respond as well as leave to file her summary judgment motion (ROA.1778-1779, 1785-1786, 1788-1792, 1801-1803), Judge Tipton denied any reprieve to Plaintiff Morgan in connection with his request for leave to file his evidence in opposition to Defendants' motions for summary judgment. (ROA.1944-1950)

Plaintiff Morgan timely filed his Notice of Appeal on June 11, 2025 (ROA.1952)

### C. Rulings Presented for Review

In its final decision below, the district court mechanically adopted the recommendation of the magistrate judge in full, without ever considering the evidence submitted by Plaintiff Morgan in opposition to Defendants' motions for summary judgment and without the district court providing any analysis of its own. (ROA.1944-1950) The district court treated the entirety of Plaintiff's submission as "new evidence": "The Court thus finds that the relevant factors do not support accepting Morgan's new evidence." (ROA.1947-1949) In fact the lower court did not consider "any" evidence by Plaintiff Morgan. (ROA.1947-1949, 1951) In a

one-sentence footnote without any analysis or explanation, the district court sweepingly and tersely wrote that "[t]he Court also agrees with Chapman [who was merely one of the two Defendants] that Morgan's evidence, even if considered, does not raise a genuine fact issue about whether Chapman was entitled to qualified immunity." (ROA.1949, n.1)

The district court addressed the qualified immunity issue in one paragraph:

The Court also finds that Judge Hampton correctly determined that both Chapman and Kopacz are entitled to qualified immunity. [ROA.1949] The Fifth Circuit held in 2019 that, while "on-demand searches of [pain-management] clinics violate the constitution when the statutory scheme authorizing the search fails to provide sufficient constraints on the discretion of the inspecting officers," the law on this issue "was not clearly established." *Zadeh v. Robinson*, 928 F.3d 457, 468-70 (5th Cir. 2019). The search here happened in 2013. [*Id.*] The Court also agrees with Judge Hampton's determination that Morgan has not established—as to either Defendant—that the search was "solely to uncover evidence of criminality," as required to show pretext. [citations omitted]. Finally, the Court agrees that the evidence does not show that Kopacz's role in the search violated the Fourth Amendment and that, in any event, the law was not clearly established at the time. [ROA.1949-1950]

(ROA.1949-1950) But the district court failed to address the instances of wrongdoing by Defendants which negate qualified immunity in multiple other ways, such as how Defendants' search of Dr. Morgan's clinic was pretextual for a criminal investigatory purpose. (ROA.1849-1852)

The Magistrate's M&R, also on appeal here, was based entirely on Defendants' submission, without considering anything by Plaintiff in opposition. (ROA.1729-1757) Initially the Magistrate recited what is in Plaintiff's operative

complaint. (ROA.1730-1734), and then explained the applicable legal precedents. (ROA.1734-1739) The Magistrate then restated Defendant Kopacz's argument that "TMB and DPS were conducting separate investigations of Morgan," and also that "liability does not extend to a law enforcement officer who merely assisted in the execution of another party's subpoena," as Defendant Kopacz downplayed his role. (ROA.1740) The Magistrate held that "Morgan has not responded" (ROA.1740), which was because counsel on both sides were unaware of a deadline to respond. *See* Point II, *infra* (citing ROA.1771 ¶ 9). As summary judgment evidence, the Magistrate simply recited Defendants' misleading factual presentation without any rebuttal by Plaintiff's counsel because she was unaware the decision was being written. (ROA.1740-1744) Even under Defendants' factual account, there are glaring issues such as why Kopacz arranged for his investigator to leave if Dr. Morgan were summoned, which would have exonerated him, and how Kopacz mischaracterized an office visit with Dr. Morgan by another investigator prior to issuing a prescription as merely a "meeting". (ROA.1741) The Magistrate then recommended entirely in favor of Defendant Kopacz based entirely on his version of the "summary judgment evidence." (ROA.1745-1747) The Magistrate considered nothing from Plaintiff Morgan. On some factual points the Magistrate stated that "Morgan has not provided any contrary evidence" (ROA.1745), but that

is only because absolutely nothing from Plaintiff Morgan was considered in this M&R.

The Magistrate's recommendation in favor of Defendant Chapman was similar in analysis, again including statements like "Morgan has not responded" (ROA.1749) and "Morgan has not submitted any evidence contradicting Chapman's explanation" (ROA.1754), because Morgan's counsel was unaware that a response was due. The Magistrate fully believed Chapman's representations that she thought Plaintiff Morgan was operating a "pill mill" or "unregistered pain clinic," when Chapman's own submissions show that she audited his practice for a full year, from June 2012 to June 2013, and Morgan's statutorily designated prescriptions did not exceed 50% for that full period but merely crept above that pain clinic threshold in only 1 out of 12 months. (ROA.1753, 1755) The Magistrate never saw or considered the findings of the Victoria County District Court judge in a parallel proceeding that Chapman's testimony about this was "evasive" and "less than credible." (ROA.1871) The Magistrate accepted at face value Chapman's implausible assertion that "TMB [Texas Medical Board] and Kopacz were independently investigating Morgan prior to the issuance of the subpoenas and the searches (ROA.1756), despite Kopacz's testimony that half of his time was spent "liaising with TMB [Texas Medical Board]." (ROA.1742) Yet without the benefit

14

of a rebuttal by Morgan, the Magistrate held entirely in Chapman's favor. (ROA.1756)

When Plaintiff Morgan's counsel was surprised by the issuance of the M&R, she then moved for leave to file Morgan's evidence and arguments against Defendants' motions for summary judgment. (ROA.1758-1805) Judge Tipton referred Plaintiff's motion to the Magistrate, who issued an "Order" denying Plaintiff's request. (ROA.1821-1833) The Magistrate observed that "there are no currently pending deadlines" which would have been impacted by granting Plaintiff leave. (ROA.1832) The Magistrate found that "Defendants [] did not have the benefit of reading the analysis in the M&R before filing their motions" (ROA.1833), but the M&R adopted everything in Defendants' motions so it is difficult to see what difference that would have made. The extension of time allowed by the district court for co-Defendant Chapman (who is represented by the same government legal department as Kopacz) to submit untimely responses to discovery was used against Plaintiff Morgan, by the Magistrate holding that an additional delay would somehow be unfair to Kopacz. (ROA.1832) The Magistrate thereby excluded all of Plaintiff Morgan's evidence in opposition to Defendants' motions for summary judgment. (ROA.1833)

## SUMMARY OF ARGUMENT

After a reversal and remand by this Court, the district court subsequently granted summary judgment to Defendants without genuinely considering any evidence by Plaintiff in opposition. After years of litigation and a prior appeal won by Plaintiff in this Court, the district court should have considered Plaintiff's evidence and not deferred to the magistrate judge's decision to exclude all of it. Plaintiff never consented to the magistrate judge deciding the outcome of this case, and yet that is in essence what occurred below without the consideration of Plaintiff's evidence. Many years of litigation and a previous trip to this Court evaporated in a scheduling misunderstanding in the trial court, where counsel on both sides were on the same page, but the magistrate ruled by finding a default on motions for summary judgment. Plaintiff sought leave to file his opposition to Defendants' motions for summary judgment but, in an abuse of discretion, the district court denied leave.

The result below was the equivalent of the ultimate harsh sanction – dismissal of a case after years of effort on it – such that the outcome was based not on the substantive merits, but on a mere scheduling misunderstanding. In essence, Plaintiff's entire case was tossed out based on a procedural quirk. This was an abuse of discretion requiring reversal for several reasons.

First, it was an abuse of discretion for the lower court to elevate form over

16

substance to the extent of never allowing or considering Plaintiff's oppositions to Defendants' motions for summary judgment.

Second, the district court committed legal error by deferring complete authority to a magistrate to deny leave to Plaintiff to submit his opposition to motions for summary judgment, thereby effectively disposing of Plaintiff's lawsuit contrary to 28 U.S.C. § 636(b)(1). Third, the decision below fails to satisfy the required standard of *de novo* review under 28 U.S.C. § 636(b)(1), by lacking analysis and explanations of its reasoning. Fourth, the magistrate's process was unreasonable and an abuse of discretion to recommend granting motions for summary judgment without ever considering any opposition by Plaintiff, whose counsel was unaware of the magistrate's timetable and there was a health crisis in Plaintiff's counsel's family.

Finally, there are genuine issues of material fact precluding summary judgment. This includes evidence that Defendants lacked a reasonable basis for their raid of Dr. Morgan's offices and Defendants had clear indications that Dr. Morgan was not operating a "pill mill" of which Defendants falsely accused him.

## ARGUMENT

### I. Standard of Review.

"The standard of review on summary judgment is de novo." *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 215 (5th Cir. 2024) (citing *Davidson v.*

*Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018)). "The court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Michaels Stores*, 98 F.4th at 216 (citing *Cap. City Ins. Co. v. Hurst*, 632 F.3d 898, 903 (5th Cir. 2011)).

As to whether there was an abuse of discretion below on how this was handled procedurally in refusing to consider evidence in opposition to a motion for summary judgment, at a minimum the process invoked must "be reasonable." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (inner quotations omitted).

## II. The Judgment Below Without Considering Any of Plaintiff's Evidence in Opposition Was an Abuse of Discretion in Elevating Form over Substance to Avoid Addressing the Merits.

As this Court has unanimously emphasized in reversing a grant of summary judgment on analogous facts, an attorney's inadvertent tardiness on an implicit procedural deadline to oppose a dispositive motion is not a sufficient basis for excluding the evidence entirely:

> "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." [*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 n.1 (5th Cir. 1992)] (quotations omitted)] Furthermore, federal courts should not be agnostic with respect to the entry of default judgments, which are "generally disfavored in the law" and thus "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger-Silas Mason Co. v. Metal Trades Council,* 726 F.2d 166, 168 (5th Cir.1984). Thus, "where there are no intervening equities any doubt should, as a general proposition, ***be resolved***

*in favor of the movant to the end of securing a trial upon the merits*." [*Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)].

*Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (emphasis added, footnote omitted).

"The Federal Rules were intended to abolish such exaltations of form over substance." *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973) (Wisdom, J.) (reversing a dismissal of a pleading that did not completely contain a certain allegation); *Mills v. Zapata Drilling Co.*, 722 F.2d 1170, 1173-74 (5th Cir. 1983) ("We decline, however, to adopt a form-over-substance approach … [and] will not enforce a 'technical, expensive, and burdensome compliance' where to do so would not significantly advance the purposes of Rule 54(b) and would only frustrate the manifest intent of the parties and the trial court.") (quoting *Crowley Mar. Corp. v. Panama Canal Com.*, 849 F.2d 951, 953 (5th Cir. 1988)).

The Second Circuit has multiple precedents against what the district court did below, such that a split in the Circuits would result if the decision below were affirmed. "We have emphasized that 'care should be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.'" *650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66, 96-97 (2d Cir. 2016) (quoting *Schwan-Stabilo Cosmetics GmbH v. Pacificlink Int'l Corp.*,

401 F.3d 28, 33 (2d Cir. 2005), alterations and internal quotation marks omitted).

As the Second Circuit explained further, in a subsequent decision that likewise reversed a grant of summary judgment in the absence of consideration of the opposition:

> We vacate and remand for procedural error where a district court grants summary judgment before a party has notice or the opportunity to be heard and, as a result, the party is procedurally prejudiced. *See* [*650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66, 97 (2d Cir. 2016)] (vacating the district court's judgment where the losing party had no notice or opportunity to present evidence, and concluding that, because of an undeveloped record, the district court procedurally erred in granting summary judgment in favor of the government). A party is prejudiced by the district court's use of a truncated or expedited procedure if the party "is surprised by the district court's" *sua sponte* grant of summary judgment and "that surprise results in the party's failure to present evidence in support of its position." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000) (citations omitted); *see ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 525 (2d Cir. 2018) (vacating because "[b]y *sua sponte* entering summary judgment without affording ING the opportunity to present its relevant evidence, the District Court denied ING the procedures to which it was entitled under Rule 56").

*Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 216 (2d Cir. 2024).

The refusal by the lower court to consider evidence by Plaintiff Morgan in opposition to Defendants' motions for summary judgment is particularly striking, and constitutes an abuse of discretion. In many analogous circumstances federal courts have reversed such rulings. *See, e.g., Freeman v. Cty. of Bexar,* 142 F.3d 848, 852 (5th Cir. 1998) (reversing because "the district court's decision to disregard [a] supplemental affidavit is insupportable"); *United States v. Jubert*, No.

1:23-cr-104-TBM, 2023 U.S. Dist. LEXIS 158721, at *6 (S.D. Miss. Sep. 7, 2023) (reject a magistrate's recommendation because it was rendered "without considering any evidence"); *United States v. Frezzo Bros.*, 642 F.2d 59, 60 (3d Cir. 1981) (reversing the denial of petitions for habeas relief when the district court had "denied the petitions without considering any evidence"); *Massie v. Rubin*, 270 F.2d 60, 61 (10th Cir. 1959) (reversing and remanding based in part on how "[d]uring the hearing on plaintiff's motion for summary judgment, the court [ruled] … without considering any evidence").

When a new judge or magistrate is assigned a case, it is customary that he or she calls a status conference or sets deadlines for pending dispositive motions for the parties before deciding them. *See, e.g.*, *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 413 n.6 (5th Cir. 2023) (after a case was assigned to a magistrate judge, she held multiple status conferences, during one of which a potential conflict of interest was disclosed and consented to); *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1019-20 (5th Cir. 1987) ("[T]he parties and their counsel participated in a status conference before Magistrate Michaelle Wynne. The magistrate advised the parties of their right to trial before a district judge."); *cf. United States v. Varela-Rivera*, 279 F.3d 1174, 1176 (9th Cir. 2002) ("The case was subsequently reassigned to Judge Roll for trial. At a status conference before Judge Roll …."). In light of customary

21

practices, it was not unreasonable for counsel on both sides to expect a status conference or notice before a newly assigned magistrate issued a dispositive recommendation on motions for summary judgment.

As this Court held in an analogous situation of a dismissal of an indictment due to untimeliness by the government:

> In light of the confusion surrounding the brief filing schedule, which was shared by the Clerk of the Court, and in view of the fact that even after the Government's brief on the suppression motion was filed, substantial additional delays were caused by the defendant's failure to file responsive briefs promptly, we do not view the delay associated with the suppression motion and hearing as unreasonable. Our review of the circumstances involved … convinces us that the delays involved were not so excessive as to justify dismissal with prejudice.

*United States v. Clendening*, 526 F.2d 842, 847-48 (5th Cir. 1976).

Defendants did not deny below that there was confusion by counsel for all parties about the schedule for briefing on Defendants' summary judgment motions, consideration of which had been stayed by Judge Tipton prior to transfer of this matter to the magistrate judge. One of Defendants' attorneys represented to Plaintiff's lead counsel during the relevant period that:

> It looks like you are right. There is not a need to vacate any deadlines or settings because *the referral order to Magistrate Judge Hampton cancelled any remaining deadlines*/hearing before Judge Tipton, and *Judge Hampton has not set new deadlines*.

(ROA.1771 ¶ 9, 1818, emphasis added).

22

When Defendants missed a key deadline, Judge Tipton granted Defendants' counsel reprieve from "death penalty admissions and all of that based on the fact that they didn't respond." (ROA.1791:12-13) Then Judge Tipton said:

> I'm going to let her [Defendant Chapman's attorney] enter the discovery, okay? But I'm going to let you [Plaintiff Morgan's counsel] also pick how you want – how much time that you want in order to respond to this. I don't – you know, having heard what happened with the paralegal, and while I'm not particularly happy with the lack of organization and the inability to stay on top of matters that matter to a lot of people, including the plaintiff in this case, I am – like I said, it impacts the merits, and the merits are people more than just the lawyers and their staff. And I think that this case ought to be decided on the merits.

(ROA.1793:18-1794:2) The pending motion for summary judgment was then held in abeyance:

> MR. ANDERSON [as co-counsel for Plaintiff Morgan]: [Defendant Kopacz] filed a motion for summary judgment.
> THE COURT: Well, I'm not going to (indiscernible) on this until –
> MR. ANDERSON: So – because we want that to be held in -- **our response to be held in abeyance** –
> THE COURT: Of course.
> MR. ANDERSON: – until so that we can do it all on one fell swoop.
> THE COURT: And that's what I'm saying. As part of the – as part of your proposed schedule going forward, things that you would like to see happen, I assume you don't – on behalf of your client, you don't have a problem with me **delaying ruling on the motion for summary judgment**?
> MR. LINDSEY [counsel for Defendant Kopacz]: I don't, Your Honor.

(ROA.1799:1-15, emphasis added)

In sum, there was an honest misunderstanding **on both sides** that the magistrate judge would consider and decide the summary judgment motions

without setting new deadlines on those motions, and without first receiving and considering any response by Plaintiff's counsel. Amid this reasonable misunderstanding, it was unreasonable for the magistrate judge to decide Defendants' motions for summary judgment without allowing Plaintiff's response in opposition.

### III. The District Court Committed Legal Error by Deferring Complete Authority to a Magistrate to Deny Leave to Plaintiff to Submit His Opposition to Motions for Summary Judgment, Thereby Effectively Disposing of Plaintiff's Lawsuit Contrary to 28 U.S.C. § 636(b)(1).

The magistrate judge below recommended granting Defendants' motions for summary judgment without considering *any* opposition by Plaintiff. The magistrate judge's decision to exclude entirely Plaintiff's opposition, by denying his motion for leave to file it, was tantamount to ruling in favor of Defendants' motions by default. Typically, a party cannot survive motions for summary judgment unless his opposition is allowed and considered by the court.

The magistrate's ruling against allowing Plaintiff's submission was done by an Order (ROA.1821-1833) rather than as a recommendation, and the district court then treated the magistrate's order as essentially dispositive and unreviewable. "Morgan cannot now circumvent that ruling," the district court held in reference to this Order by the magistrate which essentially eliminated all of Plaintiff Morgan's claims. (ROA.1948)

This constituted a reversible legal error by the district court in delegating its dispositive authority entirely to the magistrate judge, without even the possibility of *de novo* review by the district court as expressly required by 28 U.S.C. §636(b)(1). The magistrate judge refused to consider Plaintiff's opposition to Defendants' motions for summary judgment, and refused to allow Plaintiff leave to submit his opposition. This decision by the magistrate to exclude the entirety of Plaintiff's opposition was the functional equivalent of granting Defendants' motions, and thus should have been reviewable *de novo* as a recommendation rather than as a nonreviewable, final order. This Order by the magistrate dictated the outcome of this case, and the district court committed reversible legal error as a matter of law by binding itself to an essentially dispositive ruling by the magistrate judge.

## IV. The Decision Below Fails to Satisfy the Required Standard of *De Novo* Review Under 28 U.S.C. § 636(b)(1), by Lacking Analysis and Explanations of Its Reasoning.

The review by a district court of a magistrate decision must be *de novo* under 28 U.S.C. §636(b)(1). "In considering a magistrate judge's opinion, the district court must engage in a *de novo* review of its factual findings and legal conclusions, insofar as they are timely challenged by an affected party." *Malone v. Bodycote Heat Treating*, No. H-04-3940, 2007 U.S. Dist. LEXIS 65034, at *2 (S.D. Tex. Sep. 4, 2007) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)).

As set forth more fully in Point V below, Plaintiff Morgan demonstrated disputed issues of material fact as to multiple violations of his constitutional rights by Defendants in connection with their search of his clinics. Chanting "qualified immunity" does not address issues like the search going beyond its proper limits, or having an improper motive. Even searches pursuant to a valid warrant – of which there was none to justify Defendants' raids of Plaintiff's clinics – are accountable in court for violations in the execution of the warrant. *See, e.g.*, *Husband v. Bryan*, 946 F.2d 27, 30 (5th Cir. 1991) ("Those who need a warrant and search beyond its scope violate clearly established constitutional rights.") (citing *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985)).

The lack of analysis or explanation by the district court renders it impossible to glean whether it truly applied a *de novo* standard of review, or an incorrect standard of merely clear error. *See Elijah v. Dunbar*, 66 F.4th 454, 457-58 (4th Cir. 2023) ("We agree with Elijah that his grounds for objection were clear and thus should have prompted a de novo review of the magistrate's R&R. Because the district court only reviewed the R&R for clear error, we vacate and remand with directions to review Elijah's grounds for objection de novo."); *Bell v. United States*, No. 23-6383, 2024 U.S. App. LEXIS 2554, at *2 (4th Cir. Feb. 5, 2024) ("Because the district court did not conduct a de novo review of the magistrate

judge's dispositive finding, we vacate the court's order and remand with instructions to review Bell's objections to this finding de novo.").

This Court has wisely emphasized its "status as a court of review, not first view." *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024) (vacating and remanding "so that the district court can reassess the merits"). The lack of analysis in the district court's decision as to the multitude of alleged violations by Defendants of Plaintiff's constitutional rights makes appellate review more difficult than it should be. A remand is warranted to attain the *de novo* review that 28 U.S.C. § 636(b)(1) guarantees.

**V.    The Magistrate's Process Was Unreasonable and an Abuse of Discretion to Recommend Granting Motions for Summary Judgment Without Ever Considering Any Opposition by Plaintiff, Whose Counsel Was Unaware of the Magistrate's Timetable and There Was a Health Crisis in Plaintiff's Counsel's Family.**

In this long-running, hard-fought litigation in which Plaintiff had prevailed in a prior appeal to this Court, it was obvious that Plaintiff would be vigorously opposing Defendants' motions for summary judgment. (ROA.489-508) But an unconsented referral of this case to the magistrate judge, a misunderstanding among counsel on both sides about deadlines, and a family health crisis combined to result in a manifest miscarriage a justice: a grant of summary judgment without ever considering Plaintiff's opposition.

"The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citing, *inter alia*, *Charlton L. Davis & Co. P.C. v. Fedder Data Center*, 556 F.2d 308, 309 (5th Cir. 1977), and *E.F. Hutton & Co., Inc. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972), footnotes omitted). *See also* 10 James Wm. Moore, *Moore's Federal Practice 3d*, § 55.20[2][b] (noting "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments"); 10 Charles A. Wright et al., *Federal Practice & Procedure* § 2681, at 402 (2d ed. 1983).

Below, Plaintiff's delay in opposing Defendants' motions for summary judgment "cannot reasonably be interpreted as a reluctance to defend the suit." *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 692 (D.C. Cir. 1970). "Accordingly, we hold that the District Court erred in refusing to set aside the default judgment." *Id.*

"Federal Rule of Civil Procedure 6(b) permits a district court to extend the various timelines set forth in the Federal Rules of Civil Procedure." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021). Rule 6 provides that "the court may, for good cause, extend the time" for "an act [that] may or must be

28

done within a specified time." The "good cause" standard under Rule 6(b) is a far more lenient standard than the Rule 16(b)(4) "good cause" standard. *Devillier v. State of Texas*, No. 3:20-CV-00223, 2023 WL 2744398, at *1 (S.D. Tex. Mar. 31, 2023). Good cause under Rule 16 requires a showing that the deadline could not reasonably be met despite the moving party's diligence, whereas in Rule 6, failure to act was due to excusable neglect. While Rule 16 principles are relevant**,** the applicable standard is Rule 6(b) because the pre-trial case management calendar with new deadlines was never reset. (ROA.1771 ¶¶ 9-10) As a result, the more lenient Rule 6(b) standard applies.

### A. Plaintiff's Counsel Satisfied the Excusable Neglect Standard.

Under *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), courts evaluate excusable neglect by considering four key factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

These factors are not rigid but must be evaluated in the totality of the circumstances**,** considering equity, fairness, and all relevant circumstances surrounding the party's omission. *See Mattress Giant Corp. v. Motor Advert. & Design Inc.*, No. 3:07-CV-1728-D, 2008 WL 898772, at 2 (N.D. Tex. Mar. 31,

2008) ("Excusable neglect is intended and has proven to be quite elastic in its application. In essence it is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time.") (quoting 4B *Wright & Miller*, § 1165, at 533-34).

### 1.    Granting Plaintiff's Motion Would Not Have Prejudiced Defendants.

Defendants would not have suffered any prejudice if the lower court had granted Plaintiff's request to file his opposition with his evidence. The motions for summary judgment had been pending for several months. The first was filed prior to the above-referenced hearing; and the second motion for summary judgment was filed approximately four months after the scheduling deadline, without Plaintiff's objection or leave of the Court. The trial date was not reset, meaning that granting leave would not disrupt a trial schedule. Courts recognize that delay alone is not sufficient prejudice unless it impacts the opposing party's ability to litigate the case. *See Coleman Hammons Constr. Co. v. Occupational Safety & Health Review Comm'n*, 942 F.3d 279, 285 (5th Cir. 2019) (finding no prejudice where delay had no adverse effect on judicial proceedings or the opposing party's position). Any potential prejudice would have been minimal and curable, to enable the court below to consider the full merits of the case. Defendants did not suffer any demonstrable prejudice from the delay, and thus this factor strongly favored granting leave to Plaintiff to file his opposition.

**2.    The Length of Delay Does Not Undermine the Judicial Proceedings.**

Courts weigh not just the length of delay, but whether the delay creates any procedural unfairness. Courts have granted extensions after even significant delays where the case has not been materially disrupted. *See Pritchett v. Philadelphia Indem. Ins. Co.*, No. 5:22-CV-042, 2022 WL 22380784, at 2 (N.D. Tex. Dec. 27, 2022) (granting relief despite a four-month delay because the opposing party did not suffer prejudice, and the delay did not require modifications to other deadlines). Defendants' motions for summary judgment, the second of which was itself untimely, had been pending for several months, without immediate action taken to resolve them. Litigation had neither halted nor progressed, and without a scheduling order no procedural deadlines were adversely impacted. A slight further delay would not have prevented the lower court from ruling fairly on the motions if Plaintiff's requested leave to file his opposition were granted. A trial date was not calendared, and thus its status would not have been impacted by the delay. Therefore, this factor weighed in favor of granting the leave sought by Plaintiff.

**3.    The Reason for the Scheduling Snafu Was an Extraordinary Personal Circumstances, Not Neglect.**

The third *Pioneer* factor evaluates the reason for the delay and whether it was within the reasonable control of the movant. Courts must consider whether the circumstances were the result of mere inadvertence or an unavoidable hardship.

The Fifth Circuit has rejected rigid applications of the "control" factor, recognizing that even delays within a party's control may still be excusable. *See Coleman Hammons Constr. Co.*, 942 F.3d at 283 ("[T]he 'control' factor does not necessarily trump all other relevant factors.").

At the relevant time, Plaintiff's counsel faced an extraordinary personal crisis, stemming from the terminal illness and passing of a close family member, which required travel, caregiving, and emotional distress. (ROA.1769-1770 ¶¶ 2-8) Throughout 2024 and early 2025, Plaintiff's lead counsel was dealing with this catastrophe of her sister-in-law's untimely death with two very young children. (ROA.1770 ¶¶ 5-8) As Ms. Chaplin's declaration explained:

> I felt, regrettably in grievous error in retrospect, that there would be a new scheduling order from Judge Hampton or a notice of a hearing on the dispositive motions, in light of their significance, such that I would be able to submit our response in opposition. My family crisis unfortunately distorted my perception of this as I was dealing with daily personal crises.

(ROA.1771 ¶ 10)

This is not a case of mere neglect or oversight—counsel's circumstances were unavoidable and would have affected any reasonable attorney in a similar position. Given these extraordinary and unavoidable personal circumstances, this factor further weighed in favor of granting Plaintiff's requested leave to file his opposition to the motions for summary judgment.

### 4.    Plaintiff Acted in Good Faith.

Courts have found excusable neglect where there is no evidence that the movant acted in bad faith. *See Pritchett*, 2022 WL 22380784, at 2 (finding no bad faith where the failure to file was due to a calendaring mistake rather than willful delay); *see also Williams v. Santander Consumer USA Holdings Inc.*, No. 3:21-CV-3176-D-BH, 2022 WL 3081765, at *3 (N.D. Tex. Aug. 2, 2022) (Excusable neglect encompasses late filings due to a "mistake, inadvertence, or carelessness, and not to bad faith.").

Plaintiff's inaction was obviously not a result of bad faith, as there was no strategic purpose for delay or any attempt to manipulate the litigation process. Plaintiff's counsel sought leave below not as a legal tactic for intentional delay, but as a necessary step in navigating an exceptionally difficult period for Plaintiff's counsel personally. In the face of overwhelming personal challenges, Plaintiff's lead counsel had refrained from taking on new clients and sought the assistance of colleagues to deal with existing professional matters. This was not a case of neglect or indifference, but the result of the types of hard hardships in life that can impact even the most diligent professionals. There is no evidence that Plaintiff's counsel acted in bad faith; thus, this factor also supported granting Plaintiff's requested leave to file his opposition.

In sum, Courts evaluate excusable neglect by considering the totality of the

circumstances, with no single factor being determinative. As this Court stated, "[a]n equitable calculus governs the ultimate decision, and 'neglect' or 'control' are not more probative than other factors." *See Coleman Hammons Constr. Co.,* 942 F.3d at 286. The Supreme Court has emphasized that courts should give primary weight to the absence of prejudice to the nonmoving party and the interest of efficient judicial administration. *See Pioneer,* 507 U.S. at 398-99. Applying these principles, Plaintiff's request for relief should have been granted, as delay did not hinder the Defendants' ability to litigate the case, and no trial date had been rescheduled. Further, Plaintiff's response to motions pending for months would not have altered any timeline. The delay was due to an unavoidable personal hardship, not due to willful disregard of court orders. Plaintiff's counsel had not acted in bad faith but had made efforts amid extraordinary challenges to take measures to address the situation and mitigate the impact.

## VI.    There Are Genuine Issues of Material Fact Precluding Summary Judgment, Including Evidence that Defendants Lacked a Reasonable Basis for Their Raid of Dr. Morgan's Office and Had Clear Indications that Dr. Morgan Was Not Operating a "Pill Mill" of Which Defendants Falsely Accused Him.

Defendants assert qualified immunity for their conduct, but a plaintiff overcomes an assertion of qualified immunity by showing that (1) defendant has violated a clearly established constitutional or statutory right, and (2) a reasonable person would have known of that clearly established right. *See Brown v. Miller,*

519 F.3d 231, 236 (5th Cir. 2008). As to the second prong of this test, courts "consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* "The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (*citation omitted*).

Summary judgment is inappropriate where material facts remain in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (summary judgment should be denied if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). The lower court ruled without consideration of the evidence by Dr. Morgan that establishes a disputed issues of material fact as to:

(1) Whether Defendants' search of Dr. Morgan's clinic was pretextual for a criminal investigatory purpose, which negates qualified immunity;

(2) Whether Defendants engaged in wrongdoing in connection with their investigation, as in Kopacz repeatedly concealing exculpatory information about Dr. Morgan, which negates qualified immunity;

(3) Whether Defendants truly acted independently in their investigations, or whether they collaborated as indicated by their evidence but contrary to their assertions;

(4) Whether Defendants' searches of Dr. Morgan's clinics were unreasonably executed; and

(5) Whether Defendant Chapman fabricated evidence to encourage a baseless criminal prosecution against Morgan, by which a grand jury indicted Morgan based solely on Chapman's fabricated report.

These foregoing genuine issues of material fact were all raised below (ROA.1846-1847), and yet none was ever addressed by the district court in granting summary judgment to Defendants. (ROA.1944-1950) Not even a valid warrant requires dismissal of all Fourth Amendment claims based on qualified immunity, because there can still be constitutional violations related to a valid warrant. *See, e.g.*, *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) ("A search pursuant to a valid warrant may become an impermissible general search if, as alleged by [defendant], the police 'flagrant[ly] disregard . . . the limitations of [the] search warrant' and the search 'unreasonably exceeded the scope of the warrant.'") (quoting *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007), alterations preserved in the quotation).

### A.    There is a Genuine Issue of Material Fact as to Whether the Search Was Unreasonably Executed, for Which Qualified Immunity Does Not Apply.

As this Court held in this case – which is the "law of the case" – qualified immunity does ***not*** apply if the search was unreasonably executed. *See Morgan v. Chapman*, *infra*, 629 F. Supp. 3d at 633 (as of 2007 – years before the search at

36

issue here – "it **was clearly established** that an administrative search must be **reasonable** under the circumstances and **may not exceed its limited scope**") (quoting *Bruce v. Beary*, 498 F.3d 1232, 1250 (11th Cir. 2007), emphasis added); *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (inner quotations and citations omitted).

The evidence that Defendants expansively searched everything, terrified the office manager to the point of bringing her to uncontrollable tears, prevented Dr. Morgan from communicating with his attorney, prohibited communication and use of cell phones by the staff, and generally roamed throughout his clinic as though it were not a regular doctor's office but instead a pill mill, when Defendants knew it was not. (ROA.1081, 1143, 1212, 1222, 1275-1277, 1282-1287, 1296-1298, 1851, 1909-1913, 1924-1926) The Defendants looked in drawers, cabinet, and areas that did not contain medical records. (ROA.1148,1485)  Records were seized in the absence of the records custodian. (ROA.1148-1160) Defendants seized documents from Dr. Morgan's medical clinic from Florida, over the administrative assistant's objections. (ROA.1288, 1909)  Defendants' abusive search of Plaintiff's facilities went far beyond merely determining if the facilities were properly registered as a

pain management clinic, which would have been the only proper administrative justification.

Defendant Kopacz's own argument below in support of his motion indicated a disputed issue of material fact. Kopacz asserted that "[t]here is also no authority, either as of 2013 or to this day, holding that § 1983 liability attaches to a law enforcement officer who **_merely assists_** in the execution of another party's _instanter_ subpoena." (ROA.1002, emphasis added) This underscored the materiality of the disputed fact as to whether Kopacz "merely assist[ed]."

In fact, Kopacz did more than just "assist" in providing security. Kopacz prohibited Dr. Morgan from initially speaking with his attorney. (ROA.1287:23-1288:1) Kopacz knowingly enforced the TMB subpoena, threatening to arrest Dr. Morgan's employee for noncooperation. (ROA.1273-1277, 1913, 1925) Kopacz prohibited Dr. Morgan's employee from even calling Dr. Morgan and her family. (ROA.1273-1277, 1909-1910, 1913) Kopacz freely roamed inside of Dr. Morgan's private businesses and interrogated Dr. Morgan's employee for information under threat of arrest. (ROA.1291-1292, 1909-1910, 1925) Kopacz enforced the TMB subpoena and used the TMB subpoena to gain entry and information about Dr. Morgan's private businesses. (ROA.1880-1881)

Kopacz relied below on _Michalik v. Hermann_, 422 F.3d 252 (5th Cir. 2005), for his argument that by merely assisting (which is factually disputed) he cannot be

found liable for an improper search because he did not draft or execute the legal documents. "In such cases, the Fifth Circuit has extended potential liability only to the affiant and an officer who actually prepares the warrant application, but not to officers who only participate in the execution." (ROA.1002, citing *Michalik*, 422 F.3d at 261-62). Kopacz's involvement here is far more extensive and culpable.

The police officers in *Michalik* were cleared because they were merely executing a search warrant. The only relevant issue was whether liability attached to procuring the search warrant, as in lying in an affidavit presented to a magistrate to obtain the search warrant. Here, in contrast, Kopacz knew that he was NOT executing a search warrant, but rather just a subpoena. And Kopacz's job put him in collaboration with Chapman before, during, and after the search.

Kopacz had extensive exculpatory information about Dr. Morgan which Kopacz should have shared with Chapman, and which would have negated the false narrative on which their search of Dr. Morgan's clinics was based. (ROA.1007-1010) Dr. Morgan acted perfectly in each and every undercover sting operation that Kopacz attempted against him. (ROA.1007-1010) Dr. Morgan was not running a pill mill as was obvious to anyone who observed it from the outside, as Kopacz did but refused to include in his Offense Reports. (ROA.1007-1015) Pharmacists who criticized Dr. Morgan were primarily from the same pharmacy, and they were not disinterested because Dr. Morgan's attorney had threatened to

sue them, as Kopacz knew but failed to recognize their conflict of interest. (ROA.1007-1012)

In contrast with the facts in *Michalik*, without Defendant Kopacz's deception about Dr. Morgan, and without Kopacz's presence for this unlawful search, the search would not have happened.

### B.    As Found by State Court, Defendants' Search Was "an Exercise to Circumvent both the Texas and U.S. Constitution's Requirement for a Warrant," and thus Qualified Immunity Does Not Apply.

The Victoria County District Court expressly found that "the Texas Medical Board's interest in executing the instanter subpoena was not a legitimate pursuit of its administrative authority but an exercise to circumvent both the Texas and US Constitutions' requirement for a warrant." *Morgan v. Chapman*, 629 F. Supp. 3d 616, 633 (S.D. Tex. 2022) (inner quotations omitted). That finding was previously adopted by the district court below, as just quoted, and Defendants did not contest that finding with a motion for reconsideration or appeal in state court or here. This uncontested judicial finding alone required denying Defendants' motions for summary judgment.

Collateral estoppel should have barred Defendants from untimely contesting this factual finding now. "[F]ederal law and Texas law are the same regarding collateral estoppel." *Calabrian Corp. v. All. Specialty Chems., Inc.*, 418 S.W.3d 154, 158 n.4 (Tex. App. 2013). The doctrine "applies when the party against whom

collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit," as Defendants or their employer the State of Texas have done, in the prior dismissed actions and here. *Eagle Props. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (inner quotations omitted).

Moreover, this prior finding about the improper purpose of this search is fully supported by Defendants' own evidence that they submitted on their motions for summary judgment. The conduct of Defendants during their search reinforces that it was not limited to a merely administrative objective. Defendants were so abusive of staff during the armed search that a staff member in the office broke into "uncontrollable crying" (ROA.1909-1910) such that tears were falling on the papers. (ROA.1913) Defendants' performance of this search was plainly not for a limited administrative goal of assessing a registration requirement, but rather was for a full-blown purpose of raiding a "pill mill" which Defendants knew that Dr. Morgan's clinic was not.

Defendant Kopacz testified that 50% of his entire caseload was spent "liaisoning with the [TMB]." (ROA.1049:7-17), and his liaison contact at the TMB was Defendant Chapman. A month after their joint unlawful search of Dr. Morgan's clinic, Kopacz asked the TMB for its entire investigative case so that he could bring improper criminal charges. (ROA.1014) In addition to being controverted by evidence in Defendants' own submissions below (ROA.1014,

1066), the position taken by Defendants in their summary judgment motions that they were acting entirely independent of each other is simply implausible and thus cannot be a basis for summary judgment. As this Court has explained:

> Appellants exert substantial effort in an attempt to show that Deputy Bouquet and his version of events are not credible and that this lack of credibility should have precluded a ruling in favor of Appellees on summary judgment. Appellants are correct in asserting that summary judgment is inappropriate "when questions about the credibility of key witnesses loom ... large."

*O'Neal v. Cazes*, 257 F. App'x 710, 714 (5th Cir. 2007) (quoting *Thomas v. Great Atlantic & Pacific Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000)).

The state court in the parallel proceeding below expressly held more than that the credibility of key witnesses for Defendants "loom … large," in the words of the Fifth Circuit, as the Victoria County District Court expressly held that Chapman is "evasive" and "less than credible." (ROA.1871) A finder of fact would likely determine that Chapman and Kopacz were collaborating before, during, and after their joint search of Dr. Morgan's clinic, and this raises a disputed issue of material fact precluding summary judgment now.

### C.     Defendants' Search of Dr. Morgan's Clinic Was Done with an Unlawful Purpose and Contrary to 60 Years of Precedents.

The judicially determined wrongful purpose by Defendants for their search cannot be rehabilitated by arguing that there was ambiguity at the time about whether an administrative subpoena-based search of a physician's office was

proper. *This particular* search of Dr. Morgan's clinic by Defendants, without a warrant, was done with an unlawful purpose, as it was known by Defendants not to be a legitimate pursuit of administrative authority. The M&R, affirmed by the district court, never addressed this central point. A search performed with an unlawful purpose cannot be rehabilitated by arguing that if it had a lawful purpose then precedents at the time might have arguably allowed it.

For nearly 60 years the law has been "settled" that government officials may not enter a private business by subpoena, which the Supreme Court described as a minimal limitation:

> It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena. In addition, while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and ***the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply***.
>
> It is these rather minimal limitations on administrative action which we think are constitutionally required in the case of investigative entry upon ***commercial establishments***.

*See v. Seattle*, 387 U.S. 541, 544-45 (1967) (emphasis added). Dr. Morgan's offices were "commercial establishments," and Defendants violated his fundamental constitutional rights that have been "settled" since at least this

43

Supreme Court decision in *Seattle* in 1967.

An exception to this rule was created for closely regulated industries, but Dr. Morgan's clinic was never governed by this exception. Citing to an inapplicable exception cannot rescue Defendants' illegality here, especially given that the test is objective. Moreover, the closely regulated industries exception to the warrant requirement has been available since 1987 only if three requirements are satisfied:

> First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made. … Second, the warrantless inspections must be necessary to further the regulatory scheme. … Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.

*New York v. Burger*, 482 U.S. 691, 702-03 (1987). Defendants made no effort to satisfy the third requirement, and thus cannot find safe harbor in this exception to the warrant requirement.

### D.    There Is a Genuine Issue of Material Fact as to False and Misleading Statements in Defendant Kopacz's Reports.

Defendants relied on Defendant Kopacz's Offense Reports for their motions for summary judgment, and the M&R relied on these reports too. But Kopacz's Offense Reports are replete with false and misleading statements, and omit exculpatory information. (ROA.1006-1016) It is well-established that warrants or searches that are based on misleading information do not receive qualified immunity. On this basis alone, Defendants' motions for summary judgment based

on qualified immunity should have been denied, and the M&R should have been rejected. *See, e.g., Hall v. City & Cty. of Honolulu*, No. 21-00248 LEK-KJM, 2024 U.S. Dist. LEXIS 57591, at *43 (D. Haw. Mar. 29, 2024) (qualified immunity is ***inapplicable*** when officials "prepared and submitted their false and/or misleading police reports that corroborated" their narrative). The Magistrate Judge's M&R never addressed this fundamental point, even though the armed Kopacz led the search after writing these Offense Reports.

It is well-established that a police officer cannot avail himself of a qualified immunity defense if he deliberately conceals exculpatory evidence. *See Manson v. Brathwaite*, 432 U.S. 98 (1977); *Brady v. Maryland*, 373 U.S. 83 (1963). The Fifth Circuit has made this clear in the analogous context of misleading lab reports:

> [T]he right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier. On facts similar to those in this case, the Tenth Circuit concluded that the laboratory technician was not entitled to qualified immunity for the allegedly false reports made in 1986. We therefore hold that the deliberate or knowing creation of a misleading and scientifically inaccurate serology report amounts to a violation of a defendant's due process rights, and that a reasonable laboratory technician in 1984 would have understood that those actions violated those rights. The district court did not err in denying qualified immunity on this theory.

*Brown v. Miller*, 519 F.3d at 237.

This standard against concealing exculpatory evidence has been clearly established for many years prior to the unconstitutional search at issue here. Moreover, at the summary judgment stage it suffices for there to be merely a

genuine issue of material fact about this, with all inferences drawn in favor of the non-movant Dr. Morgan.

Recklessness likewise negates qualified immunity, and recklessness is an issue for a trier of fact. "'[A] proven misstatement can vitiate an affidavit [for a warrant] only if it is established that the misstatement was the product of deliberate falsehood or of reckless disregard for the truth.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018), quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980), inner quotations omitted).

Kopacz's Offense Reports omitted and distorted how Dr. Morgan was fully exonerated by each and every one of the multiple undercover visits to his clinic. (ROA.1007-1016) Kopacz admits in his Reports that his first undercover agent was seen by Dr. Morgan prior to receiving prescriptions, but omitted that Dr. Morgan performed an examination on him too. (ROA.1008 ¶ 14) Kopacz falsely stated that a fee was charged for the prescriptions. (ROA.1008 ¶ 15) No such fee was ever charged by Dr. Morgan for a prescription, but for a medical examination as all physicians do.

The second undercover visit resulted in the fake patient leaving to avoid being seen and examined by Dr. Morgan, which unfairly left Dr. Morgan stranded without an opportunity to exonerate himself by treating the patient just as any physician would properly do. (ROA.1008 ¶ 19) If Kopacz were fairly investigating

Dr. Morgan then he would have allowed Dr. Morgan to demonstrate that he was practicing medicine properly. A fair investigation does not do the equivalent of turning on and off a recording device to distort the record of what transpired.

Kopacz omitted entirely from his Offense Reports his own undercover visit to Dr. Morgan's clinic, which resulted in additional exculpatory evidence for Dr. Morgan. (ROA.1007-1016) Kopacz went to the DTD window and asked for opioids, as recorded on video, and was properly turned away in yet another exoneration of Dr. Morgan. But Kopacz made no mention of this. A fair investigator would surely include in his own Offense Report what he learned from approaching the suspect himself, and yet Kopacz omits this. There is only one inference to draw from this omission: Kopacz wanted his Offense Report to be as disparaging to Dr. Morgan as possible, and Kopacz even excluded exculpatory information of which he had direct personal knowledge.

Additional misleading information placed by Kopacz in his Offense Reports include mentioning that he spoke to a patient who obtained a prescription for Adderall without seeing Dr. Morgan "on that day." (ROA.1009 ¶ 32) Kopacz deceptively omitted that this was a prescription for a refill, which is commonly done by all physicians without performing a repetitive office examination. Kopacz's "on that day" is artfully misleading, as he apparently knew that this

patient had been seen and examined by Dr. Morgan on a prior day, which is sufficient, and yet Kopacz concealed that from his report.

Kopacz falsely asserted in his Offense Reports that "[a]ccording to the TMB Report, Morgan does not meet any of the exemptions." (ROA.1015 ¶ 12) In fact, the TMB Report does not contain any such statement. (Dist. Ct. D.E. 167, Exh. 26 – sealed for confidentiality)

Other statements in Kopacz's Offense Reports seemed designed more to incite prejudice than be an objective investigation. Kopacz writes that he visited the location for Dr. Morgan's DTD and "observed it to be an old used car lot with a portable building" (ROA.1008 ¶ 6), which is an irrelevant, pejorative comment that distorts. Yet he says nothing about basic facts like how many cars of patients were there, how many patients were entering and leaving the building (a pill mill would have high traffic, while this clinic did not), the appearance of patients as indicative of whether they were in pain, such as mobility issues, or how many people were working in the building. Including something irrelevant with a highly prejudicial effect in an Offense Report while omitting basic facts is strongly indicative of bias.

A fact-finder could reasonably conclude that Kopacz was deceptive in his Offense Reports, and that he likewise was deceptively biased against Dr. Morgan in Kopacz's many communications with Chapman. In seeking summary judgment

Chapman argues that she acted independently of Kopacz in deciding to search Dr. Morgan's clinic, but she arranged with Kopacz to do the search jointly and at a minimum Kopacz should have informed Chapman of the exculpatory information Kopach had about Dr. Morgan. Kopacz's conduct, as presented in his own exhibits, does not merit qualified immunity.

### E.    It Was Obvious that Dr. Morgan Was Not Running a "Pill Mill," and Wrongful Racial Stereotyping by Defendants Motivated Their Actions Against Him.

A "pill mill" is obvious to anyone who stands outside and watches the traffic into and out of the facility, and nothing about this patient traffic or anything else associated with Dr. Morgan's practice suggested that it was a pill mill. Dr. Morgan continues to be a physician who practices medicine in good standing, contrary to the disparagingly false implication of Defendants' presentations about him. Dr. Morgan concedes that he has an unconventional background and appearance – he's an African American in dreadlocks who holds two engineering degrees in addition to a medical one. The belated discovery produced to the Plaintiff below revealed that no substantive investigation was conducted prior to the warrantless search of his clinic. Instead, the assessment of Dr. Morgan was driven by his unconventional appearance, musical artistry, and the derogatory characterization of his social circle within that artistic realm. (ROA.1862 ¶¶ 9-10) These factors led to a conclusion rooted in racial profiling and subjective judgment rather than a legitimate

investigative process, where an objective investigation that would have revealed Dr. Morgan's education, distinguished family legacy in music, and the characteristics and composition of his medical practice as a primary care clinic.

Qualified immunity does not protect biased stereotypes, profiling, and speculation rather than an honest investigation. A fact-finder could easily conclude that racial bias motivated the improper, warrantless searches of Dr. Morgan's practice.

## CONCLUSION

Plaintiff-Appellant Morgan respectfully requests that this Court fully reverse the decision below, and remand for this matter to proceed to trial.

Dated:  October 1, 2025   Respectfully submitted,

         /s/ Andrew L. Schlafly
         Andrew L. Schlafly
         Attorney at Law
         939 Old Chester Road
         Far Hills, New Jersey 07931
         Tel: 908-719-8608
         Fax: 908-934-9207
         Email: aschlafly@aol.com

         *Attorney for Plaintiff-Appellant*
         *Courtney Morgan*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 11,662 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: October 1, 2025

s/ Andrew L. Schlafly
Attorney for Appellant
