No. 25-40357

# In the United States Court of Appeals for the Fifth Circuit

Courtney Morgan,

*Plaintiff-Appellant,*

*v.*

Mary Chapman and John Kopacz,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of Texas, Victoria Division
Civil Action No. 6:17-CV-00004

## Brief Of Appellee Mary Chapman

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant
  Attorney General

Austin Kinghorn
Deputy First Assistant
  Attorney General

Kimberly Gdula
Division Chief, General Litigation
  Division

Cole P. Wilson
Assistant Attorney General
Cole.Wilson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5738
Fax: (512) 320-0667

*Counsel for Mary Chapman*

No. 25-40357

# In the United States Court of Appeals for the Fifth Circuit

COURTNEY MORGAN,

*Plaintiff-Appellant,*

*v.*

MARY CHAPMAN AND JOHN KOPACZ,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of Texas, Victoria Division
Civil Action No. 6:17-CV-00004

### CERTIFICATE OF INTERESTED PERSONS

Defendant-Appellee Mary Chapman is a governmental party. As such, the fourth sentence of Fifth Circuit Rule 28.2.1 eliminates any requirement for her to furnish a certificate of interested persons.

/s/ *Cole P. Wilson*
COLE P. WILSON
*Counsel for Defendant-Appellee Mary Chapman*

i

## Statement Regarding Oral Argument

Oral argument will not help decide this appeal as Appellant presents no arguable basis for overturning the judgment below. Should the Court nevertheless find that oral argument would be helpful, then Chapman respectfully requests an opportunity to participate.

TABLE OF CONTENTS

Certificate Of Interested Persons ............................................................. i

Statement Regarding Oral Argument ...................................................... ii

Table of Authorities .............................................................................. iv

Issues Presented ..................................................................................... 1

Statement of the Case ............................................................................ 2

    I. Procedural Background. ................................................................. 3

    II. The Summary Judgment Record. ................................................ 12

    III. Morgan Appeals the Final Judgment. ......................................... 18

Summary of the Argument ................................................................... 18

Argument .............................................................................................. 20

    I. Morgan Has No Challenge to Judge Tipton's Referral to Magistrate Judge Hampton ................................................................................. 20

    II. Morgan Cannot Challenge the Magistrate's Orders. ...................... 21

    III. The Magistrate Judge Did not Abuse her Discretion in Denying Morgan Leave to Respond to Chapman's Motion for Summary Judgment ..................... 23

    IV. The District Court Properly Rejected Morgan's Evidence. ............ 27

    V. The District Court Properly Granted Summary Judgment in Chapman's Favor. ................................................................................................. 28

Conclusion ........................................................................................... 41

Certificate of Service ........................................................................... 43

Certificate of Compliance .................................................................... 43

## TABLE OF AUTHORITIES

**Decisions:**                                                                    **Page(s):**

*Adjustment Co. v. Galvin,*
  86 F.3d 1455 (7th Cir. 1996) ........................................................ 40

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) .................................................................... 32

*Bianchi v. McQueen,*
  818 F.3d 309 (7th Cir. 2016) ........................................................ 38

*Bradberry v. Jefferson County,*
  732 F.3d 540 (5th Cir. 2013) ........................................................ 41

*Burkhart v. Washington Metropolitan Area Transit Auth.,*
  112 F.3d 1207 (D.D.C. 1997) ...................................................... 21

*City of Escondido v. Emmons,*
  586 U.S. 38 (2019) ...................................................................... 35

*Club Retro, L.L.C. v. Hilton,*
  568 F.3d 181 (5th Cir. 2009) ........................................................ 35

*Cole v. Carson,*
  802 F.3d 752 (5th Cir. 2015) ........................................................ 37

*Cole v. Carson,*
  935 F.3d 444 (5th Cir. 2019) ........................................................ 33

*Cole v. Hunter,*
  497 F. Supp. 3d 172 (N.D. Tex. 2020) ........................................ 37

*Coleman Hammons Constr. Co., Inc. v. Occupational Safety & Health Rev. Comm'n,*
  942 F.3d 279 (5th Cir. 2019) ........................................................ 23

*Cooper v. City of Dallas,*
  402 F. App'x 891 (5th Cir. 2010) ................................................ 30

*Cope v. Cogdill,*
  3 F.4th 198 (5th Cir. 2021) .......................................................... 31

*Cornett v. Astrue,*
  261 F. App'x 644 (5th Cir. 2008) ................................................ 30

*Cotropia v. Chapman,*
  978 F.3d 282 (5th Cir 2020) ................................... 32, 33, 34, 35

*D.C. v. Wesby*,
   138 S. Ct. 577 (2018) ................................................................ 31

*Daniels v. Morris*,
   746 F.2d 271 (5th Cir. 1984)..................................................25

*Davidson v. Fairchild Controls Corp.*,
   882 F.3d 180 (5th Cir. 2018) ................................................ 28

*Donaldson v. Ducote*,
   373 F.3d 622 (5th Cir. 2004) ................................................ 21

*Douglass v. Untied Servs. Auto Ass'n*,
   79 F.3d 1415 (5th Cir. 1996) ......................................... 7, 29

*Edward H. Bohlin v. Banning Co.*,
   6 F.3d 350 (5th Cir. 1993) ....................................................25

*Finley v. Johnson*,
   243 F.3d 215 (5th Cir. 2001) ................................................30

*Firefighters' Ret. Sys. v. EisnerAmper, LLP*,
   898 F.3d 553 (5th Cir. 2018) ................................................30

*Geiserman v. MacDonald*,
   893 F.2d 787 (5th Cir. 1990) ......................................... 23, 26

*Hawks v. J.P. Morgan Chase Bank*,
   591 F.3d 1043 (8th Cir. 2010)...............................................26

*In re Hinsley*,
   201 F.3d 638 (5th Cir. 2000)................................................ 20

*Marshall v. Barlow's, Inc.*,
   436 U.S. 307 (1978) ...............................................................32

*McCarty v. Thaler*,
   376 F. App'x 442 (5th Cir. 2010) .........................................23

*Midwest Emp'rs Cas. Co. v. Williams*,
   161 F.3d 877 (5th Cir. 1998) ................................................26

*Morgan v. Chapman*,
   969 F.3d 238 (5th Cir. 2020)........................................ 3, 31, 34, 37

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ................................................................... 31

*Murphy v. Eddie Murphy Prods., Inc.*,
   611 F.3d 322 (7th Cir. 2010)................................................10

*New York v. Burger*,
482 U.S. 691 (1987) ................................................................ 35

*Norsworthy v. Houston Indep. Sch. Dist.*,
70 F.4th 332 (5th Cir. 2023) .................................................. 20

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*,
322 F.3d 847 (5th Cir. 2003) ................................................. 27

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ........................................................ *passim*

*Puckett v. United States*,
556 U.S. 129 (2009) ................................................................ 30

*Randle v. PNC Financial Servs. Group*,
No. 24-11048, 2025 W 3012286 (5th Cir. Oct. 28, 2025) ............ 30

*Richards v. Jefferson County, Al.*,
517 U.S. 793 (1996) ................................................................ 41

*Ruvalcaba v. Angelton Indep. Sch. Dist.*,
No. 20-40491, 2022 WL 340592 (5th Cir. Feb. 4, 2022) ............ 28

*Sea v. Seattle*,
387 U.S. 541 (1967) ................................................................ 35

*Singletary v. B.R.X., Inc.*,
828 F.2d 1135 (5th Cir. 1987) ................................................ 22

*Taylor v. Charter Medical Corp.*,
162 F.3d 827 (5th Cir. 1998) .................................................. 41

*Thompson v. Steele*,
709 F.2d 381 (5th Cir. 1983) ........................................... 36, 38

*Trufant v. Autocon, Inc.*,
729 F.2d 308 (5th Cir. 1984) .................................................. 22

*United States v. Renfro*,
620 F.2d 497 (5th Cir. 1980) .................................................. 22

*Zadeh v. Robinson*,
928 F.3d 457 (5th Cir. 2019) ............................... 32, 33, 34, 35

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:

amend. IV ...................................................................................... 2

amend. XIV ............................................................................... 2, 37

28 U.S.C.:

§ 1291 .......................................................................................... 21

§ 636(b)(1)(A) .......................................................................... 21

§ 636(b)(1)(C) .......................................................................... 22

42 U.S.C. § 1983 ............................................................................ 2

Tex. Occ. Code:

§ 168.001(1) ............................................................................. 13

§ 168.101(1) ............................................................................. 13

Fed. R. App. P.:

3(c) .......................................................................................... 20

4(a)(4)(A) ................................................................................. 20

Fed. R. Civ. P.:

6(b) ........................................................................................... 23

17 .............................................................................................. 36

72(a) ........................................................................................ 22

72(b)(3) ..................................................................................... 27

S.D. Tex. LR:

7.3 .............................................................................................. 8

7.4 ........................................................................................ 5, 8

## ISSUES PRESENTED

(1) Whether this Court has jurisdiction to consider the plaintiff's challenge to the district court's order referring matters to a magistrate when the plaintiff did not appeal that order by identifying it in his notice of appeal?

(2) Whether this Court has jurisdiction to consider the plaintiff's appeal of any of the magistrate judge's orders on non-dispositive matters when the plaintiff did not appeal those orders to the district court judge below?

(3) If so, whether the magistrate judge abused her discretion in denying the plaintiff leave to file a response to a summary judgment motion approximately 10 months late, after the magistrate had entered a recommendation on the summary judgment motion, and when the plaintiff had failed to establish excusable neglect?

(4) Whether the district court abused its discretion in refusing to consider evidence the plaintiff submitted for the first time in his objections to the magistrate's recommended resolution of Chapman's summary judgment motion when that evidence was not "new," when the plaintiff had never responded to the summary judgment motion, and when consideration of that evidence would not have changed the outcome of the case?

(5) Whether the district court erred in granting summary judgment for Mary
Chapman?

## Statement of the Case

Plaintiff Courtney Morgan complains of the service of *instanter* subpoenas
on two of his medical practices on July 18, 2013. ROA.734. His operative pleading
raised two live claims against Defendant Mary Chapman under 42 U.S.C. section
1983 following an earlier motion to dismiss.

*First*, Morgan alleged that Chapman deprived him of his right to be free from
unreasonable searches under the Fourth Amendment to the United States
Constitution when she searched his medical practices pursuant to *instanter*
subpoenas. ROA.748–51. Chapman did not contest below that the Fourth
Amendment currently prohibits the use of *instanter* subpoenas. ROA.1450. But this
point is irrelevant to the question of liability here because this Court did not clearly
establish the unconstitutionality of *instanter* subpoenas in this context until years
after the search at issue here. *Id*.

*Second*, Morgan also claimed that Chapman deprived him of due process
under the Fourteenth Amendment, alleging that she fabricated evidence to secure
criminal charges against him. ROA.754–57. Specifically, he claimed Chapman
inflated the percentage of prescriptions he issued for certain categories of drugs to

support a finding that he had been operating an unregistered pain management clinic ("PMC"). ROA.754–57. The summary judgment record does not support Morgan's allegations that Chapman fabricated evidence, let alone that she did so for purposes of obtaining criminal charges against him. ROA.1447–50.

## I. Procedural Background.

Following an earlier appeal,[1] Morgan submitted his *Third Amended Complaint* on October 13, 2023. ROA.730–59. Chapman thereafter filed a motion to dismiss. ROA.768–92. After additional briefing, the district court dismissed Count IV against Chapman based on qualified immunity—an unreasonable seizure claim. ROA.876—915. The court permitted Morgan's others claims. ROA.915.

Chapman answered Morgan's third amended complaint on October 17, 2022 (ROA.929–46), and the case proceeded to discovery.

Discovery closed on September 29, 2023. ROA.955–56.

Defendant John Kopacz filed a motion for summary judgment on January 29, 2024. ROA.992–1347. That same day, Morgan filed a motion asking the Court to take judicial notice of the factual findings of state court judges. ROA.1350–95.

On February 1, 2024, the district court held a "Pre-Motion Conference." ROA.1396. Morgan brought certain discovery disputes with Chapman before the

---

[1] *Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020).

district court, in light of which the court gave Morgan's counsel an opportunity to influence the schedule for responding to Kopacz's motion for summary judgment, and other case deadlines. ROA.2047–49. The court also permitted Morgan a "one-sided" opportunity for more discovery depending on Chapman's responses to his discovery requests. ROA.249–51.

Afterwards, new counsel substituted for Chapman's prior counsel who had represented her during the February 1, 2024 hearing and before. ROA.1397–1403. With leave of the court (ROA.1406–16), Chapman responded to Morgan's motion for judicial notice on March 5, 2024. ROA.1417–21. Among other things, Chapman explained that the district court could not take judicial notice of the factual findings of another court. ROA.1418. Neither Chapman nor Kopacz were parties to those prior state court matters. ROA.1359, 1365.

As for Morgan's opportunity to influence the schedule for the remaining case deadlines, the district court entered an amended scheduling order on April 22, 2024, resetting the pretrial motions deadline for June 7, 2024. ROA.1431–32.

Chapman timely filed a motion for summary judgment on May 14, 2024, weeks before the district court's new deadline. ROA.1434–1661. Chapman also filed a motion to seal parts of the summary judgment record. ROA.1663–71.

Seven days after Chapman filed the two foregoing motions, Morgan filed an unopposed motion to extend his deadline to respond to Chapman's motion to seal. ROA.1702–05. There, he acknowledged that the court's local rules required him to respond in opposition to any motion within 21 days. ROA.1702, ¶ 4. And when Morgan *did* respond to Chapman's motion to seal a few days later, he acknowledged Chapman's pending motion for summary judgment. ROA.1706, ¶¶ 3–4.[2]

Despite acknowledging the pending motion for summary judgment and the district court's local rule requiring him to file an opposition 21 days later, Morgan never filed one. Under Local Rule 7.4, a litigant's "[f]ailure to respond to a motion will be taken as a representation of no opposition."

Nearly four months went by with no case activity. ROA.19.

The next entry in the district court's docket is the parties' *joint* motion to vacate the court's scheduling order, on September 12, 2024. ROA.1714–32. There, the parties—including Morgan—acknowledged that both Chapman and Kopacz had filed motions for summary judgment raising qualified immunity: "Both Defendants have filed motions for summary judgment raising qualified immunity, which the Court should decide before the case proceeds toward trial." ROA.1714.

---

[2] The district court granted the motion to seal on May 24, 2024. ROA.1713.

The parties also jointly pointed out that Morgan had expressed his wish to file responses to those motions, though he gave no timeline for doing so. *Id*.

On October 10, 2024, the district court referred the case to Magistrate Judge Julie K. Hampton for all pretrial purposes, including the determination of all procedural and discovery motions, and to prepare a recommendation as to all dispositive motions including "motions for summary judgment." ROA.1718.

Four more months passed without any docket activity—including any response from Morgan to the summary judgment motions. ROA.19.

On February 20, 2025, the court entered an order granting-in-part and denying-in-part Morgan's motion for judicial notice. ROA.1722–26. Faithfully applying this Court's precedent, the district court explained that it could not take judicial notice of the factual findings of another court to establish the truth of those findings. ROA.1724. That had been Morgan's core request for relief.

On March 5, 2025, Magistrate Judge Hampton issued a Memorandum and Recommendation (the "M&R") on the defendants' summary judgment motions. ROA.1729–57. In nearly 30 pages, the M&R carefully laid out the summary judgment record and exactly why the law required judgment in the defendants' favor. *Id*. The M&R also included a notice to the parties that their failure to object to the proposed findings, conclusions, and recommendation would preclude them,

except upon grounds of plain error, from attacking on appeal any unobjected-to proposed findings accepted by the district court. ROA.1757 (citing *Douglass v. Untied Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc)).

On March 17, 2025, Morgan filed a motion for leave to submit a response to the defendants' motions for summary judgment approximately 14 months after Kopacz's motion, and 10 months after Chapman's motion. ROA.1758–67. Among other things, Morgan argued that one of his four lawyers was unable assist him in preparing a response to the defendants' summary judgment motions because of the untimely passing of her sister-in-law months before Chapman had filed her dispositive motion. ROA.1770. Morgan also spent significant space in his brief discussing the February 1, 2024 hearing and why Morgan believed that the district court's earlier handling of a discovery issue permitted him to ignore the court's local rules and the defendants' two pending motions for summary judgment for 10 and 14 months respectively. ROA.1758–59.

Chapman and Kopacz filed a joint response on March 28, 2025. ROA.1808–16. Morgan filed a brief reply. ROA.1818–20. There, Morgan contended that because Chapman's counsel had previously agreed there were no active deadlines as of late 2024, that statement also signaled Chapman's endorsement of Morgan's view that the summary judgment motions had been stayed. ROA.1818–19.

Of course, there were no active deadlines because Morgan's deadline to respond to the defendants' summary judgment motions had long since passed under the local rules. ROA.1824 ("Morgan's response was due on June 4, 2024.") (citing Local Rules 7.3, 7.4).

On April 10, 2024, Magistrate Judge Hampton denied Morgan's request to submit a late respond to the summary judgment motions but extended his deadline to file objections to her M&R. ROA.1821–33. The court noted that although there was no indication of bad faith, the remaining factors established in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993), went against Morgan. ROA.1828.

Specifically, Morgan had four attorneys of record during the relevant period, including two attorneys designated as lead counsel—Kevin Anderson and Erica Chaplin. ROA.1829. Thus, although Ms. Chaplin had experienced a personal loss causing her to be less engaged with the case, Morgan had no explanation for why his other attorneys could not have responded to the defendants' motions. *Id.*

Regarding Morgan's allegation that the deadline for him to respond to the motions was unclear because of the court's prior comments during a hearing on February 1, 2024, the court explained that its entry of an amended scheduling order setting a June 7, 2024 pretrial motions deadline clarified those deadlines.

ROA.1828–29. On the one hand, the court's comments regarding a stay of Morgan's time to respond to Kopacz's January 2024 motion could not have applied to Chapman's May 2024 motion, which had yet to filed. ROA.1829. And on the other, following Chapman's timely filing of her motion for summary judgment "before the deadline," the reason that Morgan had given for requesting a stay as to Kopacz's motion—to address both dispositive motions together—had vanished. *Id.*

Among several other issues Morgan had raised, the court explained that Chapman's counsel's statement in Fall 2024 about vacating deadlines following the referral order could not have related to the deadline for Morgan's response because that deadline had long since passed. ROA.1831. And regardless of the other reasons Morgan offered for the delay in seeking to respond to the defendants' motions, he "has not proffered a satisfactory reason outside of his control for his extended, repeated failure to stay updated on the status of the case or to recognize the deadlines imposed by the court." *Id.* (citing *Pioneer*, 507 U.S. at 396–97).

The court also found that the defendants would suffer prejudice if Morgan were to receive the significant extension of his deadline to respond. ROA.1832. Namely, Morgan filed this lawsuit in 2017, and sought an extension of 9.5 months after his original deadline to respond to Chapman's motion. *Id.* This alone established prejudice. *Id.* (citing *Murphy v. Eddie Murphy Prods., Inc.*, 611 F.3d 322,

324 (7th Cir. 2010) (noting that an extra 60-day delay in the resolution of a case pending six years would be prejudicial)). The court also pointed out that Morgan sought to respond with the benefit of the magistrate's construction of the facts and law—a benefit that the defendants did not have when preparing their motions. ROA.1832; ROA.1833 ("Defendants[] did not have the benefit of reading the analysis in the M&R before filing their motions)."

As to the final *Pioneer* factor, the length of the delay and its potential impact on judicial proceedings, the court explained that Morgan's delay of nine and a half months following his deadline was double the length of the discovery delay that Morgan had complained of at the February 2024 hearing, and would have the practical effect of wasting a substantial amount of the court's time—an M&R having already been prepared. ROA.1833.

Following the court's ruling on his procedural motion, Morgan filed objections to the M&R that more closely resembled the response that the court had just denied him leave to file. ROA.1834–59. In fact, the only place in the brief that Morgan referenced the M&R was in the prefatory language of the filing. ROA.1834. He also attached evidence without the court's leave. ROA.1860–1927.

Morgan argued against summary judgment based on misapplication of collateral estoppel (ROA.1850–52), searches of commercial establishments,

generally (ROA.1852–53), concealing exculpatory evidence (ROA.1853–56), and the scope of the search (ROA.1856–58).

Chapman filed a response to Morgan's objections on May 6, 2025. ROA.1928–43. The district court adopted the M&R on May 13, 2025, and entered final judgment in the defendants' favor that same day (ROA.1944–51).

The district court explained that it had conducted *de novo* review only of those portions of the M&R to which Morgan specifically objected, reviewing the remaining findings, conclusions, and recommendations for plain error. ROA.1950. But as the court explained, Chapman raised four main objections, each of which turned on a more general contention that summary judgment was inappropriate. ROA.1945. Thus, the court found Morgan's objections were waived. ROA.1947.

The court also rejected Morgan's new evidence. *Id*. Specifically, the court found that, as Judge Hampton concluded, "Morgan has not proffered a satisfactory reason outside of his control for his extended, repeated failure to stay updated on the status of the case or to recognize the deadlines imposed by the court." ROA.1948. The court also found that all the evidence Morgan sought to introduce was previously unavailable to him, and that it would unfairly prejudice the defendants by forcing them to address new arguments and evidence after the M&R had issued. ROA. 1948–49. Although Morgan claimed the evidence was important,

the district court found that the other considerations outlined above outweighed the importance that Morgan ascribed to his new evidence. *Id.*

## II. The Summary Judgment Record.

The record supported the Court's entry of judgment in Chapman's favor.

***The Texas Medical Board opens an investigation into Morgan.*** In June 2013, a journalist for the Victoria Advocate reported that Morgan was potentially writing prescriptions without seeing patients and was engaging in other medical practices that would violate the Texas Medical Practice Act. ROA.1469 (¶ 6); ROA.1530–38. That journalist recorded a video where she presented at Morgan's drive-through clinic and he prescribed her medicine after a brief call, without physically examining her, and without a preexisting physician-patient relationship. ROA.1537–38.

TMB learned about this report and opened an investigation into Morgan. ROA.1469 (¶ 7). The case was screened by Leonard Duran, M.D., a Texas-licensed doctor employed by TMB. *Id.* (¶ 8); ROA.1528–29. Dr. Duran found that Morgan was possibly operating an unregistered PMC. ROA.1469 (¶ 8); ROA.1528–29.

The Texas Medical Board ("TMB") assigned Chapman to investigate Morgan. ROA.1469 (¶ 10). Chapman obtained Morgan's recent prescription history from the Texas Department of Public Safety ("DPS"). *Id.* (¶ 11); ROA.1522–28.

Based on this history, Chapman calculated that, across a one-year period, Morgan prescribed opioids to 42% of his patients, benzodiazepines to 22% of his patients, and carisoprodol to 8% of his patients. ROA.1469–70 (¶¶ 12–13); ROA.1522–28, 1628–29.

This qualified his practice as a PMC under Texas law. *See* Tex. Occ. Code § 168.001(1) ("'Pain management clinic' means a publicly or privately owned facility for which a majority of patients are issued on a monthly basis a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone."). Chapman confirmed that Morgan's medical practices were not registered as PMCs. ROA.1469 (¶ 14).[3]

Also notable, a DEA investigator advised Chapman that the DEA had an active investigation into one of Morgan's facilities, Drive Thru Doc Clinic ("Drive Thru"), for several months, and that he believed Morgan was operating an unregistered PMC. ROA.1470 (¶ 15); 1628–29. Further, Chapman spoke with a pharmacist who advised that several pharmacies were not taking Morgan's prescriptions anymore. ROA.1495–96 (43:16–44:2).

Chapman relayed her findings to her TMB supervisor, Belinda West. ROA.1470 (¶ 16). West concurred that an on-site visit was needed to confirm that

---

[3] *See* Tex. Occ. Code § 168.101(1) ("A pain management clinic may not operate in this state unless the clinic is certified under this chapter.").

Morgan was operating an unregistered PMC. *Id.* Thus, West approved Chapman to serve *instanter* subpoenas on Morgan's two medical practices, Drive Thru and Hop Medical Services ("Hop Medical"). *Id.* at ¶¶ 16–17.

*TMB's on-site visit.* On July 18, 2013, Chapman served the approved *instanter* subpoenas on Drive Thru and Hop Medical. *Id.* at ¶ 18; ROA.1630–53. She obtained access to various documents, including patient medical records, which she scanned into a TMB database during this visit. ROA.1470 (¶ 18). The undisputed purpose of Chapman's visit was to investigate whether TMB should initiate administrative proceedings against Morgan, and not to find evidence of Morgan's criminal wrongdoing for purposes of a prosecution. *Id.* (¶ 19).

Several DPS officers accompanied Chapman on this visit, as was TMB's standard practice. ROA.1471 (¶¶ 20–21, 26); ROA.1458 (¶ 16). These officers/agents came for protective purposes and as a professional courtesy to TMB. ROA.1471 (¶¶ 20–26); ROA.1458 (¶ 16). They were not meaningfully involved in the visit, and DPS left before the visit was finished. ROA.1471 (¶ 20); ROA.1484–85 (43:21–44:8); ROA.1506–09 (37:1–39:22, 48:15–21).

*The audit:* As noted earlier, Chapman obtained scanned copies of Hop Medical's patient records for March 1 to March 31, 2013. ROA.1471 (¶ 27). She reviewed these records and summarized her findings in an audit report. *Id.*

The main purpose of this report (the "Audit Report") was to determine whether Morgan was operating an unregistered PMC for administrative purposes. ROA.1469, 1472 (¶¶ 19, 28). Specifically, Chapman evaluated whether a majority of the patients seen at Hop Medical in March 2013 were issued prescriptions for opioids, benzodiazepines, barbiturates, or carisoprodol. *Id.*; ROA.1539–46.

The patient records showed that Hop Medical saw 252 patients during March 2013. Of these 252 patients, 141 were issued opioids (56%), 29 were issued carisoprodol (12%), and 74 were issued benzodiazepines (29%). ROA.1472 (¶ 29). As over a majority of Hop Medical's patients were prescribed opioids, benzodiazepines, barbiturates, and/or carisoprodol during this month, Chapman believed that Morgan was operating an unregistered PMC. *Id.* (¶ 30).

***Two expert panelists review Chapman's findings.*** TMB later sent Morgan's file to two expert panelists for an independent review. *Id.* (¶ 31). The purpose of this process was "to determine whether TMB should pursue an administrative proceeding against the respondent. It is *not* to bring criminal charges against a respondent." ROA.1459 (¶¶ 22–24, 26).

The first panelist was an Anesthesiologist who was board certified in pain management by the American Board of Anesthesiology and the American Board of Pain Medicine. ROA.1472 (¶ 32). This panelist also had an active pain management

practice in a large academic hospital and was an Associate Professor of Anesthesiology. *Id.* The second panelist was doctor who was board certified in family practice and who had run a family medicine practice for approximately 25 years. *Id.* (¶ 33). The panelist had previously served as the chair of an obstetrics/pediatrics department. *Id.*

The two panelists found, among other things, that: (1) Morgan "indiscriminately prescribed narcotics (typically 'cocktail' narcotics)"; (2) "[n]one of [his] opioid prescriptions conformed to the national or state guidelines for chronic opioid therapy"; (3) he used "general and identical templates based on medications prescribed" that did "not reflect real evaluation of individual patients"; and (4) he charged patients based on "the type of drug prescribed (e.g., Phentermine $90, Soma $80, Amoxicillin $80)." ROA.1473 (¶ 34). The two panelists thus concluded that Morgan "has been operating pill mills." *Id.* (¶ 35). They also found that his "practice did not meet the standard of care" and that he "pos[es] [a] danger to public welfare." *Id.*

***TMB commences an administrative proceeding.*** After the expert panelists' review, Morgan's case went to TMB's legal department, as per standard protocol. ROA.1473 (¶ 36). On November 21, 2014, TMB filed an administrative proceeding against Morgan. *Id.* (¶ 37); ROA.1581–86. Among other things, TMB alleged that

Morgan violated the Texas Medical Practice Act's requirement that PMCs be certified. ROA.1587–1607.

***Kopacz requests TMB's records to pursue a criminal prosecution.*** On August 27, 2013, Kopacz served TMB with a request for its investigation files on Morgan. ROA.1510–11 (54:25–55:19); ROA.1465 (¶ 3). Gaby Loredo, TMB's Open Records Officer, sent Kopacz TMB's full investigative file on Morgan, which totaled over 14,000 pages. ROA.1465. Chapman was not involved in this process, and she was not made aware of this request. ROA.1465 (¶ 5); ROA.1473 (¶¶ 37–39).

Kopacz received TMB's full file on Morgan and, for whatever reason, he focused mainly on Chapman's Audit Report. ROA.1510–15 (54:25–59:20). Kopacz created his own report and relayed his report to the Victoria County District Attorney, who then indicted Morgan. ROA.1510–20 (54:25–59:20, 61:13–65:11). Specifically, based on their own review of Kopacz's report, the Victoria County District Attorney filed charges against Morgan that he had operated an unregistered PMC in violation of Chapter 168 of the Texas Occupations Code. Ex. 17. ROA.1474 (¶ 40). Chapman did not consult, recommend, or otherwise suggest to the Victoria County District Attorney—or to any law enforcement officer for that matter—that criminal charges should be filed against Morgan. ROA.1474 (¶ 40).

### III. Morgan Appeals the Final Judgment.

On June 11, 2025, Morgan filed a notice of appeal. ROA.1952. In his notice, he sought to appeal the order on his motion for judicial notice, the M&R, the order accepting the M&R, and the final judgment. *Id.* Notably, Morgan's notice of appeal makes no reference to the district court's order of referral to Magistrate Judge Hampton, which Morgan now purports to challenge on appeal. Br., 1, 16–17.

### Summary of the Argument

There are only two issues properly before this Court: (1) whether the district court erred in rejecting Morgan's new evidence submitted after the M&R, and (2) whether the district court erred in entering judgment for Chapman. This Court lacks jurisdiction to decide the remaining issues that Morgan raises on appeal.

Namely, for the order referring matters to the magistrate judge, Morgan did not appeal it because he made no mention of the order in his notice of appeal. And as for the remaining orders of the magistrate judge, such orders are not appealable directly to this Court. Morgan could only have challenged those orders by filing objections in the district court—he did not.

Even so, the magistrate judge did not err in denying Morgan leave to respond to Chaman's summary judgment motion because Morgan did not establish excusable neglect. But even had he, he still fails to show any abuse of discretion.

That leaves the two issues properly before this Court. Regarding Morgan's "new" evidence, the district court carefully considered his arguments and properly exercised his its discretion in rejecting that evidence. Morgan cannot genuinely contend that his evidence was unavailable to him previously. After all, discovery closed in September 2023, and Morgan had all of Chapman's production *before* Chapman moved for summary judgment in May 2024.

And regarding Morgan's challenge to the district court's order granting summary judgment in Chapman's favor, Morgan has no genuine arguments for overcoming her qualified immunity. Whether this Court applies *de novo* or plain error review, Morgan cannot change the fact that this Court had not clearly established by the time of the search at issue that the use of *instanter* subpoenas was unconstitutional under the Fourth Amendment. Thus, so long as Chapman had ample reason to believe that Morgan was operating an unregistered PMC (she did), then she is entitled to qualified immunity. Morgan's Fourteenth Amendment challenge fares no better, as the record evidence indisputably shows that Chapman did not search Morgan's medical practices to bring criminal charges against him.

These core points would not change even if the district court *had* considered Morgan's belated submission of evidence following the M&R. While it therefore does not matter whether this Court affirms the district court's decision rejecting

Morgan's untimely evidence, this Court should still do so because that decision reflects a sound exercise of discretion.

Accordingly, this Court should affirm the judgment below.

## ARGUMENT

## I. MORGAN HAS NO CHALLENGE TO JUDGE TIPTON'S REFERRAL TO MAGISTRATE JUDGE HAMPTON.

Morgan purports to challenge the district court's order referring the case to the magistrate. Br., at 1, 17, 24–25. That order referred the determination of all non-dispositive matters, and preparation of a recommendation as to dispositive motions including "motions for summary judgment." ROA.1718. Morgan did not appeal that order because he made no mention of it in his notice of appeal. ROA.1952.

Federal Rule of Appellate Procedure 3(c) requires that a notice of appeal designate the judgment or order from which the appeal is taken. Although the 2021 amendments to this rule permitted greater flexibility in interpreting notices of appeal to include the final judgment whenever an appellant referenced any order described in Rule 4(a)(4)(A), *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332 (5th Cir. 2023), the district court's order referring certain matters to the magistrate is not such an order. Thus, this Court should decline to consider Morgan's belated challenge to the referral order. *In re Hinsley*, 201 F.3d 638, 641 (5th Cir. 2000).

Even so, Congress unequivocally granted district court judges authority to designate magistrate judges for purposes of determining any pretrial matter except for dispositive motions. 28 U.S.C. § 636(b)(1)(A). The record does not reflect that the magistrate judge exceeded either the district court's referral or the scope of authority granted from Congress for the simple reason that Morgan's motion for leave to file a response to Chapman's summary judgment motion was not a dispositive motion. *See*, *e.g.*, *Burkhart v. Washington Metropolitan Area Transit Auth.*, 112 F.3d 1207, 1215 (D.D.C. 1997) ("The term 'dispositive motion' includes a motion that, if granted, would result either in the determination particular clam on the merits or elimination of such a claim from the case.").

## II. Morgan Cannot Challenge the Magistrate's Orders.

Morgan contends that the magistrate abused her discretion in denying him leave to respond to Appellants' summary judgment motions. Br., 24–25, 27–34.

This Court lacks jurisdiction over Morgan's challenges to any of the magistrate's orders because litigants cannot directly appeal orders entered by magistrate judges. *Donaldson v. Ducote*, 373 F.3d 622, 624 (5th Cir. 2004). That is because Congress provided this Court with jurisdiction of appeals from "all final decisions of the district courts of the United States" under 28 U.S.C. Section 1291, and "it is well established that a magistrate judge's order is not 'final' within the

meaning of § 1291 and may not be appealed to this court directly." *Donaldson*, 373 F.3d at 624 (citing *Trufant v. Autocon, Inc.*, 729 F.2d 308, 309 (5th Cir. 1984)).

Of course, Congress did not leave litigants dissatisfied with the decisions of a magistrate judge without any way to challenge them. A party dissatisfied with a magistrate judge's decision may obtain relief by objecting to the magistrate judge's findings and recommendations, and thereby compelling the district court to review his objections *de novo*. 28 U.S.C. § 636(b)(1)(C).

Under Federal Rule of Civil Procedure 72(a), Morgan could have appealed the magistrate judge's orders on his motion for leave to respond to Chapman's summary judgment motion directly to the district court—"as is required." *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987).[4]

The record reflects that he did not do so. ROA.19–20, 1834–59. Rather, he appeals the magistrate judge's decisions directly to *this* Court. "The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) (citations omitted). Thus, this Court lacks jurisdiction to address whether the magistrate judge erred in denying Morgan's motion for leave to respond to Chapman's summary judgment motion.

---

[4] The same principles extend to Morgan's disagreement with the order on his motion for judicial notice.

### III. The Magistrate Judge Did not Abuse her Discretion in Denying Morgan Leave to Respond to Chapman's Motion for Summary Judgment

Assuming for purposes of argument that this Court has jurisdiction to consider Morgan's appeal of the magistrate judge's order denying him leave to respond to Chapman's summary judgment motion, no error occurred.

This Court reviews a district court's denial of a litigant's request for an extension of time pursuant to Federal Rule of Civil Procedure 6(b) for abuse of discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990); *see also McCarty v. Thaler*, 376 F. App'x 442, 443-44 (5th Cir. 2010) (per curiam) ("Even if good cause and excusable neglect are shown, it nonetheless remains a question of the court's discretion whether to grant any motion to extend time under Rule 6(b).") (citation omitted).

In cases like *Pioneer* and its progeny, courts typically evaluated excusable neglect by "weighing a single instance of unforeseen human error along the others, including the lack of prejudice." *Coleman Hammons Constr. Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 942 F.3d 279, 284-85 (5th Cir. 2019). This case does not involve a single, isolated instance of unforeseen human error, but prolonged and complete neglect over more than a year by several of Morgan's lawyers.

Morgan had four attorneys of record during the relevant period, including two attorneys designated as lead counsel—Mr. Anderson and Ms. Chaplin. ROA.1829. While Ms. Chaplin had experienced a personal loss causing her to be less engaged with the case, Morgan had no explanation for why his other attorneys could not have responded to the defendants' motions.

Ms. Chaplin's personal loss also occurred in January 2024, before even Kopacz's summary judgment motion. ROA.1770 (¶ 6). But it did not stop her from filing a motion for judicial notice three days later (ROA.1350–95), or from later responding to Chapman's motion to seal (ROA.1706).

In fact, when explaining why Morgan needed an extension of time to respond to the motion to seal, Morgan did not cite Ms. Chaplin's earlier personal loss as a reason for the needed extension then. ROA.1702–05. It strains credulity that a personal loss suffered by one of Morgan's counsel was not a reason why he needed an extension for a brief in May 2024, but could support his request for a much longer extension nearly a year later in March 2025.

There was also no ambiguity about the deadline for Morgan to respond.[5] The court entered an amended scheduling order setting a June 7, 2024 pretrial motions deadline (ROA.1828–29), and the reason that Morgan had originally offered for

---

[5] ROA.1434, 1702–05, 1714–16, 1718–19.

staying his time to respond to Kopacz's motion for summary judgment during the February 1, 2024 hearing could not have applied to Chapman's. ROA.1829. At any rate, the reason Morgan had given for requesting a stay as to Kopacz's motion and supposedly believing that stay was still in effect throughout 2024—to address both dispositive motions together—had vanished after Chapman filed her motion. *Id.*

Nor does Morgan's assertion about the Court's order vacating deadlines get him anywhere: "A party has a duty of diligence to inquire about the status of a case," and gross carelessness, ignorance of the rules or ignorance of the law are insufficient basis for relief. *Edward H. Bohlin v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993).

Morgan says that the M&R came as a surprise to him (Br., 9), but this point (even if true) is simply irrelevant. This Court has explained that when "the parties have been given ample opportunity to respond to the motion for summary judgment, the district judge may rule on it even after a significant delay, without giving the parties advance notice of the court's intention to consider and decide the motion on a 'date certain.'" *Daniels v. Morris*, 746 F.2d 271, 275–76 (5th Cir. 1984).

As the magistrate judge remarked, Morgan "ha[d] not proffered a satisfactory reason outside of his control for his extended, repeated failure to stay

updated on the status of the case or to recognize the deadlines imposed by the court." ROA.1831 (citing *Pioneer*, 507 U.S. at 396–97). Where, as here, a litigant made no showing of excusable neglect, there can be no abuse of discretion. *Geiserman*, 893 F.2d at 793 (collecting authority).

While interesting, Morgan's argument for why he believed the magistrate judge erred in finding no excusable neglect does not separately explain why he believes the magistrate judge abused her discretion. It simply does not follow from a finding of excusable neglect that a court errs in denying leave under Federal Rule of Civil Procedure 6(b). *Geiserman*, 893 F.2d at 793.

Assuming the Court reaches this issue, it should therefore affirm the decision below denying Morgan an extension of leave to respond to Chapman's motion approximately 10 months after it had been filed. *See, e.g.*, *Midwest Emp'rs Cas. Co. v. Williams*, 161 F.3d 877, 879-80 (5th Cir. 1998) (affirming a denial of an extension when counsel's excuse was that he misread a rule, even though the motion was only two days late and the opposing party did not show undue prejudice); *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1047-48 (8th Cir. 2010) (upholding a denial of extension when the motion for extension was nine days late and counsel's excuse was that they were busy).

## IV. THE DISTRICT COURT PROPERLY REJECTED MORGAN'S EVIDENCE.

Morgan spends several pages of his brief complaining that the district court failed to consider "new" evidence submitted following the M&R, and which, so he says, would have changed the outcome. Br., 18–20.

"A district court's denial of a motion to supplement the record after a magistrate judge recommended granting or denying summary judgment is reviewed for an abuse of discretion." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003).

This Court instructs district courts to consider four factors when deciding whether to permit further evidence, but the third factor shows that this framework assumes a litigant had responded to summary judgment in the first instance:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party <u>when it responded to the summary judgment motion</u>; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (emphasis added). Morgan never responded to Chapman's summary judgment motion, so none of the materials he submitted with his M&R objections were "further evidence" of anything per Federal Rule of Civil Procedure 72(b)(3).

Even so, the district court carefully applied this Court's established framework. Namely, the court rejected Morgan's evidence because it was available to him prior to the M&R; because Morgan did not offer a satisfactory reason for his failure to originally submit it; because its consideration would unfairly prejudice Chapman and Kopacz; and because, even if considered, it "does not raise a genuine fact issue about whether Chapman was entitled to qualified immunity." ROA.1948–49. Morgan does not address these considerations on appeal. Br., 18–20.

"As [the Fifth Circuit] ha[s] held before under like circumstances where a litigant 'provid[ed] no reason why it failed to introduce evidence earlier,' we hold here that 'the district court clearly did not abuse its discretion in disallowing this evidence.'" *Ruvalcaba v. Angelton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *6 (5th Cir. Feb. 4, 2022) (quoting *Performance Autoplex II, Ltd.*, 322 F.3d at 861) (remaining citations omitted). This Court should reach the same result here.

## V. The District Court Properly Granted Summary Judgment in Chapman's Favor.

Finally, Morgan contends that the district court erred in granting summary judgment in Chapman's favor. Br., 34–50. This Court typically reviews appeals from summary judgment *de novo*. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). But this standard is altered when a party fails to object to a

magistrate judge's specific conclusions, which the district court then accepts. The district court accepted the magistrate's findings in the M&R. ROA. 1949–50.

In this situation, a party is barred, "except upon grounds of plain error, from attacking on appeal the unobjected-to proposed . . . legal conclusions accepted by the district court, provided that the party [w]as served with notice that such consequences w[ould] result from a failure to object." *Douglass*, 79 F.3d at 1429 (footnote omitted), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

The M&R included notice to the parties that their failure to object to the proposed findings, conclusions, and recommendation would preclude them, except upon grounds of plain error, from attacking on appeal any unobjected-to proposed findings accepted by the district court. ROA.1757. And yet, Morgan did not address any of the specific findings or conclusions in the M&R. ROA.1850–58.

He repeats the same mistake on appeal. Namely, he argues that Chapman's search was unreasonably executed (Br., 36–40), that collateral estoppel barred Chapman from contesting the factual findings of state court matters in which she was not a party (Br., 40–42), that the search was not performed for an administrative purpose (Br., 42–44), and that it was "obvious" he was not running a pill mill (Br. 49–50).

Morgan raised these arguments for the first time in his M&R objections. ROA.1850–58. Thus, he waived them. "[I]ssues raised for the first time in objections to the report of a magistrate judge are not properly before the district court." *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001); *see also Firefighters' Ret. Sys. v. EisnerAmper, LLP*, 898 F.3d 553, 559 (5th Cir. 2018) ("Plaintiffs forfeited their [legal] argument by raising it for the first time in their objection to the magistrate judge's Report and Recommendation."); *Cooper v. City of Dallas*, 402 F. App'x 891, 892 n.1 (5th Cir. 2010) (per curiam) ("Because [a party's argument] was not properly presented to the magistrate judge, we cannot address it here."); *Cornett v. Astrue*, 261 F. App'x 644, 650 (5th Cir. 2008) (per curiam) ("[Plaintiff] did not present his legal impediments arguments to then magistrate judge and, therefore, is not entitled to raise them on appeal.").

Regardless, Morgan ultimately does not identify any error made by the district court—much less an error that was clear and obvious. *Randle v. PNC Financial Servs. Group*, No. 24-11048, 2025 W 3012286, at *3 (5th Cir. Oct. 28, 2025) (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).[6]

***Qualified immunity, generally*** – To overcome qualified immunity, the plaintiff must show "a violation of a constitutional right that was clearly established

---

[6] Although the Court should apply plain error review, it does not affect the outcome of this appeal whether the Court applies that standard or *de novo* review.

at the time of the purported violation." *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). A right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted).

There are two general ways to make this showing: (1) identify an on-point case and (2) utilize the "obvious case" exception. *See Cope v. Cogdill*, 3 F.4th 198, 204–07 (5th Cir. 2021). An "on-point case" is "a case where an officer acting under similar circumstances was held to have violated the [Constitution]." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quotations and brackets omitted). While the referenced case need not be directly on point, the "precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12.

***Morgan's Fourth Amendment Search claim fails.*** The Fourth Amendment protects people from unreasonable searches. U.S. Const. amend. IV. Chapman does not dispute that her July 18, 2013 search (1) was performed without a warrant; (2) there was not adequate consent to the search; (3) the search was not justified by exigent circumstances; and (4) the search was conducted without Morgan being afforded pre-compliance review before a neutral decisionmaker. This Court's precedent requires a finding that Morgan's Fourth Amendment rights were violated

by the search. *See Cotropia v. Chapman*, 978 F.3d 282, 286–87 (5th Cir 2020)
[hereinafter "*Cotropia II*"]; *Zadeh v. Robinson*, 928 F.3d 457, 464–68 (5th Cir. 2019).

This, however, does not end the qualified immunity analysis. That is because
qualified immunity turns on whether the law was clearly established "at the time of
the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Thus, the
focus is on the law as of Chapman's search ( July 18, 2013) and not as of now.

In *Zadeh*, the Fifth Circuit held, for the first time, that the TMB's use of
*instanter* subpoenas to investigate potential, unregistered PMCs violated clearly
established law. 928 F.3d at 468–71. *Zadeh* came six years after Chapman's on-site
visit at issue here. Thus, it was not clearly established at the time of the on-site visit
that using *instanter* subpoenas would violate Morgan's Fourth Amendment rights.

Morgan's Fourth Amendment claim thus turns on whether qualified
immunity attaches to Chapman due to the "closely regulated industry" exception
to the warrant requirement, which excuses the need to obtain a warrant and offer
pre-compliance review prior to the search. *Cotropia II*, 978 F.3d at 286. This is
because closely regulated industries have "no reasonable expectation of privacy."
*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978).

This exception applies when three criteria are met: "(1) a substantial
government interest, (2) a regulatory scheme that requires warrantless searches to

further the government interest, and (3) a constitutionally adequate substitute for a warrant." *Zadeh*, 928 F.3d at 464–65 (quotations omitted).

The issue here is not whether Morgan *actually* operated an unregistered PMC. Rather, qualified immunity turns on whether a reasonable official in Chapman's position would have believed Morgan was operating an unregistered PMC. *See Cotropia II*, 978 F.3d at 288 ("The record provides ample evidence that could lead a reasonable officer to believe that Cotropia operated New Concept in the same manner as a PMC."). This analysis focuses on what Chapman knew during the on-site visit. *Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019).

Here, Chapman had reasonable cause to believe Morgan was operating an unregistered PMC. This "reasonable cause" included: (1) an independent journalist's report on Drive Thru; (2) DPS's prescription history for Morgan; (3) the fact that the DEA had its own, independent investigation into whether Drive Thru was an unregistered PMC; and (4) a pharmacist stating that several pharmacies were not taking Morgan's prescriptions. ROA.1495–96 (43:16–44:2).

To overcome Chapman's qualified immunity, Morgan needed to identify on-point caselaw (or satisfy the rare "obvious case" exception) showing that *no* reasonable official in her position and armed with her knowledge would have suspected that he was operating a PMC under these circumstances. He cannot.

Morgan's Fourth Amendment claim survives only if he can show the July 18, 2013 search was pretextual. To prevail, he must show that Chapman conducted this search "*solely* to find evidence of criminal wrongdoing." *Morgan*, 969 F.3d at 249 (emphasis added). Morgan cannot make this showing.

Chapman explicitly denied this point under oath. ROA.1470 (¶ 19). Additionally, the record shows that TMB *did* institute an administrative proceeding against Morgan. ROA.1581–1607.[7] The *Zadeh* panel found this fact highly relevant when determining the reasons motivating a TMB search. 928 F.3d at 471–72.

*Cotropia II* is also instructive. There, this Court found that TMB's search was not pretextual largely because it was prompted by "a complaint that Cotropia was operating an unregistered PMC." *Cotropia II*, 978 F.3d at 290. Here, TMB's investigation was similarly prompted by unsolicited information from a third-party: A journalist's investigation and report on Morgan's practices. ROA.1469 (¶ 6), 1474 (¶¶ 43–44); ROA.1530–38.

In fact, Morgan's pretext argument is, perhaps, weaker than the plaintiff's in *Cotropia II*. Here, TMB instituted an administrative proceeding against Morgan; that was not the case in *Cotropia II*. *See* 978 F.3d at 290. While Morgan *might* have been able to show that Chapman suspected him of criminal wrongdoing, "[a]n

---

[7] Morgan omitted this fact from his operative pleading. Thus, it was not part of this Court's Rule 12(b)(6) analysis, *Morgan*, 969 F.3d at 249, and the reason this claim went to discovery.

officer's suspicions about criminal wrongdoing do not, however, render an administrative inspection pretextual." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 198 (5th Cir. 2009). Morgan must have shown that Chapman conducted the July 18, 2013 search *solely* to find evidence of criminal wrongdoing—he did not.

This Court held in 2019, *after the searches at issue here*, that "it was not clearly established that 'on-demand searches of [pain management clinics] violate the constitution.'" *Zadeh v. Rinson*, 928 F.3d 457, 464 (5th Cir. 2019).

Morgan ignored this point below, as he does on appeal, seemingly hoping to circumvent the requirement of identifying a clearly established right by pointing to more generalized legal principles relating to commercial establishments. He is not free to do so because a plaintiff must identify a "clearly established right . . . *defined with specificity*" to overcome qualified immunity. *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (emphasis added).

In fact, Morgan altogether avoids discussing these on-point cases. He instead refers the Court to *Sea v. Seattle*, 387 U.S. 541, 544–45 (1967), and *New York v. Burger*, 482 U.S. 691, 702–03 (1987). Br. 43–44. Both cases provide only general guidance on searches of closely regulated industries; neither provides Morgan a way to ignore this Court's decisions in *Zadeh* and *Cotropia II*.

He also tries to avoid these issues by directing the Court to instead consider the reasonableness of the execution of the *instanter* subpoenas. Br. 36–40. Morgan spends pages singling out Kopacz, Br. 38–40, and says little of Chapman's alleged involvement. Br. 37. Recall that Morgan failed to raise this point in response to Chapman's summary judgment motion.

Even so, most of the places in the record that Morgan cites as support say nothing of Chapman's alleged involvement. In one place, a witness explains that the "Medical Board ladies" had no involvement in whatever misconduct Morgan alleges the "officers" were engaged in with his office staff. ROA.1276–77. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted). Suffice it to say that, whatever Morgan claims Kopacz or any other peace officer did during the search is irrelevant to his claims against Chapman.

Additionally, Morgan complains of actions taken against his office staff, and their personal property. Morgan is the only plaintiff here, and he has not demonstrated any legal capacity to have brought claims on behalf of any office staff even if they *had* joined as plaintiffs. Fed. R. Civ. P. 17.

Morgan also cites several places in the record reflecting exhibits that he improperly submitted after the M&R. ROA. 1851, 1909-1913, 1924–26. Shown

earlier, the district court did not abuse its discretion in rejecting Morgan's untimely evidence, so Morgan cannot rely on those materials in support of his argument for reversing the judgment below.

Morgan does not contend with the record evidence discussed by the magistrate in the M&R, and does not overcome Chapman's qualified immunity based on vague, unsubstantiated allegations of an unreasonable search. His Fourth Amendment claim fails.

***Morgan's Fourteenth Amendment Due Process claim fails.*** The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, cl. 1. This includes a "'due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person.'" *Morgan*, 969 F.3d at 250 (quoting *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015)).

To prevail on a Fourteenth Amendment fabricated evidence claim, a plaintiff must show: (1) the officer fabricated evidence; (2) for the purpose of falsely obtaining a criminal charge; and (3) that the evidence influenced the decision to charge. *Cole v. Hunter*, 497 F. Supp. 3d 172, 190 (N.D. Tex. 2020) (citing *Cole*, 802 F.3d at 777). Morgan cannot satisfy the "purpose" element, let alone that Chapman was personally involved in the prosecution.

Begin with personal involvement, which "is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382 (citation omitted). Morgan has no evidence of involvement by Chapman in his prosecution, and the only record evidence shows that she had no involvement.

As for Morgan's allegation that Chapman prepared her report for the purpose of falsely obtaining criminal charges, the record shows she drafted her Audit Report pursuant to TMB's standard investigatory practice for the purpose of assessing whether Morgan was operating an unregistered PMC so TMB could decide whether to file a non-criminal, administrative proceeding against him. ROA.1470, 1472 (¶¶ 19, 28); (ROA.1459 ¶¶ 24–26).

TMB did, in fact, file such a proceeding against Morgan, which further confirms this purpose. ROA.1473 (¶¶ 36–37), 1587–1607. Also notable, Chapman did not send her Audit Report to Kopacz—TMB's Open Records Officer did, and only after Kopacz specifically requested such records. ROA.1510–11 (54:25–55:19); ROA.1465. Chapman was not involved in this process, and she was not made aware of this request. ROA.1465 (¶ 5), 1473 (¶¶ 37–39).

Morgan's fabricated evidence claim fails as he cannot show that Chapman drafted her report for the purpose of obtaining criminal charges against him. *See Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) ("If an officer . . . fabricates

evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest.") (quotations and brackets omitted).

Next, Morgan also cannot show Chapman ever fabricated evidence. This claim focuses on her Audit Report, but the undisputed record evidence shows that Chapman found that Morgan prescribed over a majority of his patients opioids, benzodiazepines, barbiturates, or carisoprodol during the month reviewed (March 2013). ROA.1472 (¶¶ 28–30). This qualified Hop Medical as an unregistered PMC. *See* Tex. Occ. Code § 168.001(1). Put simply, Morgan's fabricated evidence claim fails as Chapman did not "fabricate" evidence against him in any sense of the word.

Morgan insists that Chapman could not have calculated how many of his patients he had prescribed opioids because she had no access to the denominator needed to derive these percentages—namely the total number of patients treated by Morgan during that period. On this basis, Morgan assumes that Chapman *must* have fabricated her calculation.

Chapman had the "denominator" for making her calculations for the simple reason that she collected patient records during TMB's on-site visit. ROA.1471–72 (¶¶ 27, 29). Comparing patient records with the prescription data that Chapman had received from other sources, she concluded that Morgan was operating an

unregistered pain management clinic. ROA.1472 (¶¶ 29–30). Two independent physicians reached the same conclusion as Chapman, which TMB relied on before pursuing an administrative case. ROA.1472–73 (¶¶ 31–35).

Lastly, in *Cole*, this Court explained that a Fourteenth Amendment due process claim is only available where "the Fourth Amendment is unavailing[.]" *Cole*, 802 F.3d at 771 (citation omitted). Morgan was free to plead alternative theories under both the Fourth and Fourteenth Amendment, but he cannot assert contradictory facts unless he is legitimately in doubt. *Adjustment Co. v. Galvin,* 86 F.3d 1455, 1461 (7th Cir. 1996). Morgan maintains his Fourth Amendment claim, so he cannot claim it is "unavailing."

***Morgan's judicial notice and collateral estoppel arguments are meritless.*** In a hail-Mary attempt to salvage his claims, Morgan falls back on considerations raised in his motion for judicial notice (which the district court mostly denied) and collateral estoppel (which is improper here). Br., 40–42.

*First,* judicial notice. Morgan says that the district court adopted the findings of the Victoria County District Court. Br., 40. The court's ruling on Morgan's prior motion for judicial notice states the opposite: the court "**DENIES** the motion to take judicial notice . . . insofar as the request pertains to the findings of fact contained in the records" and "**GRANTS** the motion to take judicial notice insofar

as the request is for the court to notice *the existence of the court records* in the two matters." ROA.1726 (emphasis added). Of course, taking notice of the fact that court records exist does not help Morgan establish the findings and conclusions in those records.[8]

*Second*, collateral estoppel does not apply here because Chapman was not a party to any of Morgan's prior state-court matters. "Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose *the defendant* from litigating an issue *the defendant* has previously litigated unsuccessfully in an action with another party." *Bradberry v. Jefferson County*, 732 F.3d 540, 548–49 (5th Cir. 2013) (citation omitted) (emphasis added).

This basic limit "reflect[s] the general consensus in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Richards v. Jefferson County, Al.*, 517 U.S. 793, 798 (1996) (citation and internal quotation marks omitted).

## Conclusion

This Court should affirm the judgment below.

---

[8] *See Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998) ("[E]ven though a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, a court cannot take judicial notice of the factual findings of another court.") (cleaned up; emphasis added).

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant
  Attorney General

AUSTIN KINGHORN
Deputy First Assistant
  Attorney General

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Cole P. Wilson*
COLE P. WILSON
Assistant Attorney General
Cole.Wilson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5738
Fax: (512) 320-0667

*Counsel for Appellee Mary Chapman*

## CERTIFICATE OF SERVICE

On November 28, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ *Cole P. Wilson*
COLE P. WILSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,057 words, excluding the parts of the brief exempted by Rule 32(f) and 5th Cir. R. 32.1; and (2) the typeface requirements of Rule 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ *Cole P. Wilson*
COLE P. WILSON