**Case No. 25-40357**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

COURTNEY MORGAN,

*Plaintiff-Appellant*

v.

MARY CHAPMAN; JOHN KOPACZ,

*Defendants-Appellees*

Appeal from the U.S. District Court for the
Southern District of Texas, Victoria Division (No. 6:17-cv-00004)
Hon. Drew B. Tipton, presiding

**REPLY BRIEF OF APPELLANT IN RESPONSE TO APPELLEE KOPACZ**

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

*Attorney for Appellant*

# TABLE OF CONTENTS

Page(s)

Table of Contents ....................................................................................................... ii

Table of Authorities ................................................................................................... iii

Summary of Reply Argument ..................................................................................... 1

Reply Argument .......................................................................................................... 4

I. Kopacz Fails to Justify, Either by Legal Authority or Citations to the Record, the Entry of Summary Judgment by Default Below ................................................. 4

II. The Magistrate Judge Exceeded Her Authority in Denying Morgan Leave to File His Opposition to Kopacz's Motion for Summary Judgment ............................ 5

III. The Review by Judge Tipton Below Did Not Comply with the *De Novo* Standard Required ....................................................................................................... 8

IV. The Magistrate's Procedure Was Unreasonable and an Abuse of Discretion ... 10

V. Kopacz Fails to Rebut that a Valid Cause of Action Remains Against Him Even if Qualified Immunity Protects the Lack of a Warrant, and Fails to Address that It Was Clearly Established that Searches of Commercial Enterprises Require a Search Warrant ................................................................. 12

  A. A Valid Cause of Action Remains Against Kopacz Even If Qualified Immunity Protects the Lack of a Warrant ........................................................ 13

  B. Kobacz Fails to Rebut that It Was Clearly Established that Searches of Commercial Enterprises Require a Search Warrant ......................................... 15

Conclusion .................................................................................................................. 16

Certificate of Compliance ........................................................................................... 17

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681 (5th Cir. 1991) ............................ 1

*Capital Films Corp. v. Charles Fries Productions*,
   628 F.2d 387 (5th Cir. 1980) .................................................................................. 5

*Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985) .................................................... 13

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) .................................................................. 10

*Daniels v. Morris*, 746 F.2d 271 (5th Cir. 1984) .................................................... 2, 4

*Donaldson v. Ducote*, 373 F.3d 622 (5th Cir. 2004) .................................................. 7

*Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919 (5th Cir. 1960) ........... 2

*Hall v. Smith*, 497 Fed. App'x 366 (5th Cir. 2012) .................................................... 5

*Husband v. Bryan*, 946 F.2d 27 (5th Cir. 1991) ........................................................ 13

*Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114 (5th Cir. 2008) .......................... 2

*See v. Seattle*, 387 U.S. 541 (1967) ............................................................................ 15

*Singletary v. B.R.X., Inc.*, 828 F.2d 1135 (5th Cir. 1987) .......................................... 7

*United States v. Clendening*, 526 F.2d 842 (5th Cir. 1976) ...................................... 11

*United States v. Evers*, 669 F.3d 645 (6th Cir. 2012) ................................................ 13

**Rules**

FED. R. CIV. P. 72 ................................................................................................ 6, 7, 9

FED. R. CIV. P. 72(b)(3) .............................................................................................. 9

## SUMMARY OF REPLY ARGUMENT

The reasoning in the mere handful of decisions relied on by Defendant John Kopacz ("Kopacz") in his opposition brief require ruling for Plaintiff Courtney Morgan ("Morgan") here. The Federal Rules of Civil Procedure stand strongly and entirely against the default summary judgment entered below. This case was unexpectedly reassigned below to a magistrate judge, who then neither issued a scheduling order nor set a hearing date, and instead rendered a summary judgment recommendation without ever considering any opposition by Plaintiff Morgan and without granting him leave to file his opposition. Numerous controlling precedents are against entering defaults and relying on procedural technicalities, as done below and unpersuasively urged by Kopacz here on appeal. *See, e.g.*, *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 686 (5th Cir. 1991) ("The Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits. Strict enforcement of defaults has no place in the Federal Rules ….").

Kopacz's brief on appeal is a paragon of "a tyranny of technicality" that this Court has repeatedly and emphatically rejected. Below, counsel in the Office of the Attorney General of Texas confirmed Morgan's counsel's understanding of the scheduling, but Kopacz's counsel in that same office now wants Morgan to lose based on a surprise in procedure, without ever reaching the merits. Kopacz cites no applicable precedent for elevating procedure over form on these facts. Everything

1

about the Federal Rules of Civil Procedure and relevant precedents requires rejecting this procedural approach taken by Kopacz now.

Kopacz argues that the passage of many months without a filing by Morgan's counsel weighs in favor of a default summary judgment, but the opposite is true: the passage of time implied that the motions were a "dead letter" in the words of Kopacz's first precedent, or that there was a scheduling misunderstanding which an order or hearing would have easily rectified. *See Daniels v. Morris*, 746 F.2d 271, 275 (5th Cir. 1984) (due to the passage of time after the filing of the motions, counsel "may simply have thought that the summary judgment motion was a 'dead letter.'"). A joint motion to vacate a scheduling order had been filed by counsel for both sides, reinforcing the impression that the prior deadlines were no longer effective. (Kopacz Br. 3, quoting ROA.1714-16) If there were any other case in which summary judgment was rendered on default in federal court as done below, then Kopacz presumably would have cited it in his brief here. He has not. "[I]in the absence of the plaintiff demonstrating his claims will suffer legitimate prejudice from setting aside the default, 'any doubt should ... be resolved in favor of [the defendant] to the end of securing a trial upon the merits.'" *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). Kopacz

does not even mention the word "prejudice" in his response brief, and would have none from allowing Morgan's opposition to his motion to summary judgment.

As to the merits, Kopacz repeats the error made by the court below that this case must be dismissed under qualified immunity, if it was not established by the time of the search that it would be unlawful. Kopacz's objectionable conduct in connection with the search would still be actionable, for which relief could and should be granted to Plaintiff Morgan. Moreover, it was clearly established at the time of the search that private businesses, which Morgan's clinics were, cannot be properly searched without first obtaining a search warrant, in the absence of an exigency of which there was none.

The government or a large corporate party would not be subjected to a default, without leave to litigate the merits, based on the mere scheduling misunderstanding that occurred below. Nor should Dr. Morgan. This case was unexpectedly assigned to a magistrate who then neither issued a scheduling order nor set a hearing on Defendants' motions. Counsel on both sides had moved jointly to vacate the scheduling order, and counsel on both sides thought that filing deadlines were no longer effective after the assignment to the magistrate. Defaults due to a scheduling misunderstanding are not typically imposed to the severe prejudice of a party, Dr. Morgan, as Kopacz urges this Court to affirm. Indeed, Kopacz cites no authority for insisting that a plaintiff be punished with dismissal of

his case based on a mere scheduling misunderstanding among counsel as occurred below.

**REPLY ARGUMENT**

Kopacz does not address or rebut most of Morgan's opening brief, and fails to distinguish his cited authorities. Minimizing repetition with his opening brief, Morgan replies specifically to Kopacz's arguments and cited decisions as follows.

**I. Kopacz Fails to Justify, Either by Legal Authority or Citations to the Record, the Entry of Summary Judgment by Default Below.**

Kopacz relies on procedural technicalities to defend the entry of summary judgment by default below, while downplaying the sincere scheduling confusion and hardship by Morgan's counsel. None of the cases cited by Kopacz in his brief support granting a summary judgment by default as done below, and in fact the reasoning in Kopacz's cited authorities support Morgan here.

Kopacz relies first on *Daniels v. Morris*, but its analysis supports Morgan rather than Kopacz here. In *Daniels*, the court received and reviewed opposition to the motion for summary judgment, and there was a fully developed record for rendering a decision on it. The only issue was whether the court should have awaited a response to a second supplemental brief on the motion. The *Daniels* decision cited multiple other cases which reversed a premature grant of a motion for summary judgment in the absence of a developed record. *Daniels*, 746 F.2d at 275 (5th Cir. 1984) (citing *Capital Films Corp. v. Charles Fries Productions*, 628

4

F.2d 387 (5th Cir. 1980), which reversed a grant of summary judgment in the absence of a filed opposition). *See also Hall v. Smith*, 497 Fed. App'x 366, 374 (5th Cir. 2012) (there was a response, albeit incomplete, which had been filed in opposition to the motion for summary judgment).

Kopacz cites imprecisely to hundreds of pages in the record for his assertion that Morgan's counsel was aware of deadlines to respond to motions for summary judgment, but simply "ignored them" and "did not bother" to comply. (Kopacz Br. 6-7 & nn. 23, 27) But Kopacz's citations to the record are as unsupportive of his argument as his sparse citations to legal authority are. For example, twice Kopacz cites the Scheduling Order below that said there would be a Docket Call on October 10, 2024. (Kopacz Br. 3, 7, citing ROA.1431-32) That never happened, obviously, and the reset Docket Call for January 16, 2025 never happened either, which suggests to an attorney that a new scheduling order would be entered. But one never was, and instead there was a surprise recommendation for summary judgment by the magistrate entered months after the Docket Call for a trial was supposed to occur.

**II. The Magistrate Judge Exceeded Her Authority in Denying Morgan Leave to File His Opposition to Kopacz's Motion for Summary Judgment.**

After Morgan's counsel unexpectedly received the recommendation by the magistrate judge to grant summary judgment to Kopacz by default, she promptly

5

sought leave to file her opposition and thereby establish a record for an informed ruling on pending motion. The resolution of this motion had the effect of being dispositive to the motion for summary judgment, because litigants cannot typically overcome a motion for summary judgment unless their opposition is allowed and considered. Yet the magistrate judge denied this motion not with a recommendation, but with an order. (ROA.1821-22) That was beyond the magistrate judge's authority because it had a dispositive effect. Either Judge Tipton should have handled that motion, or the magistrate should have made a recommendation on it. Instead, the magistrate denied it as a dispositive matter, which foreclosed Morgan's entire case below.

Kopacz responds, again, with a hyper-technical procedural argument without any authority to support it. Kopacz insists that Morgan should have appealed the magistrate's order to the district court first, in order to obtain review of it here. First, Morgan did the equivalent by asking the district judge to allow Morgan's response, which the district judge had the power to do but refused to allow it. Second, Morgan is not arguing here merely that the magistrate judge abused her discretion in denying Morgan leave, but that she acted beyond her authority in not deferring to Judge Tipton or issuing her ruling as a recommendation that Judge Tipton could then review *de novo* under FED. R. CIV. P. 72.

Kopacz cites only two authorities for defending the magistrate judge's ruling against Morgan as an order rather than as a recommendation. Kopacz cites *Donaldson v. Ducote*, 373 F.3d 622 (5th Cir. 2004), but (as above) the reasoning in that case again supports Morgan more than Kopacz. At the cited page the *Donaldson* decision states, "A party dissatisfied with a magistrate judge's decision may instead obtain relief by objecting to the ***magistrate judge's findings and recommendations***, thereby compelling the district court to review his objections *de novo*." *Id.* at 624 (emphasis added). In this case at bar, the magistrate judge excluded Morgan's submission as an order, not as a finding and recommendation. It was an action beyond the magistrate judge's authority for something which had a dispositive effect to Morgan's case.

The only other authority cited by Kopacz is *Singletary v. B.R.X., Inc.*, 828 F.2d 1135 (5th Cir. 1987). But that case concerned the granting of a protective order by a magistrate judge that limited discovery, which is a common type of non-dispositive ruling by a magistrate judge in contrast with entirely denying a party's request to submit opposition to a motion for summary judgment. *See id.* at 1137. Moreover, Morgan did request that the district judge below consider his submission – which Judge Tipton was fully authorized to but declined to do under Rule 72 – so there was no waiver of this issue by Morgan below. Judge Tipton should have considered Morgan's request for leave to submit his opposition in the

7

first instance, or the magistrate judge should have made a recommendation for Judge Tipton to review *de novo*, rather than the magistrate judge deciding it as a dispositive order.

**III. The Review by Judge Tipton Below Did Not Comply with the *De Novo* Standard Required.**

Kopacz admits that Judge Tipton was required to do a *de novo* review below, but merely cites boilerplate statements at the beginning and end of the district court decision repeating this standard. Then Kopacz argues that "the entire point of designating a magistrate judge to produce a memorandum and recommendation is to relieve the district judge of the responsibility to produce a full-scale opinion of his or her own." (Kopacz Br. 9) But more than merely copying, and repeating legal error, is required by this standard.

It is obvious from the district court opinion below that it overly deferred to the decision-making by the magistrate judge, rather than performing the necessary *de novo* review. For example, Judge Tipton's only reference to the central issue of whether there would be prejudice to Defendants was to cite an incorrect analysis by the magistrate judge in finding unfair prejudice in that "Defendants … would be forced to address new arguments and evidence after the M&R has already been issued." (ROA.1949) This is not legally cognizable prejudice to Kopacz himself, who is represented for free by state attorneys who would not have had to respond to Morgan's submission more than once. It is difficult to see how that erroneous

8

analysis of what constitutes prejudice would have resulted from a genuine *de novo* review.

The district judge did not fully address many of Morgan's arguments in his brief below, including those on central issues like Kopacz concealing exculpatory evidence, the lack of prejudice to him from Morgan's motion for leave to submit his opposition, and Kopacz's biased investigation. The district judge apparently and mistakenly seemed to think that Morgan had not "properly" objected to the magistrate's recommendation to grant summary judgment, by adding emphasis to the word "properly" in Rule 72: "What's more, the 'district judge *may* . . . receive further evidence' only when a party has "*properly* objected to" the M&R. FED. R. CIV. P. 72(b)(3) (emphasis added)." (ROA.1948) The addition of emphasis by the district judge to "properly" implies that he doubted whether Morgan had properly objected to the M&R. But Morgan did timely and properly object to it, and his objections should have been addressed *de novo* as expressly required by Rule 72.

The district judge relegated the entire, complicated issue of whether there is a genuine issue of material fact as to whether Defendant Mary Chapman was entitled to qualified immunity to a one-sentence footnote, without any discussion. (ROA.1949 n.1) The magistrate never considered Morgan's arguments on this central issue either, because she excluded Morgan's entire opposition, so the district judge could not have been properly incorporating the magistrate's analysis.

9

The consequences of the lack of analysis by the district judge in what should have been *de novo* review is that it leaves this Court in the disadvantageous position of considering arguments properly raised below but never addressed by the lower court. It is contrary to the appellate function to be left without the benefit of a full, dispositive decision below. *See Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("we are a court of review, not of first view").

### IV. The Magistrate's Procedure Was Unreasonable and an Abuse of Discretion.

Kopacz is flatly incorrect in arguing that "no one was confused about the pendency of the MSJs, the obligation to respond, and the imminence of a ruling." (Kopacz Br. 10) As fully explained and quoted by Morgan's opening brief and yet never addressed by Kopacz's response, the perception about scheduling held by Morgan's counsel was also confirmed by opposing counsel in the Office of the Attorney General of Texas in response to Morgan's counsel below:

> ***It looks like you are right.*** *There is not a need to vacate any deadlines or settings because the referral order to Magistrate Judge Hampton **cancelled any remaining deadlines/hearing before Judge Tipton, and Judge Hampton has not set new deadlines***.

Email from Cole Wilson, Office of the Attorney General of Texas, dated Wed, Dec 18, 2024, at 10:30 AM. (ROA.1771 ¶ 9, quoted by Morgan Opening Br. 22, emphasis added) Kopacz's counsel is arguing here against the position taken by his

10

own Office of the Attorney General of Texas, without explaining their 180-degree change in position.

As explained in Morgan's opening brief – and unrebutted by Kopacz's response brief – this case is squarely within the controlling precedent of *United States v. Clendening*, 526 F.2d 842 (5th Cir. 1976), in which the Court reversed a dismissal with prejudice where there was an analogous delay in response briefs and confusion about scheduling. *See id.* at 847-48 ("Our review of the circumstances involved … convinces us that the delays involved were not so excessive as to justify dismissal with prejudice.").

Equally glaring is the failure by Kopacz to address how there would have been no prejudice to him for the lower court to allow Morgan to submit an opposition to his motion. The concept of prejudice is the primary consideration in allowing a party to file something late, and yet the word "prejudice" appears nowhere in Kopacz's entire appellate brief here. Kopacz thereby tacitly concedes that he would not have been prejudiced by the lower court allowing and considering Morgan's opposition to his summary judgment motion.

Kopacz's challenge here to Morgan's counsel's argument for "good cause" is unpersuasive. The crisis in the family of Morgan's counsel was real, undisputed, and explained by an affidavit. The same legal office of Kopacz's counsel – the Office of the Office of the Attorney General of Texas – represented to Morgan's

counsel that "the referral order to Magistrate Judge Hampton cancelled any remaining deadlines/hearing before Judge Tipton, and Judge Hampton has not set new deadlines." (quoted above) If the combination of these factors is insufficient to qualify as "good cause" for missing a deadline, then it is difficult to see what would qualify. If the shoe were on the other foot, it is inconceivable that a summary judgment by default would be entered against the State of Texas under these circumstances, without leave to submit an opposition.

Indeed, an attorney for the State of Texas in this litigation did miss a key deadline for responding to a request for admissions, for which the law says all the unanswered requests for admissions should be deemed admitted. Yet in that analogous situation, the lower court excused the government and gave it a second chance that was not given to Morgan. (Morgan Opening Br. 8, citing ROA.2037-50) Kopacz omits this from his response brief too.

### V. Kopacz Fails to Rebut that a Valid Cause of Action Remains Against Him Even if Qualified Immunity Protects the Lack of a Warrant, and Fails to Address that It Was Clearly Established that Searches of Commercial Enterprises Require a Search Warrant.

While failing to address multiple arguments and many precedents set forth in Morgan's opening brief, Kopacz devotes much of his opposition brief to a rote discussion of qualified immunity, as though that disposes of this case. But Kopacz's conduct is actionable even if qualified immunity applies to the obtaining of the search warrant. Moreover, it was clearly established at the time of Kopacz's

search that a warrant was needed to search a commercial enterprise, which Morgan's medical practice was. Rather than address these arguments in the first instance after the lower court failed to resolve them despite Morgan asserting them below, this Court should remand to the district court for proper consideration of these issues in the first instance.

### A. A Valid Cause of Action Remains Against Kopacz Even If Qualified Immunity Protects the Lack of a Warrant.

Kopacz does not deny or rebut the well-established principle that searches going beyond a valid warrant's scope are actionable. (Morgan Opening Br. 26, quoting *Husband v. Bryan*, 946 F.2d 27, 30 (5th Cir. 1991), and citing *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985)); *see also See, e.g.*, *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) ("A search pursuant to a valid warrant may become an impermissible general search if, as alleged by [defendant], the police 'flagrant[ly] disregard . . . the limitations of [the] search warrant' and the search 'unreasonably exceeded the scope of the warrant.'") (quoted by Morgan Opening Br. 36) Kopacz insists that qualified immunity protects his failure to obtain a warrant for the search, but that should not end this case. Kopacz's conduct was wrongful in addition to the warrant issue (Morgan Opening Br. 35-36), and qualified immunity does not protect the additional conduct.

For example, Kopacz's investigation discovered overwhelming evidence that Morgan was not operating a "pill mill," but he withheld that essential

13

information from his reports. Kopacz lacked a reasonable basis for participating in the warrantless raid of Morgan's facilities, and Kopacz conducted the raid in an unreasonable way in violation of Morgan's Fourth Amendment rights.

In response, Kopacz's brief contradicts itself by asserting that "he was conducting his own investigation," but also that "Kopacz merely attended to provide security, and performed no search." (Kopacz Br. 14) Anyone who is conducting his own investigation is going to be instinctively looking for evidence during a search of the target of his investigation. At a minimum, Kopacz's own statements create a disputed issue of material fact, negating summary judgment.

There is far more wrongdoing, too, which was overlooked by Judge Tipton below and ignored by Kopacz in his brief here, but explained in detail with citations to the record in Morgan's opening brief (at 35-50). For example, Kopacz omitted from his reports abundant exculpatory evidence about Morgan, while sensationalizing issues lacking in any legal significance, such as the coincidence that one of Morgan's facilities happened to have been located on what was apparently "an old used car lot" (ROA.1008 ¶ 6). That is a headline for attracting television viewers, not an objective investigative report about the legitimacy of a medical practice. Kopacz entirely omitted from his reports that the patients whom Kopacz inevitably saw entering and leaving Dr. Morgan's practice were nothing like the patient type and volume in a "pill mill."

14

In this day and age a black doctor, with an undergraduate degree in engineering and an interest in music like his father, should be able to offer affordable medical care to a community without being overwhelmed by state-sanctioned racial stereotypes resulting an unjustified search, arrest, and improper prosecution (which was ultimately dismissed). Kopacz's brief is silent as to the extensive evidence of his wrongdoing, and how three separate courts have independently rejected Kopacz's attempts to portray Morgan as a law-breaker. (Morgan Opening Br. 4, citing ROA.489-508, 1865-1875, 1880-1887)

### B. Kobacz Fails to Rebut that It Was Clearly Established that Searches of Commercial Enterprises Require a Search Warrant.

Morgan pointed out in his opening brief that "[f]or nearly 60 years the law has been 'settled' that government officials may not enter a private business by subpoena." (Morgan Opening Br. 43) Kopacz does not deny or rebut this. The U.S. Supreme Court decision, in which this was made clear, was rendered in 1967, nearly 60 years ago. *See See v. Seattle*, 387 U.S. 541, 544-45 (1967) (quoted by Morgan Opening Br. 43) There is nothing unclear or ambiguous about this. Yet Kopacz omits any reference to this controlling precedent in his response brief.

In 1987 an exception to this was created concerning closely regulated industries, but that exception has not applied to medical practices. A non-applicable exception does not undermine the general rule against warrantless searches of private businesses. Moreover, a search performed with an unlawful

15

purpose cannot be rehabilitated by arguing that if it had a lawful purpose then precedents at the time might have arguably allowed it. (Morgan Opening Br. 43) Yet Kopacz has not responded to any of this either. (Kopacz Br. 11-16)

## CONCLUSION

A humble, honest black doctor having his father's love for music opened two small medical clinics to provide affordable medical care to a Texas community. The relentless, unjustified harassment by officials that ensued, in which Kopacz played an instrumental role, should not be swept under the rug without even addressing the merits of Dr. Morgan's arguments.

Dr. Morgan respectfully requests that this Court reverse the decision below, and remand for this matter to proceed to trial.

Dated:  December 5, 2025    Respectfully submitted,

<u>/s/ Andrew L. Schlafly</u>
Andrew L. Schlafly
Attorney at Law
939 Old Chester Road
Far Hills, New Jersey 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Attorney for Plaintiff-Appellant*
*Courtney Morgan*

16

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 3,779 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: December 5, 2025

s/ Andrew L. Schlafly<br>
Attorney for Appellant