**Case No. 25-40357**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

COURTNEY MORGAN,

*Plaintiff-Appellant*

v.

MARY CHAPMAN; JOHN KOPACZ,

*Defendants-Appellees*

Appeal from the U.S. District Court for the
Southern District of Texas, Victoria Division (No. 6:17-cv-00004)
Hon. Drew B. Tipton, presiding

**REPLY BRIEF OF APPELLANT IN RESPONSE TO APPELLEE
CHAPMAN**

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

*Attorney for Appellant*

# TABLE OF CONTENTS

Page(s)

Table of Contents ................................................................................ ii

Table of Authorities ........................................................................... iii

Summary of Reply Argument .............................................................. 1

Reply Argument ................................................................................. 4

I. The Flaw Below Was Not in the Assignment to the Magistrate, but in Her Ruling without Ever Considering Morgan's Opposition to Summary Judgment ..... 4

II. Chapman's Procedural Argument Is Misplaced in Defending the Magistrate's Order to Exclude Morgan's Submission ............................... 6

III. In the Absence of Prejudice and with the Preference of the Federal Rules to Reach the Merits, It Was an Abuse of Discretion to Exclude Morgan's Submission Amid the Scheduling Confusion by Both Sides ..................... 7

IV. Chapman's Brief Does Not Justify the District Judge's Refusal to Allow Morgan's Evidence in Opposition to Summary Judgment ...................... 11

V. The District Court Erred in Granting Summary Judgment to Chapman ........... 13

   A. Qualified Immunity Does Not Apply to Chapman, and Would Not Absolve Her of All Liability for Her Wrongdoing. ......................... 14

   B. Collateral Estoppel Does Bar Chapman's Arguments, Which Were Rejected by the State Court Proceeding ............................... 20

Conclusion ....................................................................................... 22

Certificate of Compliance ................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                       Page(s)

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017) .......................................5

*Capital Films Corp. v. Charles Fries Productions*,
    628 F.2d 387 (5th Cir. 1980) ...........................................................................11

*Cotropia v. Chapman*, 978 F.3d 282 (5th Cir. 2020) ("*Cotropia II*")..............18, 19

*Daniels v. Morris*, 746 F.2d 271 (5th Cir. 1984) ....................................................11

*Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990)................................... 9-10

*Hall v. Smith*, 497 Fed. App'x 366 (5th Cir. 2012) ................................................11

*Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043 (8th Cir. 2010) ......................10

*Hubbuch v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
    No. 25-CV-5547 (JHR) (BCM),
    2025 U.S. Dist. LEXIS 175064 (S.D.N.Y. Sep. 8, 2025) ...............................8

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) .........................................5

*Midwest Emp'rs Cas. Co. v. Williams*, 161 F.3d 877 (5th Cir. 1998)......................9

*Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020) ......................................... 17-18

*Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*,
    322 F.3d 847 (5th Cir. 2003) ...........................................................................13

*Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491,
    2022 U.S. App. LEXIS 3213 (5th Cir. Feb. 4, 2022)..............................12, 13

*See v. Seattle*, 387 U.S. 541 (1967).........................................................................15

*Southwest Airlines Co. v. Tex. Int'l Airlines*, 546 F.2d 84 (5th Cir. 1977).............21

*Stringer v. Town of Jonesboro*, 986 F.3d 502 (5th Cir. 2021)................................14

*Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983) .................................................19

*United States v. Renfro*, 620 F.2d 497 (5th Cir. 1980) .............................................7

*United States v. Vixamar*, 679 F.3d 22 (1st Cir. 2012)...........................................12

*Vines v. Univ. of La.*, 398 F.3d 700 (5th Cir. 2005) ...............................................21

*Zadeh v. Robinson*, 928 F.3d 457 (5th Cir. 2019) ...................................... 14-15, 19

**Statute and Rules**

Tex. Occ. Code § 168.001(1)......................................................................20

FED. R. CIV. P. 6(b) ..................................................................................9

FED. R. CIV. P. 72 ................................................................................6, 7

FED. R. CIV. P. 72(b)(3)......................................................................6, 11

## SUMMARY OF REPLY ARGUMENT

Defendant Mary Chapman ("Chapman") initiated and executed a warrantless search by "an unusual show of force" (ROA.1884) of Plaintiff Morgan without doing a fair investigation of his practice, and by deceptively including all prescriptions for any controlled substance in her audit even though classification as a pain management clinic (PMC) is based on only four identified controlled substances. (ROA.1840-42; Morgan Opening Br. 5-6, citing ROA.742, 754-56) The subsequent improper prosecution of Morgan was based on Chapman's deceptive representations against Morgan, and her unjustified search of Morgan's two clinics, one of which was plainly never a PMC. Another court rejected Chapman's arguments and found her testimony to be "evasive" and "less than credible" (ROA.1841, 1884), but the court below ignored this finding and Chapman continues to rely here on a narrative that the state court had already rejected. (ROA.1880-87) Chapman had no basis for searching Morgan's Drive Thru Doc ("DTD") clinic, and insufficient basis for searching his Hop Medical Services ("HOP") clinic. (ROA.1839-41) While Chapman argues here that she never recommended the filing of the unjustified criminal charges against Morgan (Chapman Br. 17), it was Chapman's false representations about Morgan's practice and unjustified search that incited the wrongful prosecution of Morgan. (ROA.1884) Chapman's misconduct presents issues of fact to be decided by a jury.

In her response here, Chapman's brief deceptively implies that Morgan crossed the majority-of-patients threshold for a pain management clinic, but Chapman failed to determine the total number of patients to assess whether there was a majority. (ROA.1881) Even now, Chapman is unable to provide data showing that Morgan prescribed four particular controlled substances to a majority of his patients, which Morgan did not at his HOP clinic and obviously did not at his DTD clinic that Chapman wrongfully included in her searches. As explained in detail below by Morgan in his objection to the M&R (ROA.1844-45), the "only calculation made by the audit was that 65% of patients seen in March 2013 at HOP [not DTD] received prescriptions for 'controlled drugs,'" which included Adderall or phentermine even though they are not an opioid, benzodiazepine, barbiturate, or carisoprodol as defined for classification as a PMC. (ROA.1845, quoting the testimony of the Texas Medical Board official Belinda West).

As explained by Morgan below and yet ignored both the district judge and by Chapman's brief here:

> Chapman and Kopacz never had a correct calculation showing that during the month of March 2013, Dr. Morgan issued to more than 50% of his patients a prescription for either an opioid, benzodiazepine, barbiturate or carisoprodol. Consequently, there was no probable cause, and thus, no requirement for him to obtain a pain management clinic registration for Hop.

(ROA.1845) Moreover, Chapman does not deny in her brief here, and thus tacitly concedes, that her search of Morgan's other facility, DTD, was never justified by its pain management prescriptions.

Chapman's brief here fails to explain why she relentlessly targeted and victimized Morgan, a black physician earnestly trying to serve the community with affordable clinics. Instead, Chapman relies on strained procedural arguments, and strawman rebuttals to irrelevant issues, which should not be allowed to distract from the underlying injustice against Morgan that occurred.

Chapman's leading argument here is to defend the assignment below of this case to the magistrate for non-dispositive rulings, yet Morgan's objection is not to that assignment but to how the magistrate then ruled without considering any of Morgan's opposition to summary judgment. Chapman never addresses that the Federal Rules of Civil Procedure require cases to be resolved on their merits, not on procedural quirks. There was no prejudice to Chapman that would result from allowing Morgan's opposition to her motion for summary judgment, and Chapman demonstrates none. Given the preference of the Federal Rules to reach the merits, it was an abuse of discretion to exclude Morgan's submission amid the scheduling confusion by both sides below.

The lower court erred in granting summary judgment to Chapman. A black doctor should be able to operate an affordable medical clinic for the community

without be subjected to the relentless, unfair harassment by authorities without justification. Dr. Morgan's simple clinics, as shown by photographs (ROA.1915-22), were not pill mills or any other nefarious operation. Chapman's biased conduct towards Dr. Morgan and her distortion of data about his practice create disputed issues of material fact unsuitable for summary judgment.

## REPLY ARGUMENT

Rather than substantively address Morgan's opening brief, Chapman focuses on irrelevant and strawman issues. As explained below, Chapman's arguments do not justify dismissal of Morgan's claims on procedural technicalities, and genuine issues of material fact preclude summary judgment here.

### I. The Flaw Below Was Not in the Assignment to the Magistrate, but in Her Ruling without Ever Considering Morgan's Opposition to Summary Judgment.

Chapman's primary argument is to defend the referral by Judge Tipton to the magistrate, and to argue that Morgan has not challenged the referral. But the flaw was not in the referral; it was how the magistrate then granted summary judgment to Defendants without ever considering any opposition from Plaintiff Morgan. The magistrate rendered an entire summary judgment by default, without ever issuing a scheduling order or setting a hearing on the summary judgment motions. Attorneys on both sides did not expect this. An attorney for the same Office of the Attorney

General of Texas, Cole Wilson, understood the referral to the magistrate to have
vacated the current deadlines on the motions:

> **It looks like you are right.** There is not a need to vacate any deadlines or
> settings because the referral order to Magistrate Judge Hampton *cancelled*
> *any remaining deadlines/hearing before Judge Tipton, and Judge*
> *Hampton has not set new deadlines*.

Email from Cole Wilson, Office of the Attorney General of Texas, dated Wed, Dec
18, 2024, at 10:30 AM. (ROA.1771 ¶ 9, quoted by Morgan Opening Br. 22,
emphasis added)

    The newly assigned magistrate was expected by attorneys on both sides to
set her own deadlines for summary judgment, but instead she ruled on the
summary judgment motions without even considering Morgan's strong opposition
to them. This was contrary to "the preference of the Federal Rules of Civil
Procedure in general … for resolving disputes on their merits." *Krupski v. Costa*
*Crociere S. p. A.*, 560 U.S. 538, 539 (2010). "The principal function of procedural
rules should be to serve as useful guides to help, not hinder, persons who have a
legal right to bring their problems before the courts, and decisions on the merits are
not to be avoided on the basis of mere technicalities." *Austin v. Kroger Tex., L.P.*,
864 F.3d 326, 337-38 (5th Cir. 2017) (cleaned up, inner quotations and citations
omitted).

    Chapman's motion for summary judgment should not have been
unexpectedly granted by default below, in dismissal of all of Morgan's claims.

**II. Chapman's Procedural Argument Is Misplaced in Defending the Magistrate's Order to Exclude Morgan's Submission.**

Chapman argues against review here of the magistrate's post-M&R order precluding Morgan from submitting his opposition to Chapman's motion for summary judgment. But again Chapman over-relies on procedural technicalities that are misplaced here.

Under Fed. R. Civ. P. 72, the District Judge Tipton had full authority to allow Morgan to submit his evidence in opposition to Chapman's motion for summary judgment. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Rule 72(b)(3). The magistrate had already rendered her Memorandum and Recommendation (M&R), and it became a matter of whether District Judge Tipton would allow Morgan's submission for the *de novo* review by Judge Tipton of the M&R. Morgan presented his arguments and evidence directly to Judge Tipton as Rule 72 contemplates. (ROA.1834-1927)

It was in error that, after the magistrate had issued the M&R, Judge Tipton referred to her Morgan's motion to submit his opposition to Chapman's motion for a summary judgment. Either Judge Tipton should have decided that motion, or the magistrate should have issued a recommendation about it for Judge Tipton to review. Denial of the submission of a party's opposition to summary judgment has the dispositive effect equivalent to enforcing a default, and after the magistrate has

issued the M&R it is for the district judge to review it and any post-M&R motion associated with it. Chapman's reliance on decisions finding a lack of finality for the jurisdiction of this Court are inapposite (Chapman Br. 21-22), because the ruling below is final in every respect such that jurisdiction clearly exists here. Chapman relies on *United States v. Renfro*, but its issue was an appeal to this Court of a magistrate's discovery order, which is unlike the issue here related to the magistrate's M&R here. 620 F.2d 497, 500 (5th Cir. 1980).

In sum, Chapman's argument based on procedural technicalities is grasping at a strawman; under Rule 72, Morgan properly and timely argued his case below, which included his presentation of his evidence,

### III. In the Absence of Prejudice and with the Preference of the Federal Rules to Reach the Merits, It Was an Abuse of Discretion to Exclude Morgan's Submission Amid the Scheduling Confusion by Both Sides.

Similar to Kopacz's flawed appellate brief here, to which Morgan has fully replied with a separate brief here, Chapman ignores the intent of the Federal Rules to resolve cases on their merits rather than through procedural quirks. The assignment of this case below to a magistrate and the passage time suggested to counsel on both sides that a briefing schedule would be set (or a hearing scheduled) before a decision was to be rendered. *See* Statement by Cole Wilson of the Office of the Attorney General of Texas, dated Wed, Dec 18, 2024 (ROA.1771 ¶ 9, quoted by in Point I above and in Morgan Opening Br. 22)

It was unfathomable then and now that the magistrate would issue a recommendation in favor of summary judgment without ever considering the opposition by Plaintiff Morgan. Federal litigation is not supposed to be a game of "gotcha". *See, e.g.*, *Hubbuch v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 25-CV-5547 (JHR) (BCM), 2025 U.S. Dist. LEXIS 175064, at *13 (S.D.N.Y. Sep. 8, 2025) ("But litigation in federal court is not a gotcha game.") (inner quotations and multiple citations omitted).

As in Kopacz's brief, Chapman does not demonstrate any prejudice that would have resulted from allowing Morgan to submit his opposition to summary judgment below. Kopacz did not reference "prejudice" anywhere in his appellate brief here, while Chapman does reference prejudice to acknowledge it as the standard (Chapman Br. 23, 27), but without demonstrating any specific, cognizable prejudice that would result to her from allowing Morgan to submit his opposition. (Chapman Br. 11, 28) Chapman cites to a general, overall delay in the case below (Chapman Br. 9), but that was not attributable to Morgan and, indeed, it was Chapman's own counsel who caused a longer delay by not responding on time to discovery requests. (Morgan Opening Br. 23, quoting ROA.1793:18-1794:2, 1799:1-15) The district court fully excused that failure of Chapman's counsel to satisfy the deadline for responding to requests for admissions, but then denied the request by Morgan's counsel to submit his evidence in opposition to summary

judgment. (ROA.1949) Chapman does not have any prejudice in allowing Morgan to respond, and Morgan's opposition to the summary judgment should have been allowed below.

Chapman relies on *Midwest Emp'rs Cas. Co. v. Williams*, which affirmed a denial of an extension in the absence of prejudice, but because the excuse was that counsel had misread a rule. 161 F.3d 877 (5th Cir. 1998) (cited by Chapman Br. 26). "Were it otherwise, almost every appellant's lawyer would plead his own inability to understand the law when he fails to comply with a deadline." *Id.* at 879 (inner quotations and multiple citations omitted). The rule at issue in *Midwest Emp'rs Cas. Co.* concerned the deadline for filing an appeal, which of course is a jurisdictional requirement for this Court. *See id.* at 878 ("We dismiss the appeal for lack of jurisdiction.") There was also a strong dissent by Judge Emilio Garza in that decision. "The majority fails to recognize and apply precedents that require us to uphold the Magistrate Judge's finding of excusable neglect and enlargement of the period for filing a notice of appeal … throw[ing] into disarray the law on when neglect is excusable …." *Id.* at 886 (Garza, J., dissenting). Nothing analogous to that fundamental issue of jurisdiction exists here.

Relying on *Geiserman v. MacDonald,* Chapman argues that "[i]t simply does not follow from a finding of excusable neglect that a court errs in denying leave under Federal Rule of Civil Procedure 6(b)." (Chapman Br. 26, citing 893

F.2d 787, 793 (5th Cir. 1990)). But the *Geiserman* decision concerned a repeated "flouting of discovery deadlines," not the wholesale exclusion of the opposition to a motion for summary judgment. *Id.* at 792. The opposition to summary judgment from the plaintiff in *Geiserman* was allowed and considered by the district court, unlike in this case below, and merely some untimely discovery was not permitted. *See id.* at 794 ("Finding no abuse of discretion in the court's evidentiary rulings and discovery orders ….").

Chapman resorts to an Eighth Circuit decision that is likewise unhelpful here. *See Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043 (8th Cir. 2010) (cited by Chapman Br. 26) In *Hawks*, the pending motion was to dismiss the complaint, so the record was complete (the filed complaint) without any submission by the plaintiff in opposition, in contrast with a motion for summary judgment where evidence from both sides is necessary to build a complete record. Moreover, the plaintiff in *Hawks* asserted as his excusable neglect merely that he has a busy practice, and his complaint was plainly defective in the cause of action he asserted. *See id.* at 1048, 1049. No further submission by the *Hawks* plaintiff could cure his defective complaint, in contrast with the submission below of Morgan's opposition, including evidence, that was necessary to build the record and which should have been allowed on Chapman's motion for summary judgment at issue here.

Finally, Chapman relies on *Daniels v. Morris*, as Kopacz did in his brief here. (Chapman Br. 25; Kopacz Br. 6) But as Morgan explained in his reply to Kopacz, the analysis in *Daniels* supports Morgan, not the Defendants. In *Daniels* the court accepted the motion for summary judgment and based its decision on a fully developed record, in contrast with here. Indeed, the *Daniels* decision cited multiple precedents that had reversed a premature grant of a motion for summary judgment in the absence of a developed record, as requested by Morgan here. *Daniels*, 746 F.2d at 275 (5th Cir. 1984) (citing *Capital Films Corp. v. Charles Fries Productions*, 628 F.2d 387 (5th Cir. 1980), which reversed a grant of summary judgment in the absence of a filed opposition). *See also Hall v. Smith*, 497 Fed. App'x 366, 374 (5th Cir. 2012) (a response was filed in opposition to the motion for summary judgment, so the judgment was not by default).

### IV.   Chapman's Brief Does Not Justify the District Judge's Refusal to Allow Morgan's Evidence in Opposition to Summary Judgment.

Morgan timely requested that the district judge consider his evidence in opposition to Chapman's motion for summary judgment, but Judge Tipton also denied that. (ROA.1949) Chapman does not dispute the timeliness of this request by Morgan to Judge Tipton, but instead again elevates procedure over form while misapplying the test for the admission of new evidence.

First, Chapman argues that Morgan's evidence was not "further" evidence under Federal Rule of Civil Procedure 72(b)(3), because the magistrate had not

allowed any evidence at all from Morgan. (Chapman Br. 27) Under this argument, Chapman insists that a party should be barred from presenting evidence to the district judge whenever the magistrate does not allow him to submit any evidence in the first instance. But that approach would put the district judge under the authority of the magistrate, which is backwards. An Article III district judge is certainly not bound by a decision made by a (non-Article III) magistrate. *See, e.g.*, *United States v. Vixamar*, 679 F.3d 22, 26 n.2 (1st Cir. 2012) (findings of a magistrate in a probable cause hearing cannot bind a district judge).

Second, contrary to Chapman's assertion that Morgan did not argue this on appeal here (Chapman Br. 28), Morgan has argued at length here that there was excusable neglect for his trial counsel's not initially filing his opposition with evidence as apparently expected by the magistrate (Morgan Opening Br. 27-34) Morgan's argument here included his arguments on the lack of prejudice to Chapman and the lack of any harmful delay. (*Id.* at 30-31) Morgan also argued that there are disputed issues of material fact precluding summary judgment, as discussed in Point V, *infra*.

Ultimately Chapman relies on an unpublished decision of this Court that has no meaningful application here. *See Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 U.S. App. LEXIS 3213 (5th Cir. Feb. 4, 2022). That decision turned on the fact that the party "provided no reason why it failed to introduce the

evidence earlier." *Id.* at *19-20 (quoting *Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003), cleaned up). Here, Morgan has provided compelling reasons why his evidence was not submitted earlier: there was a scheduling misunderstanding shared by counsel on both sides (and Morgan's trial counsel had an emergency family crisis). *See* Point I, *supra*. Moreover, the plaintiff in *Ruvalcaba* was not prevented from submitting all of her evidence, but was merely precluded from submitting two supplemental affidavits "repeating allegations from the complaint, with certain additional details." *Id.* at *19. Nothing in *Ruvalcaba* supports excluding the entirety of Morgan's opposition and all of his evidence, as done below.

## V.    The District Court Erred in Granting Summary Judgment to Chapman.

Chapman begins her only substantive section on whether summary judgment should have been granted below with more hyper-technical procedural arguments that have already been rebutted above, and in Morgan's reply to Kopacz's appellate brief which Morgan filed on December 5, 2025. Based on confusion about scheduling below amid excusable neglect, Chapman seeks to apply a standard of plain error for review here, rather than *de novo* review. But then Chapman argues that it does not matter which standard is used by this court (Chapman Br. 30 n.6), and the standard of *de novo* review should be used here. (Morgan Opening Br. 17-18)

13

The district court devoted just one sentence – relegated to a mere footnote – to deciding that Morgan's submission would not create a genuine issue of material fact: "The Court also agrees with Chapman that Morgan's evidence, even if considered, does not raise a genuine fact issue about whether Chapman was entitled to qualified immunity. (Dkt. No. 187 at 9–12)." (ROA.1494 n.1) Rather than argue on appeal in the first instance about this issue left unexplained by the district court opinion, a remand for the district court to consider and provide its analysis on a full record would be the better course. "As we have repeatedly observed, we are a court of review, not first view." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (inner quotations and citations omitted).

### A. Qualified Immunity Does Not Apply to Chapman, and Would Not Absolve Her of All Liability for Her Wrongdoing.

To the extent that this Court prefers to address the merits now, Chapman admits in her brief here that her search of Morgan's clinics were unlawful, and not justified by any exception to the warrant requirement. (Chapman Br. 31-32) Chapman further admits that in *Zadeh v. Robinson*, the Fifth Circuit held "that the TMB's use of *instanter* subpoenas to investigate potential, unregistered PMC violated clearly established law." (Chapman Br. 32, citing 928 F.3d 457, 468-71 (5th Cir. 2019)). But because *Zadeh* "came six years after Chapman's on-site visit at issue here," Chapman argues that her search of Morgan's clinics did not violate Fourth Amendment rights because "it was not clearly established at the time of the

14

on-site visit that using *instanter* subpoenas would violate Morgan's Fourth Amendment rights." (Chapman Br. 32) For that, Chapman relies on *Zadeh*, by which a 2-1 panel of this Court found in favor of qualified immunity for the defendants concerning an unlawful, warrantless search.

There are two defects to Chapman's argument. First, Chapman admits here that the warrantless search "clearly" violated established law, and it is a factual inquiry whether she knew or should have so known at the time of the search. The facts in *Zadeh* were very different from here, because in *Zadeh* the Fifth Circuit held that "we assume only for purposes of our analysis today that pain management clinics are part of a closely regulated industry and that Dr. Zadeh was operating such a clinic even if his clinic was not certified as one." *Zadeh*, 928 F.3d at 466. That is not true here, particularly with respect to Morgan's DTD clinic, and the assumption in *Zadeh* is not the law of this case. The general rule, as acknowledged in *Zadeh*, was set forth by the U.S. Supreme Court in 1967 as quoted in Morgan's opening brief here: government officials may ***not*** search a private business based on merely a subpoena. (Morgan Opening Br. 43, quoting at length *See v. Seattle*, 387 U.S. 541, 544-45 (1967))

Second, in sharp contrast with this Court's assumption in *Zadeh*, Morgan was not operating a pill mill and it was only by skewering a misrepresentative month's data that Chapman falsely portrayed only one of Morgan's two clinics as a

15

unregistered PMC (Morgan's other clinic, DTD, was clearly not a PMC). Chapman had available to her Kopacz's surveillance and undercover work, from which she should have realized that Morgan's clinics were not pill mills, and thus there was no justification for the surprise, intensive searches. If Chapman had sought and obtained a warrant for the search, this still would have violated Morgan's constitutional rights because it lacked a reasonable basis. It was only by ignoring evidence and distorting data, in a biased manner, that anyone could cast Morgan as a possible wrongdoer. And Chapman conducted the search far beyond what was necessary to assess whether Morgan was operating a pill mill, as demonstrated by the record.

Chapman disclaims any responsibility or involvement in the subsequent wrongful prosecution of Morgan, but this also raises a triable issue of fact in light of the testimony by Kopacz that "half of his time was spent 'liaising with TMB [Texas Medical Board].'" (Morgan Opening Br. 14, quoting ROA.1742)

Chapman argues that she had reasonable cause to think that Morgan was operating an unregistered PMC because:

> (1) an independent journalist's report on Drive Thru; (2) DPS's prescription history for Morgan; (3) the fact that the DEA had its own, independent investigation into whether Drive Thru was an unregistered PMC; and (4) a pharmacist stating that several pharmacies were not taking Morgan's prescriptions.

(Chapman Br. 33, citing ROA.1495–96 (43:16–44:2)). None of these purported bases is persuasive for justifying the warrantless, intrusive search perpetrated by Chapman against Morgan. The newspaper article was about telemedicine, not pain management, and perceptions by pharmacists can be racially biased. These are not adequate, objective justifications for raiding a private office without a warrant. As to DPS – the Department of Public Safety – its prescription history was incomplete and Chapman should have known that. As Morgan explained to the district court below, the "DPS prescription monitoring system consisted of data only concerning controlled substances dispensed by a Texas pharmacy," not all of Morgan's patients as defined for PMC classification. (ROA.1839) And the mere existence of a DEA investigation does not justify a raid by the Texas Medical Board.

Notably absent from Chapman's brief is any persuasive argument or evidence that Chapman did an objective, fair review of the prescription practices of Dr. Morgan, or that she performed an unbiased investigation before searching Morgan's clinics without a warrant. Instead, Chapman relies at one point on her own testimony, but another court found her to lack credibility on facts related to this case. (*Compare* Chapman Br. 34 *with* Morgan Opening Br. 42)

Chapman further argues that "Morgan cannot make this showing" that "Chapman conducted this search '*solely* to find evidence of criminal wrongdoing.'" (Chapman Br. 34, quoting *Morgan v. Chapman*, 969 F.3d 238, 249

(5th Cir. 2020), emphasis added). But an unjustified criminal prosecution did ensue based on Chapman's unlawful search and distortion of the evidence. With so much law enforcement, including Kopacz, facilitating this search, a factfinder could reasonably conclude that it had no purpose other than seeking evidence of criminal wrongdoing. As the state court held in its ruling, "the actions of the TMB and law enforcement bordered on intimidation." (ROA.1886) Chapman could have easily obtained whatever she needed for an administrative proceeding by serving a subpoena for the production of documents by Morgan.

Chapman seeks refuge in the assertion that the "TMB *did* institute an administrative proceeding against Morgan. (Chapman Br. 34, emphasis in original) But that mere *post hoc* development – more than 16 months later – cannot repair the taint of an unconstitutional search, particularly when TMB has the unchecked power to initiate an administrative proceeding at any time against anyone, whether justified or not. More significant is the fact that the administrative decision was reversed by another state court, and the TMB ultimately decided entirely in favor of Dr. Morgan (ROA.1877-78), further demonstrating his innocence.

Chapman relies on the qualified immunity she received for her unlawful search in *Cotropia II*, but in that case "[a]fter an hour, a constable arrived and told Chapman to leave." *Cotropia v. Chapman*, 978 F.3d 282, 285 (5th Cir. 2020) ("*Cotropia II*"). In sharp contrast with Morgan's clinics, *Cotropia II* concerned a

18

medical practice that was reasonably and objectively thought to be an unregistered PMC, and where the search itself had not "bordered on intimidation" as found by a state court in analyzing Chapman's search of Morgan's clinics. (ROA.1886)

At any rate, nothing in *Zadeh* or *Cotropia II* justify the constitutional violations incurred by Chapman beyond the issue of executing a search of a private office without a warrant. Chapman is not entitled to qualified immunity for conducting her search in an unreasonable manner and for distorting the data in a biased way against Morgan that resulted in the unjustified prosecution of him. Chapman was the initiator of the search of Morgan's clinics and thus the person in charge, which easily satisfies the test of personal involvement pursuant to the precedent relied on by Chapman in her brief here. (Chapman Br. 36, quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Kopacz asserts in his brief here that he "merely attended to provide security, and performed no search" (Kopacz Br. 14), and now Chapman implausibly implies likewise, but a jury does not have to believe either.

Chapman's brief goes to great lengths to put distance between her and Kopacz, to try to create an impression that there was very little cooperation between them. But Kopacz's testimony was that half of his time was spent "liaising with TMB [Texas Medical Board]." (ROA.1742). The seamless, armed

19

participation by Kopacz with Chapman in the unconstitutional search of Morgan's offices reinforces their close relationship in targeting Morgan. It is a genuine issue of material fact at to the extensiveness of Chapman working with Kopacz in investigating and wrongly prosecuting Morgan.

Chapman never fairly analyzed Morgan's patient data, and was never justified in accusing him of operating an unregistered PMC. Chapman never requested the totality of patients seen by Morgan in the month of March 2013, and thus could not possibly calculate whether a majority of those patients received the specific four categories of drugs identified in Tex. Occ. Code § 168.001(1). Chapman also failed to carefully separate out controlled substance prescriptions from the narrow four categories of controlled substances that trigger PMC status. Finally, Chapman looked at only one month, when the plain meaning of the governing statute is to look at the ongoing monthly prescription pattern, as in for at least two months. (ROA.1869-70) Chapman rushed to a biased, predetermined conclusion without performing a fair, objective analysis required. Others then relied on the wrongful biased work of Chapman, to the harm of Morgan.

## B. Collateral Estoppel Does Bar Chapman's Arguments, Which Were Rejected by the State Court Proceeding.

Chapman's response brief further errs as to the issue of collateral estoppel. The district court should not have attempted to write on a clean slate in this matter, after Chapman's same arguments and representations were specifically rejected by

a state court in a very thorough proceeding. Chapman is estopped by the prior proceeding because the State of Texas was a party, and Chapman testified as a witness in privity with the State of Texas. (ROA.1880-87) The state court made factual and legal findings in rejecting her narrative. Notably, Chapman does not assert any error in the findings of the prior proceeding against her – including the ruling that Chapman's narrative lacked credibility. (ROA.1884)

Chapman's argument here is that she was technically not a formal party to the prior proceedings, and thus collateral estoppel should not apply to her. This is incorrect because she was in privity with the party. As this Court has explained:

> Privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." Federal courts have consistently held that a non-party to an action is still bound by and entitled to the benefits of a judgment as though it were a party if it was represented in the original action. It is well-settled precedent that a judgment in an action in which a government agency represents private individuals is binding on those individuals.

*Vines v. Univ. of La.*, 398 F.3d 700, 706 (5th Cir. 2005) (quoting *Southwest Airlines Co. v. Tex. Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977), while omitting another cited precedent). Chapman was in privity with the State of Texas and is bound by the prior state court decision that the federal district court below ignored in granting summary judgment.

The state court found that "the TMB acted with bad faith in partnering up with law enforcement to conduct the search of [Dr. Morgan]'s business."

21

(ROA.1887) As the TMB employee responsible for this "bad faith," Chapman should be legally accountable.

## CONCLUSION

Dr. Morgan respectfully requests that this Court reverse the decision below, and remand for this matter to proceed to trial.

Dated: December 19, 2025        Respectfully submitted,

/s/ Andrew L. Schlafly
Andrew L. Schlafly
Attorney at Law
939 Old Chester Road
Far Hills, New Jersey 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Attorney for Plaintiff-Appellant*
*Courtney Morgan*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 5,121 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: December 19, 2025

s/ Andrew L. Schlafly
Attorney for Appellant
