# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 25-40357

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2026

Lyle W. Cayce
Clerk

Courtney Morgan,

*Plaintiff—Appellant*,

*versus*

Mary Chapman; John Kopacz,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:17-CV-4

———————————————————————

Before Willett, Wilson, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*: [*]

 Plaintiff-Appellant Courtney Morgan brings this suit alleging various Fourth and Fourteenth Amendment claims against a Texas Medical Board ("TMB") investigator, Mary Chapman, and a Texas Department of Public Safety ("DPS") law enforcement officer, John Kopacz, for a 2013 search of his clinics and his resulting prosecution. Both Defendants filed motions for summary judgment at the district court but Morgan never responded.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-40357

Almost a year after the motions were filed, the magistrate judge issued a memorandum and recommendation ("M&R") granting summary judgment in favor of the Defendants based on qualified immunity. Morgan moved for leave to file a response to the summary judgment motions, which the magistrate judge denied. The district court then adopted the M&R over Morgan's objection. On appeal, Morgan challenges the denial of leave to file a response to the summary judgment motions and argues the Defendants are not entitled to qualified immunity.

We find that the district court did not abuse its discretion when adopting the magistrate judge's M&R that did not allow Morgan to file a belated response to the summary judgment motions. As to the merits of the summary judgment order, we AFFIRM in part as to the unreasonable seizure claim against John Kopacz, and due process claim and unreasonable search claim against Mary Chapman; and VACATE and REMAND in part for further proceedings as to the unreasonable search claim against John Kopacz.

I

The following is a brief recitation of the fuller version of facts outlined in the previous appeal in this case. *Morgan v. Chapman*, 969 F.3d 238, 241–42 (5th Cir. 2020) (*Morgan I*), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). Dr. Courtney Morgan is a physician in Victoria, Texas, who owns two clinics: Hop Medical Services and Drive Thru Doc. *Id.* at 241. Drive Thru Doc provided services for simple medical issues at a discounted rate for uninsured patients. *Id.* at 241–42. On July 18, 2013, law enforcement searched Morgan's clinics for evidence of illegal controlled-substance-related activity. *Id.* at 242. Based on this search, Morgan sued Mary Chapman, an investigator for the Texas Medical Board, and John Kopacz, an agent with the Texas Department of Public Safety. *Id.* As alleged, Chapman

and Kopacz, along with other agents and officers, served *instanter* subpoenas on Morgan, searched and seized medical files from his clinic, confined Morgan in an examination room, prevented his employees from communicating with each other, and collected all of their cell phones. *Id.*

In moving for summary judgment on remand, Kopacz submitted his offense reports with the motion, detailing his involvement in the search as follows. On June 1, 2013, Kopacz filled out an offense report indicating that dating back to May 2013, he had received information from pharmacists and DEA investigators that Morgan was issuing prescriptions for controlled substances without seeing the relevant patients. He stated that he contacted a Houston DEA investigator and made a plan to initiate an undercover operation in April 2013 to obtain prescriptions from Drive Thru Doc. The agent was able to obtain prescriptions for Soma and Phentermine after seeing Morgan. Throughout May, Kopacz stated, he was contacted by multiple local pharmacists; he also visited one of Morgan's patients to discuss her prescriptions. In a second report, Kopacz indicated that on July 18, 2013, he assisted Chapman and other TMB personnel with serving an administrative subpoena at Drive Thru Doc. Kopacz said he assisted by "providing security" while the investigators "obtained records in reference to the administrative subpoena." He then met up with DEA investigators, and the full group went to Dr. Morgan's main office where the TMB personnel served another administrative subpoena and the DEA conducted a controlled substance location check. Kopacz left the location after the DEA finished; the TMB personnel stayed at the location with a Victoria Police Department officer.

According to this second report, Kopacz requested the TMB investigative file on Morgan on August 27, 2013, from Belinda West, Chapman's supervisor. He received the file from the records department on September 11, 2013. The file indicated that Morgan's patients received

prescriptions that Kopacz believed qualified Morgan's practice as an unregistered pain management clinic. Kopacz stated in the report that he would present the case to the Victoria County District Attorney for prosecution. At a later suppression hearing in Morgan's case in May 2015, Kopacz testified that around half of his caseload involved liaising with the TMB on prescription-type frauds. Kopacz testified that he contacted Chapman at the TMB after he began his investigation and was told by Chapman that she had already received reports from pharmacists regarding Drive Thru Doc. Kopacz further testified that he did not have an open criminal investigation against Morgan at the time of the search, that he did not talk to anyone at the search, and that he was only there as security. He testified that, in his regular practice investigating pain management clinics, he relied on the TMB reports for information and summaries of patient records. Chapman testified that she spoke with Kopacz about Morgan before the search and "asked if [Kopacz had] any interest in going with [them]" to the search.

Chapman also submitted a summary judgment motion. In support of her motion, Chapman submitted a declaration from Belinda West, a program supervisor with the TMB who supervised Chapman's investigation into Morgan. West outlined TMB's typical investigation process in 2013, which generally involved an initial complaint from a third-party or from the TMB itself when it learned about concerning information, after which a complaint was assigned to an investigator that would perform an on-site visit. For pain management clinics, the TMB investigator would use *instanter* subpoenas to get access to documents, and West stated that it was standard practice for the TMB to have law enforcement officers accompany investigators to searches based on these subpoenas. Investigators would then review the documents and prepare an audit report to present to a board of expert panelists that would decide if there was a violation of the Texas Medical Practice Act. If

the panelists agreed that there was a violation, the case would then be referred to the legal department, which would either try to settle the matter informally or file a case with the State Office of Administrative Hearings.

Chapman stated in a declaration that she did not take any action against Morgan for the purposes of obtaining criminal charges, but to determine whether he was violating the Texas Medical Practice Act. She stated that the TMB opened an investigation because of a local news story in June 2013 that reported Morgan was writing prescriptions without seeing patients. Chapman was assigned to the case, and after obtaining Morgan's prescription history for June 2012 to June 2013 from DPS, which indicated to Chapman that Morgan was likely operating an unregistered pain management clinic, Chapman spoke with a DEA investigator who told her the DEA had an active investigation into Drive Thru Doc. Chapman, believing an *instanter* subpoena was necessary to determine whether Morgan was operating an unregistered pain management clinic, conducted an on-site visit to Morgan's clinics on July 18, 2013, to investigate whether TMB should initiate administrative proceedings. After the visit, Chapman created an audit report; she stated that based on Morgan's prescription history for the month of March 2013 at Hop Medical, she believed he was operating an unregistered pain management clinic. The case was later sent to the board and the legal department, and the TMB filed an administrative proceeding against Morgan. Chapman stated that she was not aware that Kopacz requested the investigative file and she was not involved with the decision to file criminal charges. Gaby Loredo, an open records coordinator for the TMB, stated that she responded to Kopacz's file request and that Chapman had no involvement in her response.

In August 2014, Morgan was criminally indicted for operating an unregistered pain management clinic. The criminal charges were dismissed in January 2016. The TMB filed the administrative complaint in November

2014. In March 2017, the Texas State Office of Administrative Hearings concluded that, among other violations, Morgan operated an unregistered pain management clinic in March 2013 and could be sanctioned.

## II

Morgan filed suit in federal court in 2017. *Morgan I*, 969 F.3d 238. In the Second Amended Complaint, which came before our court in *Morgan I*, Morgan raised individual-capacity claims against Kopacz and Chapman for malicious prosecution, and a claim for abuse of process against Chapman. *Id.* at 243. The district court denied both Defendants' motions to dismiss asserting qualified immunity, absolute immunity, and failure to state a claim. *Id.* Following an appeal, our court found that although Chapman was not entitled to absolute immunity, both Chapman and Kopacz were entitled to qualified immunity because there is no constitutional right to be free from malicious prosecution nor to be free from abuse of process. *Id.* at 244–247. Finally, we considered whether it would be futile for Morgan to amend the complaint to add claims for due process, unreasonable search, or unreasonable seizure. *Id.* at 248. We concluded that it would not be futile because our court had recently decided multiple cases involving the TMB's unconstitutional use of *instanter* subpoenas, and Morgan's case as alleged was distinguishable from a similar case applying qualified immunity. *Id.* at 249. We remanded to the district court to consider whether Morgan should be granted leave to amend. *Id.* at 250–51.

On remand the district court granted Morgan's motion for leave to file a Third Amended Complaint. Morgan filed the Third Amended Complaint asserting claims for unreasonable search and seizure and violation of due process; both Defendants again filed motions to dismiss. The district court denied Kopacz's motion to dismiss in full on September 20, 2022. The district court granted in part and denied in part Chapman's motion to

dismiss, leaving Morgan's claims for unreasonable search and a due process violation intact.

Kopacz filed a motion for summary judgment on January 29, 2024. On February 1, 2024, the district court held a pre-motion conference where the parties discussed ongoing discovery disputes between Chapman and Morgan. The court instructed Chapman to issue belated discovery and interrogatory responses and granted Morgan's request that the response to Kopacz's motion for summary judgment would be "held in abeyance." The court also instructed Morgan's counsel to update the court once Chapman's discovery was entered with the desired schedule. On April 22, 2024, the district court issued an amended scheduling order setting the pretrial motions deadline for June 7, 2024, and the joint pretrial order and motion in limine deadline to September 26, 2024. Chapman thereafter filed a motion for summary judgment on May 14, 2024.

Between May 2024 and March 2025, Morgan took no action to respond to the two pending motions for summary judgment beyond a joint motion to vacate the scheduling order in September filed by Chapman that stated "Plaintiff, through his counsel, indicated he wishes to file responses to Defendants' motions for summary judgment, but he did not discuss any timeline." On September 13, 2024, the district court reset the joint pretrial order and motion in limine deadline to January 2, 2025, and set a docket call for January 16, 2025. However, on October 10, 2024, the district court referred the case to Magistrate Judge Hampton and entered a docket notice that terminated the deadline and docket call.

On March 5, 2025, Magistrate Judge Hampton issued an M & R on the motions for summary judgment recommending that both motions should be granted because both Kopacz and Chapman were entitled to qualified immunity. Two weeks later, Morgan filed an opposed motion for leave to file

responses to Defendants' motions for summary judgment. Magistrate Judge Hampton denied Morgan's motion to "file out-of-time responses to the motions for summary judgment," but granted the motion in part to allow him to file objections to the M&R. Morgan filed objections to the M&R largely seeking to introduce new evidence, but did not object to or appeal the order denying leave to file a response. On May 13, 2025, the district court issued an order accepting the M&R, and a separate final judgment dismissing Morgan's claims with prejudice.

Morgan argues that (1) the magistrate judge should not have issued an M&R because the parties were generally under the impression that the deadline to respond had been placed in abeyance; (2) the district court erred in allowing the magistrate judge to deny his motion for leave to submit a response, contrary to 28 U.S.C. § 636(b)(1); (3) the district court failed to conduct a *de novo* review of the M&R as required under 28 U.S.C. § 636(b)(1); (4) it was an abuse of discretion for the district court to grant the motions for summary judgment without considering additional evidence; and (5) on the merits, a genuine dispute of material fact exists as to Morgan's constitutional claims against the Defendants such that they are not entitled to qualified immunity.

The district court dismissed Plaintiff's claims with prejudice and entered final judgment on May 13, 2025. Plaintiff filed a timely notice of appeal on June 11, 2025. Accordingly, our court has jurisdiction under 28 U.S.C. § 1291.

### III

We first address Morgan's procedural arguments about the M&R and whether Morgan should have been granted leave to respond to the summary judgment motions. Morgan first contends that counsel on both sides expected a status conference or notice before Magistrate Judge

Hampton issued a dispositive recommendation on the motions for summary judgment, and that it was "unreasonable" for the magistrate judge to issue the M&R without Plaintiff's response given the confusion around the briefing schedule. This argument simply reiterates Morgan's initial objections to the magistrate judge's actions, and is essentially an attempt to directly appeal the M&R. But our court has jurisdiction over appeals from final decisions of the district courts and not a magistrate judge's nonfinal recommendations. *See* 28 U.S.C. § 1291. Thus, a magistrate judge's report and recommendation is outside the scope of our court's jurisdiction, as "[i]t is well established that the findings of a magistrate may not ordinarily be appealed directly to the Court of Appeals" without a specific statutory provision authorizing such direct appeal when the magistrate judge issues a final entry of judgment. *Trufant v. Autocon, Inc.*, 729 F.2d 308, 309 (5th Cir. 1984).

Next, Morgan argues that the district court erred when it allowed the magistrate judge to rule on the motion for leave to file a response, contrary to 28 U.S.C. § 636(b)(1). But our court does not have jurisdiction over direct appeals of a magistrate judge's order; rather, the proper procedure to appeal an order of a magistrate judge is to raise objections or to appeal to the district court under Rule 72(a). *See Donaldson v. Ducote*, 373 F.3d 622, 623 (5th Cir. 2004) (stating that magistrate judge orders are not final orders appealable to this court directly and that a party instead can "obtain relief by objecting to the magistrate judge's findings and recommendations, thereby compelling the district court to review his objections *de novo*"); Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

However, to the extent that Morgan argues that the district court should have ruled on the motion instead of the magistrate judge, or the

magistrate judge should have only made a recommendation on the order instead of issuing it, that argument does not square with the statutory text or our court's precedent. Under 28 U.S.C. § 636(b)(1), a properly designated magistrate judge may

> hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

*Id.* Motions for leave to file a response are not on the statutory list of exceptions to "any pretrial matter pending before the court." *Id.* Furthermore, Rule 72 distinguishes between "nondispositive" matters for which magistrate judges can issue an order, and "dispositive motions" that require a report and recommendation. *Compare* Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision."), *with* Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense. . . ."). By the very nature of the order, denying leave to file the response to the summary judgment motions did not dismiss nor "dispose" of Morgan's claims—the M&R did. Thus, the order denying leave to file a response is a nondispositive matter. Accordingly, it is within the statutory authority and discretion of the magistrate judge to rule on a motion for leave to file a response to a summary judgment motion.

No. 25-40357

Third, Morgan argues that the district court did not engage in a *de novo* review of the M&R, which is contrary to 28 U.S.C. § 636(b)(1)(C). The district court's order accepting the M&R begins by articulating the *de novo* standard of review. It ends with clarifying, "the Court has carefully considered de novo those portions of the M&R to which objections have been made and reviewed the remaining proposed findings, conclusions, and recommendations for plain error." The order also generally indicates that the district court reviewed the relevant portions of the record and substantive arguments as to qualified immunity. Although the court must review the actual evidence and not merely the M&R, our court can find from the order "on its face" that the district court reviewed the relevant pleadings and portions of the record in adopting the magistrate judge's recommendations. *Hay v. Waldron*, 834 F.2d 481, 487 (5th Cir. 1987). That standard has been met here where the district court twice stated it conducted a *de novo* review of the relevant portions of the M&R and added further analysis of the qualified immunity claims in response to Morgan's objections. Furthermore, Morgan fails to identify a single case from our court that otherwise supports his theory that we could hold the district court did not conduct a proper *de novo* review. We accordingly find that the district court satisfied 28 U.S.C. § 636(b)(1)(C).

Lastly, Morgan argues that the district court abused its discretion by ruling on summary judgment over his objections because Morgan's delay was due to a "misunderstanding among counsel on both sides about deadlines" and counsel's "family health crisis," which amounted to good cause for the court to extend the time to respond. Kopacz argues that our court does not have jurisdiction over whether Morgan should have been granted leave to file a response because Morgan did not appeal the order in the district court, and, even if there is jurisdiction, Kopacz argues that Morgan lacks "good cause" because Morgan had an obligation to respond regardless of any unforeseen

circumstances and counsel's "family health crisis" took place three days before the first motion for summary judgment was filed. Chapman raises the same arguments that our court lacks jurisdiction over the issue, and that the record demonstrates prolonged and complete neglect for more than a year, rather than good cause and excusable neglect.

The Defendants are correct that Morgan waived his right to object to the order denying his motion for leave to file a response when Morgan did not challenge the magistrate judge's order in the district court. In Morgan's filings after the denial of the motion for leave to file a response, Morgan never objected to the order to the district court as required under Rule 72(a). Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy."). As discussed above, our court declines to address an appeal of a magistrate judge's ruling on a pretrial motion when the party fails to first appeal the matter in the district court. *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987).

However, Morgan did request that the district court "accept additional evidence" under Rule 72(b)(3), which states that "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). When the district court denies a motion to supplement the record after a magistrate judge has recommended granting or denying summary judgment, we review under an abuse of discretion standard. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003). There are "several factors" a court must consider when deciding whether to accept additional evidence, including "(1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of

unfair prejudice to the non-moving party if the evidence is accepted." *Id.* at 862 (citing *Freeman v. County of Bexar*, 142 F.3d 848, 853 (5th Cir. 1998)).

Morgan's reasons for not initially responding to the motions for summary judgment fall into two categories: the parties were under the impression that the response was held in abeyance, and one of Morgan's lawyers experienced a family health crisis. As for the latter reason, Appellee Kopacz points out that the health crisis, the death of counsel's sister-in-law, took place three days before Kopacz filed the motion for summary judgment. Over a year had passed between that date and when the magistrate judge issued the M&R granting summary judgment. During that year, Morgan's counsel filed multiple motions, including a motion for judicial notice filed the same day as Kopacz's motion for summary judgment and briefing in response to a motion to seal, and there are multiple other named attorneys of record on the case. Counsel's purported reason does not justify over a year's worth of delay to respond to a substantive motion, nor counsel's lack of initiative to raise the issue with the district court.

As to whether both parties legitimately misunderstood the deadline because the district court placed the response in abeyance, there is some record evidence supporting Morgan's argument that the parties expected further clarification from the court. First, it is clear from the status conference a few days after Kopacz filed the first motion for summary judgment that the district court granted Morgan's request for the response deadline to be placed in abeyance pending the resolution of some discovery issues with a protective order, and Morgan was given the opportunity to update the court with the new deadline once discovery was received. And even after the court issued a later scheduling order following the protective order, that order did not clarify whether there were any remaining deadlines for responses to motions. As late as September 2024, when the court reset the deadlines after the parties jointly moved to vacate the scheduling order,

the court did not address the parties' joint statement that Morgan still wished to file a response at a later deadline. Furthermore, once the case was assigned to the magistrate judge, the pending hearings and docket call were cancelled. In the meantime, Morgan's counsel declared that opposing counsel represented to her that he understood the magistrate judge would clarify the status of any remaining deadlines at a later time. Therefore, the record does suggest the district court was allowing Morgan to respond to the motions for summary judgment at a later date.

Nevertheless, the sheer number of months that passed, and number of intervening docket events that occurred between February 2024 and March 2025 show that regardless of whatever understanding Morgan's counsel had that they were able to delay responding to the summary judgment motions because of the dispute, the responsibility was still on Morgan's counsel to keep the court updated on the eventual status of the deadline once Morgan received the discovery in question. The alleged confusion from the abeyance and vacated scheduling order is outweighed by the docket text clarifying when the case was referred to the magistrate judge that some pending motions were going to be handled by the court, and when the magistrate judge ruled on a separate motion to exclude as "unopposed" because Morgan had not filed a response. "A party has a duty of diligence to inquire about the status of a case," and yet Morgan did not inquire with the court about any of the deadlines once the case was referred. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993).

Turning back to the *Autoplex* factors, the first factor of Morgan's reasons for not originally submitting the evidence in response to the summary judgment motion does not weigh in his favor. For the remaining *Autoplex* factors, only the second factor weighs in Morgan's favor: the importance of the omitted evidence to the moving party's case. But even assuming Morgan's evidence was necessary to establish a genuine dispute of material

fact on Morgan's claims under the second factor, the evidence was previously available to him when Chapman entered belated discovery after the February 2024 status conference at the latest, and would have been available to him at his deadline to respond to the summary judgment motion under the third factor.[1]  On the fourth and final factor, allowing Morgan to introduce new evidence a year later, after the M&R analyzed the claims, would have prejudiced Kopacz and Chapman who did not have the benefit of the court's analysis when filing the motions for summary judgment.  Therefore, the district court did not abuse its discretion in declining to introduce new evidence.

IV

We next turn to the district court's order adopting the M&R and granting both Defendants' motions for summary judgment.  The M&R analyzed four claims: whether (1) Kopacz violated Morgan's Fourth Amendment rights by conducting an unreasonable and warrantless search of the clinics through the improper use of administrative subpoenas to pursue criminal charges; (2) Kopacz violated Morgan's Fourth Amendment rights by seeking criminal charges without probable cause and based entirely on Chapman's fabricated TMB investigative report; (3) Chapman violated Morgan's Fourth Amendment rights by conducting a warrantless search of the clinics with the intent to use unconstitutional *instanter* subpoenas and to pursue criminal charges; and (4) Chapman violated Morgan's Fourteenth Amendment due process rights by knowingly preparing the fabricated TMB investigative report.

---

[1] Morgan's counsel maintained at the conference that the discovery deadline passed in September 2023.

We review the summary judgment record *de novo*. *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017). However, it "will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Id.* (quoting *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (per curiam)). Our court is therefore limited in its review only to evidence that was properly considered by the district court, subject to the magistrate judge's recommendations. Further, "[t]o the extent that [Morgan] references or requests the opportunity to introduce evidence that was not considered by the district court, we are not permitted to consider that evidence on appellate review." *Russell v. Ivans*, No. 07-60310, 2008 WL 4584776, at *1 (5th Cir. Oct. 15, 2008) (citing *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999)).

Under Rule 56, summary judgment is proper when the movant shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation modified). In evaluating a claim for qualified immunity, we must (1) decide whether a plaintiff has shown the violation of a constitutional right and (2) whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). All reasonable inferences are drawn in Morgan's favor. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

## A. *Instanter* Subpoenas and *Morgan I*

Our court previewed Morgan's viable Fourth and Fourteenth Amendment claims and the clearly established law on *instanter* subpoenas in *Morgan I*. 969 F.3d at 248–49. As previously stated, Morgan filed a complaint against Kopacz and Chapman after Chapman searched his clinic using an *instanter* subpoena. *Id.* at 243. In *Morgan I*, we considered a published decision a year prior, *Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019), where our court held that an *instanter* subpoena violated a physician's Fourth Amendment rights. *Morgan I*, at 248. The defendants in *Zadeh* unsuccessfully argued that *instanter* subpoenas were constitutional because they fell into the "closely regulated industry" exception; even assuming that pain management clinics were closely regulated and the plaintiff was operating one, the *Zadeh* court found that the statutory scheme defining the TMB's inspection authority was not a proper substitute for a warrant. *Id.* at 248–49. Nevertheless, this law was not clearly established at the time of *Zadeh* in order for the plaintiffs to overcome qualified immunity. *Id.* at 249.

The *Morgan I* court still found *Zadeh* distinguishable from this case, such that *Zadeh* did not automatically close the question in Defendants' favor:

> Neither the closely regulated industry holding nor the pretextual search analysis would stop Morgan's claims. In *Zadeh*, the defendants received qualified immunity because the law of instanter searches of closely regulated pain management clinics was unclear. 928 F.3d at 466. Here, accepting the plaintiff's allegations as true, it is uncontroverted that Morgan was not operating a pain management clinic. Indeed, he alleges that he "has never obtained, stored, maintained or dispensed any controlled substances of any kind from either medical practice." Because Morgan was not operating a pain

> management clinic, the qualified immunity available to the
> defendants in *Zadeh* would be inapplicable here.

*Id.* A few months after *Morgan I*, our court expounded on how to weigh cases where the events occurred before the law was clearly established. In *Cotropia v. Chapman*, we considered whether the law was clearly established when Chapman used the TMB's subpoena authority to search an office that, the Appellant argued, was "undisputedly *not*" a pain management clinic. 978 F.3d 282, 288 (5th Cir. 2020). Because the statute gave the TMB authority to investigate clinics "operating . . . in the same manner" as a pain management clinic, the *Cotropia* court found that the relevant inquiry for deciding whether Chapman was entitled to qualified immunity is whether a reasonable officer could believe that the plaintiff was operating the clinic in the same manner as a pain management clinic, such that the search would have fallen within their statutory authority. *Id.*; TEX. OCC. CODE § 168.053. Chapman met the standard in *Cotropia* because the plaintiff admitted he prescribed opioids and had previously operated an unregistered pain management clinic, and his practice cared for patients he took over from another physician whose license was revoked for the improper treatment of patients with chronic-pain and substance use disorders. *Id.* Therefore, under *Zadeh*, *Morgan I*, and *Cotropia*, even though our court has found that *instanter* subpoenas are unconstitutional, in order to demonstrate that the law on *instanter* subpoenas was clearly established at the time of the search and Kopacz and Chapman are not entitled to qualified immunity for executing an *instanter* subpoena, Morgan must prove that Kopacz and Chapman could not have reasonably believed he was operating a clinic in the same manner as a pain management clinic.

## B. John Kopacz

We first consider Morgan's Fourth Amendment claim for unreasonable seizure.  The district court found that Kopacz was entitled to qualified immunity for this claim, holding that even if Morgan showed a violation of a constitutional right, he did not show that the right was clearly established.  Morgan did not allege that Kopacz made a false statement in an affidavit in support of a warrant, thus the district court found Morgan failed to meet the elements required to prove a violation of a defendant's Fourth Amendment malicious prosecution framework.

Kopacz argues that Morgan has waived this issue entirely by failing to brief it on appeal.  Morgan generally argues that Kopacz made false and misleading statements in the offense reports, although it is unclear whether Morgan is raising the issue as an objection to the M&R, or a substantive argument that a genuine dispute of material fact existed as to the unreasonable seizure claim.  Even if Morgan's brief is construed as raising a substantive issue that Kopacz was not entitled to qualified immunity on the unreasonable seizure claim, as discussed above, on a *de novo* summary judgment review, our court cannot consider evidence that was previously unavailable to the district court.  *Lyles*, 871 F.3d at 310.  Therefore, the district court properly granted summary judgment as to Morgan's claim for unreasonable seizure, given that Morgan did not identify any dispute of material fact regarding any false or misleading statement that Kopacz made in the reports.

We turn next to the unreasonable search claim against Kopacz.  The district court found that Kopacz was entitled to qualified immunity on the unreasonable search claim, stating that the evidence indicated that there was no connection between Kopacz's investigation and TMB's decision to issue the subpoenas.  As to the actual searches themselves, the district court stated

that Kopacz "merely attended to act as security" and did not actively participate in the searches.  It found that this is not sufficient under our comparable precedent in the warrant context, which states that non-affiant officers who nevertheless helped prepare a warrant application may be held liable for claims related to its procurement because they are "in a position to see the whole picture, to understand [their] responsibility, and thus fully to assess probable cause questions." *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005).  The district court also found that there was no evidence in the record supporting that the searches were merely a pretext for criminal charges in light of *Zadeh*, and Morgan therefore had no viable claim against Kopacz for a pretextual search.  928 F.3d 457 (5th Cir. 2019).

The district court's analysis incorrectly construed this portion of the record in the light most favorable to Kopacz, and not on the reasonable inferences supporting Morgan's repeated argument that the search was pretext for criminal charges—which would defeat Kopacz's assertion of qualified immunity on summary judgment. *See Ins. Co. of N. Am. v. Bosworth Constr. Co.*, 469 F.2d 1266, 1268 (5th Cir. 1972) ("Even though the facts are undisputed, summary judgment is inappropriate if   competing   reasonable inferences may be drawn as to any material factual issue.").  Instead, the evidence put forth in Kopacz's summary judgment motion does not show "the absence of a genuine issue of material fact" that's required from the non-moving party at summary judgment—the evidence *demonstrates* the fact issue. *Celotex Corp.*, 477 U.S. at 323.

Although Kopacz filled out an investigative report a month before the search in June 2013, when asked if he made Chapman aware that he was also doing a criminal investigation, Kopacz testified that he did not open a formal criminal investigation before the search and was only looking into "violations of criminal law."  Further, Kopacz testified that he spent half of his caseload liaising with the TMB, Kopacz reached out to Chapman directly regarding

Morgan, and Kopacz was invited by Chapman to the search. Even assuming *arguendo* that the subpoena process was constitutional because Kopacz believed Morgan was operating the equivalent of a pain management clinic, the facts above show a genuine dispute that goes to a material constitutional issue: pretext. That is because it is clearly established that "[e]ven under a valid inspection regime, the administrative search cannot be pretextual." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 197 (5th Cir. 2009). As our court already stated in *Morgan I*:

> The pretext analysis in this case also departs from *Zadeh*. In *Zadeh*, we concluded that the searches were not pretext for criminal investigation because there was no evidence that the "investigation resulted in a criminal prosecution" and because the TMB took "subsequent administrative action against" the physician. *Zadeh*, 928 F.3d at 471–72. Therefore, we reasoned, the search was not pretextual because it "was not performed 'solely to uncover evidence of criminality.'" *Id.* at 472 (quoting *New York v. Burger*, 482 U.S. 691, 698 (1987)). Here, neither of those two facts are present. The search *did* result in a criminal prosecution, and TMB did *not* take any subsequent administrative action against Morgan.

*Morgan I*, 969 F.3d at 249 (citation modified). A few months later, the *Cotropia* court declined to find pretext when the investigation did not result in criminal charges and the search served an administrative purpose, even though the TMB did not take further administrative action. *Cotropia*, 978 F.3d at 290. With the benefit of discovery, the evidence shows that as in *Zadeh*, the TMB filed an administrative complaint against Morgan. However, the difference between the administrative purpose of the search in *Zadeh* and *Cotropia*, and the evidence put forward by Kopacz about his involvement in the search here, is that there is significant coordination between the timing and focus of Kopacz's pre-existing criminal investigation

and his presence at the administrative search, which as Kopacz admits,[2] puts Kopacz closer to the analogous extended constitutional liability of a non-affiant officer. *Michalik*, 422 F.3d at 261 (discussing how non-affiant officers who prepare the warrant application with knowledge that a warrant would be based solely on that document, are in the position to understand their responsibility and assess probable cause). Kopacz reached out to Chapman before the search to discuss reports about Morgan's clinic, Chapman invited Kopacz to the search, Kopacz requested the TMB investigative report after the search, and the report was used to bring criminal charges.

Our court must look to whether the search was undertaken "solely to uncover evidence of criminality." *Zadeh*, 928 F.3d at 471 (citing *Burger*, 482 U.S. at 712). These same facts, with the inferences drawn in Morgan's favor, can therefore support a different version of the story: that Kopacz was conducting his own independent criminal investigation into Morgan and was "in a position to understand [his] responsibility" as our warrant cases require to find liability. *See Michalik*, 422 F.3d at 261. Then, he was present at the search at Chapman's invitation, and his connection to the search allowed him to gain information—the TMB report and documents seized from Morgan's clinic—that was used to bring criminal charges with information he otherwise would not have access to without a warrant. The two different inferences cannot be resolved at summary judgment so long as the reasonable inferences exist; the question belongs to a jury. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Given it was clearly established at the

---

[2] Notably, Kopacz himself describes *Michalik* as the "closest parallel" to assisting with the execution of *instanter* subpoenas.

time of the search that an "administrative search cannot be pretextual," any such search violated Morgan's constitutional rights such that Kopacz would not be entitled to qualified immunity on that claim. *Club Retro*, 568 F.3d at 197.

## C. Mary Chapman

Chapman moved for summary judgment on Morgan's Fourteenth Amendment claim, arguing that she is entitled to qualified immunity because she did not fabricate evidence. We agree. As already stated, Chapman's summary judgment motion outlines that she relied on a local news story and DPS prescription history to determine Morgan was likely operating an unregistered pain management clinic and completed an audit of the records collected during the search when she prepared the TMB report. Morgan did not present any evidence in response to the summary judgment motion, and therefore failed to rebut Chapman's explanation and show how the evidence was fabricated. Given both Kopacz's and Chapman's testimony, Morgan has not met his burden to establish a genuine dispute of material fact as to whether Chapman fabricated any evidence against him. We accordingly affirm the grant of qualified immunity to Chapman on Morgan's due process claim.

Lastly, we consider Chapman's argument that she is entitled to qualified immunity on Morgan's unreasonable search claim. Under *Cotropia*, the relevant inquiry is whether a reasonable official in Chapman's position could have believed that Morgan was operating an unregistered pain management clinic. 978 F.3d at 288. Chapman had information from a local news story that Morgan was writing prescriptions without seeing patients, and her investigation into Morgan's prescription history prior to the search demonstrated that it was likely that more than 50 percent of Morgan's prescriptions were for opioids, benzodiazepines, barbiturates, or

No. 25-40357

carisoprodol, which would have qualified his practice as a pain management clinic.[3]    Therefore, because Chapman had reason to believe Morgan was operating an unregistered pain management clinic, she is entitled to qualified immunity on Morgan's unreasonable search claim.

V

Morgan did not properly appeal the magistrate judge's order denying leave to respond to the motion for summary judgment, and therefore cannot challenge the magistrate judge's authority to enter the order or the district court's refusal to consider evidence presented in the objections to the M&R. Nevertheless, the district court improperly granted summary judgment in favor of Officer Kopacz on Morgan's unreasonable search claim in light of the fact disputes going to whether Kopacz's alleged role and actions in the search were pretextual.    We therefore AFFIRM in part as to the unreasonable seizure claim against John Kopacz, and the due process and unreasonable search claims against Mary Chapman; and REVERSE and REMAND as to the unreasonable search claim against John Kopacz for further proceedings.

_____

[3] The statute defines pain management clinics as those for "which a *majority of patients* are issued on a monthly basis a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone." Tex. Occ. Code § 168.001(1) (emphasis added).